**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| Gerald Akari Angye, *et al.*,<br><br>     *Plaintiffs*,<br><br>v.<br><br>U.S. Immigration and Customs Enforcement, *et al.*,<br><br>     *Defendants*. | Civil Action No.: <u>3:26-cv-1515</u> |

**<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**
**<u>AND APPOINTMENT OF CLASS COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

I.      STATEMENT OF THE CASE...................................................................................1

II.     STATEMENT DEFINING CLASS TO BE CERTIFIED......................................3

III.    PLAINTIFFS' PARTICULAR GRIEVANCE IS UNLAWFUL CONDITIONS
        OF CONFINEMENT AT CAMP EAST MONTANA.........................................3

IV.     THIS ACTION SATISFIES THE REQUIREMENTS OF RULES 23(A) AND
        23(B)(2)...................................................................................................................3

        A.    Plaintiffs Satisfy the Requirements of Rule 23(a). ...................................4

              1.    The Class Is So Large and Fluid That Joinder Is Impracticable. .................4

              2.    The Challenged Conditions Present Common Questions of Law
                    and Fact........................................................................................................5

                    a.    First Claim: Unconstitutionally Punitive Conditions.......................7

                    b.    Second Claim: Adequacy of Policies and Practices
                          Governing Health Care ....................................................................11

                    c.    Third Claim: Administrative Procedure Act.................................13

              3.    Plaintiffs' Claims Are Typical of Those of the Class. .............................14

              4.    Plaintiffs Will Be Competent and Dedicated Class Representatives.........15

        B.    Class Certification Is Also Appropriate Under Rule 23(b)(2). ..............................17

        C.    The Class Is Ascertainable...............................................................................19

V.      PLAINTIFFS' COUNSEL SATISFY THE REQUIREMENTS OF RULE 23(G)
        AND SHOULD BE APPOINTED CLASS COUNSEL. ..................................20

VI.     CONCLUSION.....................................................................................................20

i

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*United States ex. rel. Accardi v. Shaughnessy*,
   347 U.S. 260 (1954)..................................................................................................14

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ....................................................................................18

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................................3,16,17

*Barco Mercado v. Noem*,
   800 F. Supp. 3d 526 (S.D.N.Y. 2025).......................................................................10

*Bell v. Wolfish*,
   441 U.S. 520 (1979)................................................................................................7,10

*Berger v. Compaq Comput. Corp.*,
   257 F.3d 475 (5th Cir. 2001) ................................................................................3,16

*Braggs v. Dunn*,
   317 F.R.D. 634 (M.D. Ala. 2016)................................................................................6

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*,
   70 F.4th 914 (5th Cir. 2023) .....................................................................................19

*Cadena v. El Paso Cnty.*,
   946 F.3d 717 (5th Cir. 2020) ......................................................................................7

*Choice Inc. of Texas v. Graham*,
   No. CIV.A.04-1581, 2005 WL 1400408 (E.D. La. June 3, 2005)............................18

*Cole v. Livingston*,
   No. 4:14-cv-1698, 2016 WL 3258345 (S.D. Tex. June 14, 2016)...................4,6,18

*D.N.N. v. Liggins*,
   No. 1:25-CV-01613-JRR, 2026 WL 632371 (D. Md. Mar. 6, 2026) .......................10

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ....................................................................................5,6

*Dockery v. Fischer,*
   253 F. Supp. 3d 832 (S.D. Miss. 2015)....................................................................11

ii

*Dockery v. Hall*,
   No. 3:13-CV-326-WHB-JCG, 2018 WL 11424799 (S.D. Miss. Feb. 14, 2018) ................6,12

*Doiron v. Conseco Health Ins. Co.*,
   240 F.R.D. 247 (M.D. La. 2007) ........................................................................................18

*Edwards v. Johnson*,
   209 F.3d 772 (5th Cir. 2000) ..............................................................................................7

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)...........................................................................................................14

*Feder v. Elec. Data Sys. Corp.*,
   429 F.3d 125 (5th Cir. 2005) .............................................................................................16

*Gen. Tel. Co. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*,
   446 U.S. 318 (1980).............................................................................................................4

*Hare v. City of Corinth, Miss.*,
   74 F.3d 633 (5th Cir. 1996) (en banc) ................................................................................7

*Horton v. Goose Creek Indep. Sch. Dist.*,
   690 F.2d 470 (5th Cir. 1982) .............................................................................................16

*In re Rodriguez*,
   695 F.3d 360 (5th Cir. 2012) .............................................................................................14

*J.D. v. Nagin*,
   255 F.R.D. 406 (E.D. La. 2009)......................................................................................4,19

*James v. Dallas, Tex.*,
   254 F.3d 551 (5th Cir. 2001...............................................................................................14

*Kansas v. Crane*,
   534 U.S. 407 (2002)...........................................................................................................10

*Lewis v. Cain*,
   324 F.R.D. 159 (M.D. La. 2018) ........................................................................11,12,15,19

*Luna Gutierrez v. Noem*,
   811 F. Supp. 3d 133 (D.D.C. 2025)....................................................................................10

*Luna Gutierrez v. Noem*,
   No. CV 25-1766 (SLS), 2025 WL 3496390 (D.D.C. Dec. 5, 2025) .....................................14

*Maldonado v. Ochsner Clinic Found.*,
   493 F.3d 521 (5th Cir. 2007) ...........................................................................................4,18

*Mohad-Rumbos v. Bondi*,
   No. SA-26-CA-00773-XR, 2026 WL 911414 (W.D. Tex. Mar. 20, 2026)...............................6

*In re Monumental Life Ins. Co.*,
   365 F.3d 408 (5th Cir. 2004) .................................................................................................19

*Mullen v. Treasure Chest Casino LLC*,
   186 F.3d 620 (5th Cir. 1999) .................................................................................................14

*Nola v. Exxon Mobil Corp.*,
   No. CIV.A. 13-439-JJB, 2015 WL 2338336 (M.D. La. May 13, 2015)..................................6

*A.A. ex rel. P.A. v. Phillips*,
   2023 WL 334010 (5th Cir. Jan. 20, 2023) .............................................................................19

*Pablo Sequen v. Albarran*,
   810 F. Supp. 3d 1084 (N.D. Cal. 2025) .................................................................................14

*Pederson v. La. State Univ.*,
   213 F.3d 858 (5th Cir. 2000) ................................................................................................4,5

*Phillips v. J. Legis. Comm.*,
   637 F.2d 1014 (5th Cir.1981) ..................................................................................................4

*Pitts v. Greenstein*,
   No. CIV.A. 10-635-JJB-SR, 2011 WL 2193398 (M.D. La. June 6, 2011) ............................16

*Plaza 22, LLC v. Waste Mgmt. of La., LLC*,
   No. CIV.A. 13-618-SDD, 2015 WL 1120320 (M.D. La. Mar. 12, 2015) ...............................19

*In re S. Cent. States Bakery Prod. Antitrust Litig.*,
   86 F.R.D. 407 (M.D. La. 1980) ..............................................................................................15

*Scholl v. Mnuchin*,
   489 F. Supp. 3d 1008 (N.D. Cal. 2020) .................................................................................14

*Simms v. Jones*,
   296 F.R.D. 485 (N.D. Tex. 2013) ..........................................................................................4,6

*Singh v. Bondi*,
   No. 26-00541, 2026 WL 752457 (W.D. Tex. Mar. 16, 2026)................................................10

*Slade v. Progressive Sec. Ins. Co.*,
   856 F.3d 408 (5th Cir. 2017) .................................................................................................16

*Stoffels v. SBC Commc'ns, Inc.*,
   238 F.R.D. 446 (W.D. Tex. 2006) ..........................................................................................16

*Thorpe v. District of Columbia*,
 303 F.R.D. 120, 145 (D.D.C. 2014)..................................................................14

*M.D. ex rel. Stukenberg v. Perry*,
 675 F.3d 832 (5th Cir. 2012) ............................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011)......................................................................................5,17

*Watson v. Shell Oil Co.*,
 979 F.2d 1014, 1022 (5th Cir. 1992), *on reh'g*, 53 F.3d 663 (5th Cir. 1994) ............................4

*Wong Wing v. United States*,
 163 U.S. 228 (1896)..........................................................................................6

*Yates v. Collier*,
 868 F.3d 354 (5th Cir. 2017) ............................................................................4

*Youngberg v. Romeo*,
 457 U.S. 307 (1982)..........................................................................................7

*Zadvydas v. Davis*,
 533 U.S. 678 (2001)..........................................................................................7

*Zeidman v. J. Ray McDermott & Co.*,
 651 F.2d 1030 (5th Cir. 1981) ..........................................................................4

## FEDERAL STATUTES

Administrative Procedure Act. 5 U.S.C.
 § 706(2)(A) ....................................................................................................14

## FEDERAL RULES AND REGULATIONS

Federal Rule of Civil Procedure 23 .................................................................2,3,19

Federal Rule of Civil Procedure 23(a)............................................................3,4,16,17

Federal Rule of Civil Procedure 23(a)(1) .........................................................4,5

Federal Rule of Civil Procedure 23(a)(2) .........................................................5

Federal Rule of Civil Procedure 23(a)(3) .........................................................14

Federal Rule of Civil Procedure 23(a)(4) .........................................................15,16

Federal Rule of Civil Procedure 23(b)..............................................................17

Federal Rule of Civil Procedure 23(b)(2) ........................................................ *passim*

Federal Rule of Civil Procedure 23(g)...................................................................................19,20

Federal Rule of Civil Procedure 23(g)(1)(A)...............................................................................20

Federal Rule of Civil Procedure 23(g)(4) ...................................................................................20

## OTHER AUTHORITIES

1 Newberg and Rubenstein on Class Actions § 3:12 (6th ed.) ........................................................4

Douglas MacMillan, Samuel Oakford, N. Kirkpatrick & Aaron Schaffer, *60 Violations in 50 Days: Inside ICE's Giant Tent Facility at Ft. Bliss*, Wash. Post (Sept. 16, 2025), https://www.washingtonpost.com/business/2025/09/16/ice-detention-center-immigration-violations/ [https://perma.cc/Y3Y4-NCYE] ....................................................9,13

Manual for Complex Litigation § 21.222 (4th ed.)........................................................................19

Moore's Federal Practice § 23.24[4] (3d ed. 2000)......................................................................14

U.S. Immigration & Customs Enforcement, Office of Detention Oversight, ERO El Paso Camp East Montana, El Paso, TX (Feb. 10-12, 2026) (2026), https://www.ice.gov/doclib/foia/odo-compliance-inspections/eroElPasoCampEastMontana_ElPasoTX_Feb10-12_2026.pdf [https://perma.cc/2TDS-AY4F] .............................................................................................10

U.S. Representative Gabe Vasquez, *Rep. Gabe Vasquez Conducts Congressional Oversight Visit at Camp East Montana* (Apr. 6, 2026), https://vasquez.house.gov/media/press-releases/rep-gabe-vasquez-conducts-congressional-oversight-visit-camp-east-montana [https://perma.cc/RQS6-HXT8]. .............................................................................................................5

Plaintiffs Gerald Akari Angye, Navdeep, Erik Ivan Rodriguez Flores, and ZOR ("Plaintiffs") respectfully request that the Court grant this Motion for Class Certification and Appointment of Class Counsel (the "Motion"). Plaintiffs request an oral argument on this Motion.

## I.    <u>STATEMENT OF THE CASE</u>

In the ten months since its opening, the ERO El Paso Camp East Montana Detention Facility ("Camp East Montana") has become one of the most feared and infamous immigration detention centers in the country. The facility—a massive tent encampment on a military base in the El Paso desert, on the site of a former WWII prison camp for people of Japanese descent—has a stated capacity of 5,000 beds, making it the largest immigration detention center in the country. But its size and location are not the only reasons Camp East Montana has become infamous: the facility has become notorious for the flagrant human rights abuses that individuals endure during their detention. The living conditions for all detained at Camp East Montana are inhumane. People are confined to penned enclosures in windowless tents for 23 hours or more per day. The living area is filthy, with dirty toilets overflowing with human feces and urine, and sand and dust flowing freely onto floors, beds, and tables, and into people's lungs and on their clothing and bodies, in a region where Valley Fever is endemic. People get paltry access to soap and cleaning supplies, receiving single-use shampoo packets about the size of gas station condiment packages—not nearly enough to keep their bodies clean and to wash their hands before and after toileting, touching dirty surfaces, and eating. It is no surprise, then, that in these crowded and unclean conditions disease has run rampant, with cases of measles, influenza, COVID, and tuberculosis. People have severely restricted access to nail clippers and razors, with guards telling people to simply bite their nails to keep them short.

The food is terrible. It is sometimes rotten, often bland and tasteless, or, at best, it is badly seasoned with a sour red sauce, and there is almost never enough food to prevent people from

going hungry. This has led to hunger strikes, heightened tension, fights between individuals and guards over food, mounds of complaints, poorly managed chronic medical conditions, and substantial weight loss. There is simply nothing to do but exist in the tents, with little to no access to meaningful recreation, activities, or programming, and no way to mark the passage of time except for the announcements of guards and lights on in the morning and off at night. People are subject to and witness abuse and other misconduct by poorly trained guards, including excessive uses of force, sexual assault, harassment, attempts to encourage people to self-deport to escape the squalid living conditions, and improper use of solitary confinement with no meaningful procedural safeguards.

All people also are subject to a broken healthcare delivery system, where even the most basic processes—including intake screening, episodic care, chronic care, specialty care, infectious disease protocols, medication administration, urgent and emergent care, and continuity of care— are woefully inadequate. The results can be deadly. There already have been at least three deaths at the facility since it opened. In one case, which the Medical Examiner later ruled a homicide, a man was beaten to death by guards after asking for his asthma inhaler. In addition, an elderly man undergoing chemotherapy to treat his cancer was denied that care while in detention and died soon after his release, after his cancer spread to his bone marrow.

These are only some of the conditions at the facility that, alone and in combination, violate the Constitution. Plaintiffs seek to certify a class of individuals who are currently detained or will be detained at Camp East Montana in the future, to obtain a classwide injunction to remedy Fifth Amendment violations, an order setting aside Defendants' decision to continue operating the facility in violation of the National Detention Standards 2025 ("2025 NDS"), and a declaration

that conditions of confinement at Camp East Montana at Ft. Bliss violate the Fifth Amendment and Administrative Procedure Act.

## II.    STATEMENT DEFINING CLASS TO BE CERTIFIED

Plaintiffs, on behalf of themselves and all others similarly situated (collectively, "Class Members"), seek class certification of this action under Federal Rule of Civil Procedure 23 against U.S. Immigration and Customs Enforcement, Todd Lyons, Marisa Flores, Angel Garite, U.S. Department of Homeland Security, Markwayne Mullin, U.S. Department of War, and Pete Hegseth (collectively, "Defendants"). Specifically, Plaintiffs seek to certify a Class of the following individuals:

> All persons who are now, or in the future will be, in the legal custody of U.S. Immigration and Customs Enforcement ("ICE") and detained at ERO El Paso Camp East Montana ("Camp East Montana").

## III.    PLAINTIFFS' PARTICULAR GRIEVANCE IS UNLAWFUL CONDITIONS OF CONFINEMENT AT CAMP EAST MONTANA.

The named Plaintiffs are currently detained in unlawful conditions at Camp East Montana. They have faced harm, and will continue to face harm, from the same facility-wide policies and practices that affect all Class Members. Plaintiffs are not seeking certification of any subclasses at this time and have not identified any relevant subclasses for which they may seek certification in the future.

## IV.    THIS ACTION SATISFIES THE REQUIREMENTS OF RULES 23(a) AND 23(b)(2).

Federal Rule of Civil Procedure 23 sets out the requirements for certification of a class action. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). "An action may proceed as a class action only if the party seeking certification demonstrates that all four of the familiar requirements of [R]ule 23(a) are satisfied." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). The four elements of Rule 23(a) are: "(1) the class is so numerous that joinder of

3

all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." "Class certification under Rule 23(b)(2) is appropriate if the requirements of 23(a) are satisfied and: 'the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.'" *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007) (quoting Fed. R. Civ. P. 23(b)(2)).

### A.    Plaintiffs Satisfy the Requirements of Rule 23(a).

### 1.    The Class Is So Large and Fluid That Joinder Is Impracticable.

Under Rule 23(a)(1), the proposed class must be "so numerous that joinder of all members is impracticable[.]" Although there is no exact numerical threshold Plaintiffs must meet to satisfy the numerosity requirement, there is a "20-member presumptive floor" that is sometimes used as a "general guideline." 1 Newberg and Rubenstein on Class Actions § 3:12 (6th ed.).[1]

In the Fifth Circuit, the key consideration in the numerosity analysis is "'whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.'" *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000) (quoting *Phillips v. J. Legis. Comm.*, 637 F.2d 1014, 1022 (5th Cir.1981)).[2] Further, courts in this Circuit have found that joinder of all class members is impracticable when the population of a detention facility is in

---

[1] *See Gen. Tel. Co. of the Nw., Inc. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 & n.14 (1980) ("The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."); *Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex. 2013) (noting "there is no magic number at which the numerosity requirement is satisfied").

[2] *See also Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981); *Watson v. Shell Oil Co.*, 979 F.2d 1014, 1022 (5th Cir. 1992), *on reh'g*, 53 F.3d 663 (5th Cir. 1994) ("We previously have noted that while the number of claimants is relevant to this determination, a court also may consider other factors, including the nature of the action.").

"constant flux." *Cole v. Livingston*, No. 4:14-cv-1698, 2016 WL 3258345, at *6 (S.D. Tex. June 14, 2016), *aff'd sub nom.*, *Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) (there is "a constant flux of inmates into and out of the Pack Unit, so joinder of all the proposed class members would be impracticable if not impossible") (citation modified); *J.D. v. Nagin*, 255 F.R.D. 406, 414 (E.D. La. 2009) ("The mere fact that the population of the [Youth Study Center] is constantly revolving during the pendency of litigation renders any joinder impractical."). "[T]he inclusion of future members in the class definition," as is the case here, is also a consideration "in determining if joinder is impracticable." *Pederson*, 213 F.3d at 868 n.11.

The proposed Class in this case easily satisfies the numerosity requirement. The facility has a capacity of 5,000 beds and has detained over 4,000 people at a time.[3] As of April 6, 2026, ICE reported that it was holding 821 people there, with an average stay at the facility of 60 days.[4] Class Members are constantly cycling through the facility. The Class of people currently detained at the facility is thus well over the presumptive 20-member floor—with more Class Members arriving all the time. Inclusion of future members is necessary because people are transferred into and out of the facility on a daily basis. As such, the Class is so numerous, with more Class Members arriving all the time, that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

### 2.    The Challenged Conditions Present Common Questions of Law and Fact.

To satisfy the commonality requirement, Plaintiffs must demonstrate that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). The crux of the commonality requirement is that the Class Members' "claims must depend upon a common

---

[3] U.S. Representative Gabe Vasquez, *Rep. Gabe Vasquez Conducts Congressional Oversight Visit at Camp East Montana* (Apr. 6, 2026), https://vasquez.house.gov/media/press-releases/rep-gabe-vasquez-conducts-congressional-oversight-visit-camp-east-montana    [https://perma.cc/RQS6-HXT8].
[4] *Id.*

contention" that is "of such a nature that it is capable of classwide resolution." *Wal-Mart Stores,*

*Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality test requires "merely *a single* common

contention that enables the class action 'to generate common answers apt to drive the resolution

of the litigation.'" *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (quoting *M.D. ex*

*rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012)) (emphasis added). The "common

answers" may relate to injurious effects experienced by Class Members as well as Defendants'

injurious conduct. *Id.*

Commonality is satisfied where all Class Members are exposed to systemic policies or

practices that create a substantial risk of serious harm, even if the challenged policies or practices

affect individual Class Members in different ways. *See, e.g.*, *Yates*, 868 F.3d at 363; *Simms*, 296

F.R.D. at 465. The common, shared risk is the relevant constitutional injury—not how that risk

may manifest on an individual level. One court in this Circuit explained the commonality

requirement in a prison conditions class action lawsuit as follows:

> What all members of the putative class and subclass have in common is their alleged exposure, as a result of specified prison policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent. … Although a presently existing risk may ultimately result in different future harm for different inmates — ranging from no harm at all to death — every inmate suffers exactly the same constitutional injury when he is exposed to a single prison policy or practice that creates a substantial risk of serious harm.

*Dockery v. Hall*, No. 3:13-CV-326-WHB-JCG, 2018 WL 11424799, at *5 (S.D. Miss. Feb. 14,

2018) (citation modified).[5]

---

[5] *See also Nola v. Exxon Mobil Corp.*, No. CIV.A. 13-439-JJB, 2015 WL 2338336, at *4 (M.D. La. May 13, 2015) ("For commonality, that the parties suffered a common injury is important, though this 'can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse.'") (quoting *Deepwater Horizon*, 739 F.3d at 810); *Braggs v. Dunn*, 317 F.R.D. 634, 656 (M.D. Ala. 2016) (finding commonality satisfied "because being subjected to a substantial risk of serious harm is an actionable constitutional injury, even when a prisoner's physical or mental condition has not yet been detrimentally impacted").

As detailed below, each of Plaintiffs' three claims involves at least one common question.

a.    *First Claim: Unconstitutionally Punitive Conditions*

"The Supreme Court held more than a century ago that civil detention of a removable noncitizen violates the Constitution if it is punitive." *Mohad-Rumbos v. Bondi*, No. SA-26-CA-00773-XR, 2026 WL 911414, at *9 (W.D. Tex. Mar. 20, 2026) (citing *Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896)). Civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). Because immigration detention is "civil, not criminal," it must be "nonpunitive in purpose and effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Where, as here, Plaintiffs allege unconstitutional conditions of confinement, courts apply the test set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979).[6] *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639, 644 (5th Cir. 1996) (en banc) (addressing conditions in pretrial detention); *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("We consider a person detained for deportation to be the equivalent of a pretrial detainee"). A critical common question to the entire Class is whether Defendants operate Camp East Montana in a way that subjects the people detained there to punitive conditions. *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) ("For a conditions of confinement claim, 'the proper inquiry is whether those conditions amount to punishment of the detainee.'") (quoting *Bell*, 441 U.S. at 535). They do. *See* Compl. ¶¶ 42–149.

The facts showing unconstitutional punishment apply uniformly across the Class; detained declarants are subject to the same intake procedures, living conditions, and restrictions. For example, declarants consistently report being confined to an overcrowded, cold room during intake

---

[6] Under *Bell*, "the determination whether . . . restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose." 441 U.S. at 561.

for hours and being forced to sleep on the floor overnight, without a mattress, blanket, or pillow. *See, e.g.*, Declaration of Navdeep ("Navdeep Decl.") ¶ 7; Declaration of ZOR ("ZOR Decl.") ¶ 9; Dat Ly ("Ly Decl.") ¶¶ 11–12; Declaration of Cuong Baccam ("Baccam Decl.") ¶¶ 9–10; Declaration of UEG ("UEG Decl.") ¶ 4; Declaration of Lung Van Do ("Van Do Decl.") ¶ 4; Declaration of PKP ("PKP Decl.") ¶ 8; Declaration of NYG ("NYG Decl.") ¶ 8. These reports are not isolated instances. This is the facility's standard process. Indeed, one person went through the intake process at Camp East Montana on four separate occasions (after repeated transfers to other facilities) and reported that the conditions of intake were consistently terrible each time. Declaration of LLH ("LLH Decl.") ¶¶ 6–7, 11–12, 15, 20–21.

People consistently report that housing units and outdoor recreation areas throughout Camp East Montana are regularly inundated with dust and sand, blanketing living spaces and affecting people's ability to breathe.[7] People also consistently report being confined in windowless white tents for 23 hours or more a day with constant bright lights and little or no access to meaningful recreation and programming, including religious services;[8] unnecessary and long daily counts further restricting movement;[9] excessive and intrusive daily searches that include instances of

---

[7] *See, e.g.*, ZOR Decl. ¶¶ 28–29; Declaration of Gerald Akari Angye ("Angye Decl.") ¶ 37; Navdeep Decl. ¶ 34; Erik Ivan Rodriguez Flores Decl. ("Rodriguez Flores Decl.") ¶ 12; Ly Decl. ¶¶ 29, 33; Baccam Decl. ¶¶ 19–23; Van Do Decl. ¶ 14; Senevilay Decl. ¶¶ 17–18; SNM Decl. ¶ 32; Declaration of Somsak Bounvongxay ("Bounvongxay Decl.") ¶ 17; Declaration of JLE ("JLE Decl.") ¶ 17.

[8] *See, e.g.*, ZOR Decl. ¶¶ 23-26; Angye Decl. ¶ 37; Navdeep Decl. ¶¶ 13-16; Rodriguez Flores Decl. ¶¶ 19–30; Ly Decl. ¶¶ 21, 24, 26, 35; Baccam Decl. ¶¶ 24, 36, 38; PKP Decl. ¶¶ 12, 16; UEG Decl. ¶¶ 8–9; Van Do Decl. ¶¶ 13, 16; Senevilay Decl. ¶ 8; CCD Decl. ¶ 16; SNM Decl. ¶ 8; JLE Decl. ¶¶ 9-10.

[9] *See, e.g.*, LLH Decl. ¶ 26; JLE Decl. ¶ 10; SNM Decl. ¶ 10; RES Decl. ¶ 15; Rodriguez Flores Decl. ¶ 32.

sexual assault;[10] severely restricted access to nail clippers and razors;[11] lack of adequate soap and cleaning supplies;[12] cold living units with inadequate clothing;[13] inability to make outgoing confidential calls to attorneys;[14] contactless family visits;[15] excessive use of force and other misconduct by guards, including harassment and lack of effective communication;[16] and spoiled and inadequate food.[17]

These are only a few examples of the commonly reported, unconstitutionally punitive conditions at Camp East Montana. Defendants' own documents admit that the inhumane conditions at Camp East Montana are widespread, persistent, and result from failings at the policy level that affect all at the facility. A September 2025 inspection report by ICE's detention oversight unit found violations of at least 60 federal standards for immigration detention, including in areas of use of force, detainee safety, and attorney access.[18] ICE's Office of Professional Responsibility

---

[10] *See, e.g.*, ZOR Decl. ¶ 23; Ly Decl. ¶ 23; Rodriguez Flores ¶ 31; Navdeep Decl. ¶ 16; ZOR ¶ 22; CCD Decl. ¶¶ 27-28; NYG Decl. ¶ 32; HOK Decl. ¶ 26; JLE Decl. ¶ 30.

[11] *See, e.g.*, ZOR Decl. ¶ 32; Navdeep Decl. ¶ 45; Rodriguez Flores Decl. ¶ 40; Baccam Decl. ¶¶ 29–30; Senevilay Decl. ¶ 25; SNM Decl. ¶ 20; RES Decl. ¶ 22.

[12] *See, e.g.*, ZOR Decl. ¶ 31; Rodriguez Flores Decl. ¶¶ 36-37; Ly Decl. ¶ 25; Navdeep Decl. ¶¶ 11-12; Baccam Decl. ¶ 18, SNM Decl. ¶ 20; JLE Decl. ¶ 12.

[13] *See, e.g.*, ZOR Decl. ¶ 30; Angye Decl. ¶ 33; Ly Decl. ¶ 31; Van Do Decl. ¶ 19; Senevilay Decl. ¶ 21 SNM Decl. ¶ 60, LLH Decl. ¶ 27.;

[14] *See, e.g.,* ZOR Decl. ¶ 36; Navdeep Decl. ¶ 39; Rodriguez Flores Decl. ¶ 35; LLH Decl. ¶ 35; RES Decl. ¶ 16; SNM Decl. ¶ 44.

[15] JLE Decl. ¶ 33.

[16] *See, e.g.*, ZOR Decl. ¶¶ 38-41; Angye Decl. ¶¶ 8-17; Ly Decl. ¶¶ 37, 40; Van Do Decl. ¶ 25; Navdeep Decl. ¶¶ 18–20; Baccam Decl. ¶¶ 29, 33-34; Senevilay Decl. ¶ 9; UEG Decl. ¶ 11; PKP Decl. ¶ 27; CCD Decl. ¶ 27.

[17] *See, e.g.*, ZOR Decl. ¶ 35; Ly Decl. ¶¶ 19-20; Baccam Decl. ¶ 26; LLH Decl. ¶ 30; Van Do Decl. ¶ 11; Declaration of HOK ("HOK Decl.") ¶ 8; Rodriguez Flores Decl. ¶¶ 17–18; LLH Decl. ¶¶ 33–34; Declaration of SNM ("SNM Decl.") ¶¶ 41, 43; Declaration of Jesus Alfonso Fernandez-Gastelum ("Fernandez-Gastelum Decl.") ¶ 16; NYG Decl. ¶ 45.

[18] Douglas MacMillan, Samuel Oakford, N. Kirkpatrick & Aaron Schaffer, *60 Violations in 50 Days: Inside ICE's Giant Tent Facility at Ft. Bliss*, Wash. Post (Sept. 16, 2025), https://www.washingtonpost.com/business/2025/09/16/ice-detention-center-immigration-violations/ [https://perma.cc/Y3Y4-NCYE].

then inspected the facility in February of 2026 and likewise found 49 violations of federal detention standards in areas including use of force, detainee safety, and telephone access.[19]

Furthermore, there are common questions of law and fact regarding the purpose of these conditions. "Retribution and deterrence are not legitimate nonpunitive governmental objectives." *Bell*, 441 U.S. at 539 n.20; *see also Singh v. Bondi*, No. 26-00541, 2026 WL 752457, at *10 (W.D. Tex. Mar. 16, 2026) ("Civil detention is punitive if it 'become[s] a mechanism for retribution or general deterrence.'") (quoting *Kansas v. Crane*, 534 U.S. 407, 412 (2002) (quotation marks and citation within *Kansas* omitted)). In the present-day immigration enforcement system, "[s]tatements from senior officials suggest that harsh conditions of confinement are a deliberate feature of the enforcement program intended to induce self-deportation and to deter illegal immigration." *Barco Mercado v. Noem*, 800 F. Supp. 3d 526, 575 (S.D.N.Y. 2025); *accord D.N.N. v. Liggins*, No. 1:25-CV-01613-JRR, 2026 WL 632371, at *33 (D. Md. Mar. 6, 2026) ("Defendants' own press releases and statements suggest the complained-of conditions are intended to be punitive . . . ."); *Luna Gutierrez v. Noem*, 811 F. Supp. 3d 133, 172 (D.D.C. 2025) ("[T]he Court sees unusually strong direct evidence that the Defendants chose to detain some noncitizens at Guantanamo for the express purpose of retaliating against them and deterring others' conduct.").

Here, the facts show systemic efforts to use the poor conditions at the facility to coerce people into agreeing to drop their claims to legal entitlement to remain in the United States. *See, e.g.*, Baccam Decl. ¶ 27 (guards would tell people, "You guys can always self deport and get away

---

[19] U.S. Immigration & Customs Enforcement, Office of Detention Oversight, ERO El Paso Camp East Montana, El Paso, TX (Feb. 10–12, 2026) (2026) ("2026 ICE Inspection Report"), https://www.ice.gov/doclib/foia/odo-compliance-inspections/eroElPasoCampEastMontana_ElPasoTX_Feb10-12_2026.pdf [https://perma.cc/2TDS-AY4F].

10

faster" and "If you don't like it, you shouldn't be here"); Navdeep Decl. ¶ 17 (reporting being awoken in the early morning and being asked to sign a voluntary departure form and being told "under the Trump Administration, I would not be able to win my immigration case"); ZOR Decl. ¶¶ 36–37 (ICE officer said "I would be sent to Africa or sit in detention for a long time unless I left for Mexico"); JLE Decl. ¶ 32 ("I feel that being here is pressuring me to give up on my immigration case. I have seen many women just give up and agree to be deported even though they did not really want to."); Declaration of Reinaldo Moreno Rodriguez ("Moreno Rodriguez Decl.") ¶¶ 6–16 (describing being pressured multiple times by ICE to sign third country removal papers, being driven to the Mexican border, and being physically assaulted when he refused to sign removal papers).

In sum, Camp East Montana imposes unconstitutionally punitive conditions on its entire civil detainee population, raising common questions of law and fact of whether these uniformly applied practices violate the Due Process Clause.

> b.   *Second Claim: Adequacy of Policies and Practices Governing Health Care*

Another common question of fact exists as to the adequacy of Defendants' policies, practices, and procedures governing the provision of health care and whether these conditions put Class Members at unconstitutional risk of harm. They do. *See* Compl. ¶¶ 150–182.

Challenges to inadequate health care raise common questions capable of class-wide resolution where allegedly violative "policies and practices [related to medical care] apply to all [detained individuals]" at a facility. *Lewis v. Cain*, 324 F.R.D. 159, 174 (M.D. La. 2018). In *Lewis v. Cain*, commonality was satisfied where the prison facility had policies and practices of (i) understaffing medical providers, (ii) failing to refer patients for specialty care, and (iii) providing patients with medical providers who lacked adequate credentials and training gave

11

rise to common issues. *Id.* at 172–74. The common issue at the center of the claims was "the exposure to an unreasonable risk of serious harm" due to systemic failures to provide adequate medical care. *Id.* at 170–71. Similarly, in *Dockery v. Fischer*, the named plaintiffs established commonality by pointing to systemic issues related to medical care, including "that medical treatment is often delayed or denied; that prisoners are not given all of their prescribed medications; and that the record keeping and oversight of medical care providers is deficient." 253 F. Supp. 3d 832, 854 (S.D. Miss. 2015).

Plaintiffs here bring the exact type of systemic claims at issue in *Lewis* and *Dockery*. Plaintiffs base their healthcare claims on fundamental and uniform deficiencies with the healthcare delivery system at Camp East Montana. Everyone at Camp East Montana is subject to the same deficient healthcare system, including inadequate medical screening,[20] episodic care,[21] non-confidential medical and mental health care without appropriate clinical space,[22] chronic care,[23] specialty care,[24] infectious disease protocols,[25] medication administration,[26] urgent and emergent

---

[20] *See, e.g.*, ZOR Decl. ¶¶ 11–12; Angye Decl. ¶ 6; Rodriguez Flores Decl. ¶ 7; HOK Decl. ¶ 9; Baccam Decl. ¶¶ 10–12; UEG Decl. ¶¶ 4–5; Do Decl. ¶ 4.

[21] *See, e.g.*, SNM Decl. ¶ 29; Baccam Decl. ¶ 17; Senevilay ¶¶ 11–16; LLH Decl. ¶ 9; UEG Decl. ¶ 6.

[22] *See, e.g.,* Rodriguez Flores Decl. ¶¶ 49, 51; Navdeep Decl. ¶ 35; SNM Decl. ¶ 31; LLH Decl. ¶¶ 12, 51; NYG Decl. ¶¶ 17, 24, 26; Declaration of Carlos Camarillo-Gonzalez ("Camarillo-Gonzalez Decl.") ¶ 23.

[23] *See, e.g.*, Declaration of Christina Vilay ("Vilay Decl.") ¶¶ 3, 11–16; Bounvongxay Decl. ¶¶ 9–14; SNM Decl. ¶ 19.

[24] *See, e.g.*, Vilay Decl. ¶ 11; Angye Decl. ¶ 40; PKP Decl. ¶¶ 28–31; NYG Decl. ¶¶ 10–13; Camarillo-Gonzalez Decl. ¶ 17.

[25] *See, e.g.*, ZOR Decl. ¶ 50; Navdeep Decl. ¶ 37; Ly Decl. ¶¶ 14–17; Senevilay Decl. ¶¶ 22–23; LLH Decl. ¶ 47; SNM Decl. ¶ 34; UEG Decl ¶ 6.

[26] *See, e.g.*, ZOR Decl. ¶¶ 37–38, 49–50 Angye Decl. ¶ 40; Senevilay ¶¶ 14–16; Bounvongxay ¶¶ 9–14; NYG Decl. ¶ 9; SNM Decl. ¶ 19; RES Decl. ¶ 33; Fernandez-Gastelum Decl. ¶¶ 7–11.

care, continuity of care,[27] and extraction-only dental care.[28] The living conditions detailed above, including crowded and unhygienic dorms with limited access to soap and constant exposure to sand and dust, put everyone at risk of adverse health effects. *See supra* at 8–9.[29] One professional marathon runner who has been detained at Camp East Montana for two months, and who before detention had no issues breathing or with asthma, now has to use an asthma inhaler regularly. *See* UEG Decl. ¶ 7.

As with Plaintiffs' first claim, Defendants' own documents admit systemic medical issues that affect all at the facility. Both the September 2025 and the February 2026 inspection reports find deficiencies of standards in medical care at the facility.[30]

These and other systemic failures concerning the provision of healthcare at Camp East Montana raise common questions suitable for class resolution.

<blockquote>c.    <em>Third Claim: Administrative Procedure Act</em></blockquote>

Plaintiffs' Administrative Procedure Act claim also involves common questions. The ICE 2025 NDS, under which Camp East Montana operates, set out the basic minimum requirements that Defendants (and their contractors) must meet with respect to conditions of confinement at the facility, including standards governing temperature control, air and water quality, food quantities and quality, access to hygiene products, use of force, medical care, programming and recreation, and attorney access, among others. Defendants' own inspectors have found on at least two

---

[27] *See, e.g.*, Mbabid Decl. ¶¶ 9–12, 18; Vilay Decl. ¶ 11; Bounvongxay Decl. ¶¶ 7–10; CCD Decl. ¶¶ 13, 33–34; NYG Decl. ¶¶ 10–13; Camarillo-Gonzalez Decl. ¶¶ 20–26.

[28] *See, e.g.*, ZOR Decl. ¶ 45; Navdeep Decl. ¶ 35; Baccam Decl. ¶¶ 12–13; LLH Decl. ¶ 53; PKP Decl. ¶ 30.

[29] *See, e.g.,* RES Decl. ¶ 36; Ly Decl. ¶¶ 29, 33; Van Do Decl. ¶ 14; Senevilay Decl. ¶¶ 17–18; SNM Decl. ¶ 32

[30] Douglas MacMillan, Samuel Oakford, N. Kirkpatrick & Aaron Schaffer, *60 Violations in 50 Days: Inside ICE's Giant Tent Facility at Ft. Bliss*, Wash. Post (Sept. 16, 2025), https://www.washingtonpost.com/business/2025/09/16/ice-detention-center-immigration-violations/ [https://perma.cc/Y3Y4-NCYE]; 2026 ICE Inspection Report.

occasions that Camp East Montana violates dozens of NDS provisions. *Id.* The attached declarations demonstrate that these violative conditions persist.

An agency's unexplained failure to follow its own rules constitutes "arbitrary" and "capricious" conduct in violation of the Administrative Procedure Act. 5 U.S.C. § 706(2)(A); *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009). Through this claim, Plaintiffs challenge Defendants' decision to continue operation of the facility in violation of ICE's 2025 National Detention Standards. This "'uniform policy or practice that affects all class members'" is either lawful as to the entire class or unlawful as to the entire class, satisfying commonality. *Luna Gutierrez v. Noem*, No. CV 25-1766 (SLS), 2025 WL 3496390, at *7 (D.D.C. Dec. 5, 2025) (quoting *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014)) (certifying class of all people detained at a facility for an APA claim); *Pablo Sequen v. Albarran*, 810 F. Supp. 3d 1084, 1134 (N.D. Cal. 2025) (provisionally certifying class of all people detained at a facility for APA claim as well as conditions of confinement claims); *Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1044 (N.D. Cal. 2020) (provisionally certifying class of incarcerated people for an APA challenge).

### 3.    Plaintiffs' Claims Are Typical of Those of the Class.

Rule 23(a)(3) requires that the claims of the named Plaintiffs be typical of those of the Class. The typicality requirement ensures that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "[T]he test for typicality is not demanding." *Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 625 (5th Cir. 1999). It does not "require a complete identity of claims." *James v. Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012). In analyzing typicality, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course

14

of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (citing Moore's Federal Practice § 23.24[4] (3d ed. 2000)).

Here, Plaintiffs' claims, like those of all putative Class Members, arise from the same policies and conditions. For example, people at Camp East Montana are held in cramped, cold holding rooms where they must sleep on the floor because this is the facility's intake process for new detainees. *See supra* at 7–8. The lack of adequate food is a daily feature of life for detained individuals at the facility—not an episodic occurrence—and can only be attributed to a policy. *See supra* at 9. The lack of basic sanitation is also the result of facility-wide, systemic failures to provide hygiene materials or to clean the facility. *See supra* at 8–9. The persistent sand and dust that flows through the gaps in the "walls" is the inevitable result of constructing a tent facility in one of the most persistent dust-producing regions of North America. *See supra* at 8.

As with commonality, factual variations between Plaintiffs and absent Class Members do not defeat typicality "where the claims of the class and the representative arise out of the same legal and remedial theory." *In re S. Cent. States Bakery Prod. Antitrust Litig.*, 86 F.R.D. 407, 415 (M.D. La. 1980). For example, with respect to constitutionally deficient medical care, it is "unlikely that any two inmates would have the exact same exposure to a substantial risk of serious harm," but this does not defeat typicality. *Lewis*, 324 F.R.D. at 171. The key to typicality is that Plaintiffs and Class Members are subject to the same policies and practices that "pose a substantial risk of serious harm." *See id.* at 172 (finding both commonality and typicality because named plaintiffs and class members were exposed to the same policies).

The Class therefore satisfies the typicality requirement.

### 4.     Plaintiffs Will Be Competent and Dedicated Class Representatives.

Plaintiffs will also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts assessing adequacy consider the representatives' willingness and ability to take

an active role in the litigation and protect the interests of other class members and the alignment of interests of other class members and the alignment of interests between the representatives and other class members. *See Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (citing *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc.*, 521 U.S. at 625. As courts in this Circuit have recognized, "the adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a)." *Pitts v. Greenstein*, No. CIV.A. 10-635-JJB-SR, 2011 WL 2193398, at *6 (M.D. La. June 6, 2011) (quoting *Amchem Prod., Inc.*, 521 U.S. at 625).

There are no known conflicting interests or potential conflicting interests here. Plaintiffs and Class Members have the same interest in remedying violations of their constitutional and statutory rights and obtaining declaratory and injunctive relief. They all seek relief from unlawful conditions of confinement at Camp East Montana.

Representatives "need not be legal scholars" to meet their obligations under Rule 23(a)(4), *Feder*, 429 F.3d at 132 n.4, and "are entitled to work with, and rely upon, their counsel in pursuing their claims and navigating the complicated legal and factual issues associated with" complex litigation. *Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 455 (W.D. Tex. 2006) ("[T]he Fifth Circuit recognizes that 'certainly, class representatives need not be legal scholars, and are entitled to rely on counsel.'") (quoting *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 484 (5th Cir. 2001)). Class representatives are adequate when they have "familiarity with the complaint and the concept of a class action." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982).

The named Plaintiffs are willing and able to fulfill their obligations as class representatives and have the support of counsel with significant experience in litigating complex civil rights actions like this one and the ability to devote significant resources to this litigation. *See infra* at 20. The named Plaintiffs have agreed to act as representatives for the Class and have met multiple times with the undersigned counsel and discussed the responsibility of prosecuting a class action on behalf of people detained at Camp East Montana. Declaration of Dustin Rynders ("Rynders Decl.") ¶¶ 13–15. They have also discussed the potential advantages and disadvantages with the named Plaintiffs to proceeding in a class action. The named Plaintiffs can demonstrate familiarity with the allegations in this action, the concept of a class action, and the relief sought in this action. Supplemental Declaration of Navdeep ¶¶ 4–11; Supplemental Declaration of Gerald Akari Angye ¶¶ 4-10; Supplemental Declaration of Erik Ivan Rodriguez ¶¶ 4–10; Supplemental Declaration of ZOR ¶¶ 2–7. Finally, the named Plaintiffs are dedicated to fulfilling the role and duties of class representatives protecting Class Members' constitutional and statutory rights. *Id.*

Plaintiffs' claims raise no known need for subclasses now or in the future. There is also no reason to doubt Plaintiffs' abilities to fairly and adequately protect the interests of the Class.

**B.     Class Certification Is Also Appropriate Under Rule 23(b)(2).**

After satisfying each of the Rule 23(a) requirements, a class must be certified if it meets one of the Rule 23(b) requirements. *Amchem Prod., Inc.*, 521 U.S. at 614. Rule 23(b)(2) authorizes a class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (quotation marks and citation omitted). Civil rights cases present precisely

17

the types of systemic legal and factual issues for which class certification under Rule 23(b)(2) was designed. *See Amchem Prod., Inc.*, 521 U.S. at 614 ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of cases fitting the Rule 23(b)(2) standards.).

The Fifth Circuit has held that the Rule 23(b)(2) certification requires that "(1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific." *Yates*, 868 F.3d at 366–67 (citation modified) (quoting *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007)). "'Actions for class-wide injunctive or declaratory relief are intended for (b)(2) certification precisely because they involve uniform group remedies. Such relief may often be awarded without requiring a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case.'" *Choice Inc. of Texas v. Graham*, No. CIV.A.04-1581, 2005 WL 1400408, at *5 (E.D. La. June 3, 2005) (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414 (5th Cir. 1998)); *see also Doiron v. Conseco Health Ins. Co.*, 240 F.R.D. 247, 254 (M.D. La. 2007), *vacated on other grounds*, 279 F. App'x 313 (5th Cir. 2008).

Plaintiffs seek relief for the entire Class based on policies and practices by Defendants that affect the Class equally. First, Defendants have "acted . . . on grounds that apply generally to the class," Fed. R. Civ. P. 23(b)(2), given that Defendants' policies, actions, and failures to act—for example, their failures to provide enough food, failures to provide timely medical care and medication administration, and failures to provide a sanitary facility free of dust and sand, among the many other unconstitutional conditions set out in the Complaint—impact the Class equally by subjecting them to punitive conditions and putting them at risk of harm. Moreover, Plaintiffs seek

18

no money damages in this action. Any injunction involving punitive conditions, medical care policies and practices, or Defendants' determination to continue operating the facility despite violations of the 2025 NDS would occur on a class-wide basis and provide protection for all Class Members. In fact, the only remedy capable of redressing the injury of which Plaintiffs complain is one that enjoins and sets aside Defendants' conduct as to every Class Member. These circumstances make a prototypical case for class treatment under Rule 23(b)(2).

### C.      The Class Is Ascertainable.

Although not expressly required by Rule 23, the Fifth Circuit recognizes an implied requirement of ascertainability. *See Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 (5th Cir. 2023). To be ascertainable, a class "must be susceptible to a precise definition to properly identify those entitled to relief, those bound by the judgment, and those entitled to notice." *A.A. ex rel. P.A. v. Phillips*, 2023 WL 334010, at *2 (5th Cir. Jan. 20, 2023) (quoting *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004)).

The Class here satisfies this requirement because "its members can be ascertained by reference to objective criteria." *Plaza 22, LLC v. Waste Mgmt. of La., LLC*, No. CIV.A. 13-618-SDD, 2015 WL 1120320, at *3 (M.D. La. Mar. 12, 2015) (quoting Manual for Complex Litigation § 21.222 at *1 (4th ed.)). Specifically, Class Members are those currently in the legal custody of ICE who are detained at Camp East Montana, or who will in the future be in the legal custody of ICE and who are detained at Camp East Montana. Courts in the Fifth Circuit regularly certify similarly defined classes. *See, e.g.*, *Lewis*, 324 F.R.D. at 168 ("[T]he fluid nature of a plaintiff class, as in prison-litigation context, counsels in favor of certification of all present and future members."); *J.D.*, 255 F.R.D. at 417 (certifying a class of "all children who are now or in the future will be confined at the [Youth Study Center]" in New Orleans, Louisiana).

19

## V.   PLAINTIFFS' COUNSEL SATISFY THE REQUIREMENTS OF RULE 23(G) AND SHOULD BE APPOINTED CLASS COUNSEL.

Rule 23(g) requires courts to appoint class counsel for any certified class. In appointing class counsel, courts must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Class counsel has a duty to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

The undersigned counsel fulfill the criteria set forth in Rule 23(g). Plaintiffs are represented by attorneys who have extensive experience litigating complex civil rights and class action lawsuits in federal courts, including numerous cases involving immigration detention. *See* Declaration of Kyle Virgien ("Virgien Decl.") ¶¶ 2–23; Declaration of Adriana Piñon ("Piñon Decl.") ¶¶ 2–3, 5–8; Rynders Decl. ¶¶ 2–8, 10–12; Declaration of James Day ("Day Decl.") ¶¶ 3–21. Class counsel have invested significant resources in developing the factual record for this case and they have the resources to litigate it vigorously. *See* Rynders Decl. ¶¶ 12–14. The undersigned counsel are collectively counsel in 18 active cases in which class allegations have been made. Virgien Decl. ¶ 24; Piñon Decl. ¶ 4; Rynders Decl. ¶ 9; Day Decl. ¶ 2.

## VI.   CONCLUSION

For the above stated reasons, Plaintiffs request that this Court enter an order certifying a Class of "all persons who are now, or in the future will be, in the legal custody of ICE and detained at Camp East Montana." Plaintiffs request that they be certified as the representatives of the Class and that their counsel of record be appointed as Class Counsel.

20

Respectfully submitted,

Dated: May 29, 2026

/s/ Kyle Virgien
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Kyle Virgien (*pro hac vice* forthcoming)
Rita Lomio (*pro hac vice* forthcoming)
Felipe Hernandez (*pro hac vice*
forthcoming)
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770
kvirgien@aclu.org
npp_rlomio@aclu.org
npp_fhernandez@aclu.org

Carmen Iguina Gonzalez (*pro hac vice*
forthcoming)
Elisa Epstein (*pro hac vice* forthcoming)
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Tel.: (202) 393-4930
ciguinagonzalez@aclu.org
eepstein@aclu.org

FARELLA BRAUN + MARTEL LLP
Jim Day (CA SBN 197158) (*admitted*)
Cynthia A. Castillo (TX SBN 24097474)
Raven Quesenberry (CA SBN 346250)
(*admitted*)
Hilary C. Krase (CA 318762) (*pro hac
vice* forthcoming)
One Bush Street, Suite 900
San Francisco, California 94104
Telephone:  (415) 954-4400
Fax:  (415) 954-4480
jday@fbm.com
ccastillo@fbm.com
rquesenberry@fbm.com
hkrase@fbm.com

/s/ Savannah Kumar
ACLU FOUNDATION OF TEXAS, INC.
Savannah Kumar
TX Bar No. 24120098
 Fabiola Alvelais
TX Bar No. 24146029
Edgar Saldivar
TX Bar No. 24038188
Adriana Pinon
TX Bar No. 24089768
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax (713) 942-8966
skumar@aclutx.org
falvelais@aclutx.org
esaldivar@aclutx.org
apinon@aclutx.org

Alana Park
Texas Bar No. 24150568
Zachary Dolling
Texas Bar No. 24105809
Charlotte Weiss (application for admission
pending)
New York Bar No. 6313639
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, Texas 78760
(512) 474-5073 ext. 162
alana@texascivilrightsproject.org
zachary@texascivilrightsproject.org
cweiss@texascivilrightsproject.org

Dustin Rynders
Texas Bar No. 24048005
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 1108
Houston, Texas 77251
(832) 767-3630 ext. 196
dustin@texascivilrightsproject.org

21

Daniel Hatoum
Texas Bar No. 24138347
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 219
Alamo, Texas 78516
(956) 787-8171 ext. 127
daniel@texascivilrightsproject.org

## CERTIFICATE OF CONFERENCE

This motion was filed simultaneously with the Complaint in this action. Plaintiffs did not confer with counsel for Defendants because counsel has not yet been identified. I certify that I will confer with counsel for Defendants upon service of this motion.

*/s/ Savannah Kumar*
Savannah Kumar
Texas State Bar Number: 24120098
ACLU Foundation of Texas, Inc.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax (713) 942-8966
skumar@aclutx.org

## CERTIFICATE OF SERVICE

This motion was filed simultaneously with the Complaint in this action. I certify that Plaintiffs will serve this motion and its appendix simultaneously with service of the summons and complaint.

*/s/ Savannah Kumar*
Savannah Kumar
Texas State Bar Number: 24120098
ACLU Foundation of Texas, Inc.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax (713) 942-8966
skumar@aclutx.org

23

<u>**APPENDIX A**</u>

<u>**LOCAL RULE 23 STATEMENT**</u>

<u>**Brief Statement of the Case**</u>

Plaintiffs provided a brief statement of the case in their introduction.

<u>**Definition of Class to be Certified**</u>

Plaintiffs provided class definitions above.

<u>**Statements Regarding Plaintiffs' Particular Grievances**</u>

Plaintiffs provided their particular grievances above.

<u>**Statement Regarding Basis of Class Treatment**</u>

Plaintiffs seek an order certifying a class pursuant to Rule 23(b)(2).

<u>**Statement Regarding the Four Prerequisites of Fed. R. Civ. P. 23(a)**</u>

The putative Plaintiff Class meets the requirements of Rule 23(a). The brief details how the prerequisites are met in this case.

<u>**Statement Regarding Other Pending Actions**</u>

Plaintiffs are not aware of other similar cases specifically pertaining to conditions at ERO El Paso Camp East Montana at Ft. Bliss.

<u>**Statement Regarding Other Pending Actions**</u>

Plaintiffs are not aware of other similar cases specifically pertaining to conditions at ERO El Paso Camp East Montana at Ft. Bliss.

<u>**Statement Regarding Class Action Versus Individual Claims**</u>

Counsel has thoroughly explained to the named Plaintiffs the nature of a class action and the relative merits of pursuing an individual claim for prospective relief versus a class-wide claim for prospective relief. The named Plaintiffs bring this case with the understanding that they are serving as volunteers to vindicate the rights of people detained at Camp East Montana now and in the future.

**Statement Regarding Proposed Notices**

Plaintiffs do not propose requiring notice of certification for the Plaintiff Class. For cohesive classes certified under Rule 23(b)(2), class participation is mandatory and thus notice of certification serves "little function" and is required only in "exceptional situations." NEWBERG ON CLASS ACTIONS § 8:3 (6th ed. 2022). There are no such exceptional circumstances here. The cost of notice would outweigh any benefit.

**Statement Regarding Settlement Negotiations**

To date, the parties have not participated in settlement negotiations, but the Plaintiffs are amenable to the same.

**Statement Regarding Other Matters Deemed Necessary and Proper to Expedition of a Decision on the Motion and Speedy Resolution of the Case on the Merits**

Plaintiffs' counsel knows of no such matters.