**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| Gerald Akari Angye, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. Immigration and Customs Enforcement, *et al.*,<br><br>*Defendants.* | Case No. 3:26-cv-1515-MV |

**PLAINTIFFS' CORRECTED MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM AND TO SEAL DECLARANTS' IDENTITIES**

Plaintiffs bring this lawsuit challenging their detention in inhumane conditions at the largest immigration detention center in the country. Plaintiffs and many declarants have personally experienced degrading, dangerous, and dehumanizing treatment in detention. They have now come forward to share their stories with the Court at a time of increasingly hostile anti-immigrant rhetoric and policies in Texas and across the country. Against this backdrop, public revelation of their identities imposes unnecessary risk and danger to them.

Plaintiffs therefore seek leave for Plaintiff ZOR and declarants NYG, SNM, PKP, UEG, LLH, RES, HOK, CCD and JLE (hereinafter "Anonymous Declarants") to proceed under pseudonyms and to file redacted exhibits in the public record. Plaintiffs also move the Court to order Defendants to maintain the confidentiality of ZOR, NYG, SNM, PKP, UEG, LLH, RES, HOK, CCD and JLE's identities by using only their pseudonyms in all of their filings, including redacting exhibits in which their names or A-numbers appear. Should the Court grant this motion, Plaintiffs will disclose ZOR's identity and Anonymous Declarants' identities to the Court, as well as to Defendants pursuant to an appropriate protective order.

## I. INTRODUCTION

Defendants are currently detaining Plaintiff ZOR and Anonymous Declarants in immigration detention at the ERO El Paso Camp East Montana detention center in El Paso, Texas. ZOR has filed the present action as a proposed class representative, challenging the conditions of detention at Camp East Montana. *See* ECF No. 1 ¶ 22. Anonymous Declarants have submitted declarations about their experiences in detention at Camp East Montana for the present action in hopes that their conditions will improve and so others will not be subjected to the same conditions. *See* ECF No. 2-24 ("NYG Decl."); ECF No. 2-22 ("SNM Decl."); ECF No. 2-23 ("PKP Decl."); ECF No. 2-18 ("UEG Decl."); ECF No. 2-32 ("LLH Decl."); ECF

No. 2-20 ("RES Decl."); ECF No. 2-25 ("HOK Decl."); ECF No. 2-26 ("CCD Decl."); ECF No. 2-31 ("JLE Decl.").

ZOR, SNM, PKP, RES, and CCD have sought protection in the United States via the Convention Against Torture or asylum because they fear persecution and torture in their native countries. ECF No. 2-30 ("ZOR Decl.") ¶¶ 4, 7; SNM Decl. ¶ 3; PKP Decl. ¶¶ 2, 28; RES Decl. ¶ 2; CCD Decl. ¶ 7. ZOR, SNM, PKP, RES, and CCD reasonably fear that revealing their names in a public filing would subject them or their families to harm by their persecutors as well as other retaliation.

Several declarants have also revealed extremely violative experiences or other extremely private or stigmatizing information in their declarations. NYG has attempted suicide and experienced extremely upsetting and violative treatment by the guards while in detention, and he recounted details of this experience and his mental health history in his declaration. *See* NYG Decl. ¶¶ 14–23. CCD similarly shared about his mental health history and an experience with sexual assault. CCD Decl. ¶¶ 7, 13, 28–29. SNM discussed persecution and harassment he has experienced based on his sexual orientation and HIV status. SNM Decl. ¶ 3. This is private information, and these declarants fear the stigma and potential for harassment or retaliation if their identities are revealed to the public.

SNM has also experienced harassment and intimidation by other detainees at Camp East Montana based on his sexual orientation, which guards have refused to protect him from. SNM Decl. ¶ 56. SNM reasonably fears that revealing his name in a public filing would lead to further retaliation or harassment while in detention.

Anonymous Declarants, as a group, have experienced or witnessed guard misconduct, and have expressed that they are "treated worse than a criminal" in detention. *See, e.g.*, PKP

Decl. ¶ 34. Anonymous Declarants reasonably fear the stigma and potential retaliation against them and their families if their identities are revealed to the public, and fear that revealing their names would subject them to retaliation by government officials or facility staff, including violence, discipline, or deportation.

## II. LEGAL STANDARD

Parties may proceed under pseudonym or file certain documents under seal to protect a substantial privacy right which outweighs the "customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). More broadly, "the public right to access judicial records is not absolute." *League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 2806850, at *4 (W.D. Tex. July 18, 2022) (citing *United States v. Sealed Search Warrants*, 868 F.3d 385, 391 (5th Cir. 2017) (criminal context); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (civil context)). Like pseudonyms, sealing information is justified when the general presumption in favor of openness and public access is outweighed by "compelling countervailing interests favoring nondisclosure." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 421 (5th Cir. 2021).

The Fifth Circuit has highlighted several factors which can be instructive when determining whether a party can sue anonymously: "1) plaintiffs seeking anonymity were suing to challenge governmental activity; 2) prosecution of the suit compelled plaintiffs to disclose information 'of the utmost intimacy;' and 3) plaintiffs were compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution." *Stegall*, 653 F.2d at 185. However, these factors are not "prerequisites to bringing an anonymous suit." *Id.* at 18586. Courts consider other relevant circumstances, including "the threat of a hostile public reaction

to a lawsuit, . . . in conjunction with the other factors, when deciding whether to permit a party to use a pseudonym." *Rose v. Beaumont Indep. Sch. Dist*., 240 F.R.D. 264, 266 (E.D. Tex. 2007). "Threats of violence" also "weigh[] in favor of maintaining" anonymity. *Stegall*, 653 F.2d at 186. Likewise, courts consider whether "identification creates a severe and specific risk of retaliatory physical or mental harm." *Doe v. CoreCivic, Inc.*, No. 4:20-CV-01828, 2020 WL 3640058, at *1 (S.D. Tex. July 6, 2020). "Courts in the Western District of Texas allow plaintiffs to proceed anonymously even when not all three factors are present, if the right circumstances are present." *Doe v. Midland County*, 2024 WL 5658601, at *2 (W.D. Tex. Feb 20, 2024).

In the same vein, "[t]o decide whether something should be sealed, the court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (citation modified). Consequently, courts have also considered the standards governing pseudonymity when considering whether the identities of declarants or individuals who are not named plaintiffs should be sealed. *See, e.g.*, *League of United Latin Am. Citizens*, 2022 WL 2806850 at *5.

## III. ARGUMENT

The interests in privacy in this case outweigh the presumption of openness in judicial proceedings. First, this suit challenges unconstitutional government action, which favors allowing Plaintiff and Anonymous Declarants to proceed anonymously. Second, Plaintiff and Anonymous Declarants disclosed information about sensitive matters of the utmost intimacy. Third, revealing their identities could subject them to retaliation or backlash from guards, the government, or persecutors. Finally, allowing Plaintiff and Anonymous Declarants to proceed

anonymously will not meaningfully hinder public access to the proceedings.

**A. Defendants are governmental and will not be prejudiced by anonymity.**

Plaintiffs "challenging the constitutional, statutory or regulatory validity of government activity" are especially likely to be allowed to proceed anonymously. *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). Where plaintiffs are suing government entities, courts have found less need for disclosure of their identities, because governments, unlike private individuals, do not suffer reputational or economic harm from defending a civil action. *Id.*; *Stegall*, 653 F.2d at 185–86. Here, Plaintiffs bring suit against the U.S. government and its agencies and agents, asserting that the U.S. government has subjected Plaintiffs to unconstitutional conditions of confinement at Camp East Montana. *See generally* ECF No. 1. Defendants also will not be prejudiced by anonymity because Plaintiffs will disclose identities to Defendants subject to an appropriate protective order. *See Al Otro Lado, Inc. v. Nielsen*, No. 17-CV-02366-BAS-KSC, 2017 WL 6541446, at *6 (S.D. Cal. Dec. 20, 2017).

**B. Plaintiff and Anonymous Declarants have disclosed sensitive and highly personal information which justifies proceeding anonymously.**

Courts, including this Court, "have repeatedly recognized that a plaintiff's vulnerable immigration status is sufficiently sensitive and personal in nature to warrant the use of a pseudonym." *C.M. v. United States*, No. SA-21-CV-00234-JKP, 2021 WL 1822305, at *2 (W.D. Tex. Mar. 31, 2021) (citing *Hispanic Interest Coal. of Ala. v. Gov. of Ala.*, 691 F.3d 1236, 1247 n.8 (11th Cir. 2012) (collecting cases); *Lozano v. City of Hazleton*, 620 F.3d 170, 195 (3d Cir. 2010), *vacated on other grounds*, 563 U.S. 1030 (2011) ("because of their unlawful status, [plaintiffs] would face an 'exponentially greater' risk of harassment, and even physical danger, if their identities were revealed")). Immigration status of any sort is incredibly

sensitive, and its revelation can subject an individual to adverse consequences including "criminal prosecution, harassment, and intimidation." *Hispanic Interest Coal.*, 691 F.3d at 1247. This case challenges immigration detention conditions, so all Plaintiffs and relevant declarants are or were in immigration detention. As such, if their identities are revealed, sensitive information about their immigration status will be immediately ascertainable from their participation in this case.

In fact, the U.S. government recognizes the particular sensitivity of some of the information at issue. PKP has applied for relief under the Convention Against Torture, RES has applied for asylum, and ZOR, SNM, and CCD have received withholding of removal under the Convention Against Torture. RES Decl. ¶ 2; ZOR Decl. ¶ 7; SNM Decl. ¶ 3; CCD Decl. ¶ 7. Federal regulations provide that documents such as their declarations "that indicate that a specific alien has applied for . . . withholding of removal" must "be protected from disclosure" when they are kept by the government. 8 C.F.R. § 208.6(b).

Several declarants also revealed severely degrading or traumatizing experiences or stigmatizing personal information in their declarations. NYG shared information about his suicide attempt and extremely degrading experiences with guards, as well as sensitive mental health history. *See* NYG Decl. ¶¶ 17, 21, 23, 26. CCD similarly shared about extremely violative experiences with guards, including sexual assault, and his mental health history. CCD Decl. ¶¶ 7, 13, 28–29. HOK described an assault in which he was grievously injured. HOK Decl. ¶ 4, 9, 11. PKP has recounted sensitive details of injuries he received while persecuted in his country of origin, which have been worsened by the lack of medical treatment at Camp East Montana. PKP Decl. ¶ 28. SNM has also recounted details of his HIV status and medical history in his declaration. SNM Decl. ¶¶ 18–19, 35.

While this information is highly probative, revelation of an individual's HIV status, history of abuse, and history of mental illness, in particular, can support the need to proceed anonymously, especially in the immigration context. *See Doe v. Barr*, 479 F. Supp. 3d 20, 26 (S.D.N.Y. 2020); *see also Doe v. Metro. Gov't of Nashville & Davidson Cnty*., 694 F. Supp. 3d 1040, 1045 (M.D. Tenn. 2023) (HIV status). Additionally, Texas courts have found pseudonyms appropriate and "important to preventing additional psychological harm and humiliation" for plaintiffs who experienced abuse in ICE custody. *Doe v. CoreCivic*, *Inc.*, No. 4:20-CV-01828, 2020 WL 3640058, at *2 (S.D. Tex. July 6, 2020) (sexual assault victims).

**C. Revealing Plaintiff and Anonymous Declarants' identities would expose them to an increased risk of retaliation, backlash, and stigma akin to criminal activities.**

Plaintiff and declarants reasonably fear retaliation, physical harm, harassment, and social stigma should their names and participation in this lawsuit be made public.

The United States has retaliated against noncitizens who have complained about detention conditions or who have voiced political opposition to certain policies. *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 934 (W.D. Tex. 2018) (humanitarian parole revoked in retaliation for speaking out on immigration policy); *Vetcher v. Immigr. & Customs Enf't*, No. 1:16-CV-0164-C, 2018 WL 11174809, at *15 (N.D. Tex. Nov. 29, 2018) (retaliatory transfer based on use of grievance system); *M.Q. v. United States*, 776 F. Supp. 3d 180, 193 (S.D.N.Y. 2025) (OSUP revoked as result of speaking out about experience in immigration detention); *Ortiz v. Orange Cnty., New York*, No. 23 CV 2802 (VB), 2024 WL 4905157, at *1–2, 4 (S.D.N.Y. Nov. 27, 2024) (restrictions, segregated confinement, confiscated items, repeated searches, disciplinary citations, and denial of access to attorneys in response to hunger striking and speaking out about conditions of confinement).

Much the same has occurred at Camp East Montana itself, where detainees have spoken to

lawyers or media about their experiences in detention. For instance, after detainees witnessed a fellow ICE detainee's death and spoke to the media, DHS attempted to deport the witnesses. *See* Douglas MacMillan, *DHS seeking to deport two men who said fellow ICE detainee was killed*, Washington Post (Jan. 17, 2026), https://www.washingtonpost.com/immigration/2026/01/17/detainee-death-witnesses-deported-dhsa/. This Court has had to order the government not to remove or transfer witnesses to that death at this very facility. *In the Matter of Jasmarie Lunas Pagan, Jeraldo Lunas Pagan, and Kary Lunas*, No. 3:26-cv-00104, Temporary Restraining Order, ECF No. 4 (W.D. Tex. Jan 21, 2026).

Further, ZOR and Anonymous Declarants have themselves witnessed or experienced guards using intimidation tactics, physical violence, excessive searches, or solitary confinement. ZOR Decl. ¶¶ 35–39, 53; NYG Decl. ¶¶ 20–21, 38, 39, 42; PKP Decl. ¶¶ 26–27; HOK Decl. ¶¶ 4, 30; LLH Decl. ¶ 42; CCD Decl. ¶¶ 28–30. In fact, Plaintiff ZOR and one of the Anonymous Declarants personally knew the man who was killed by use of force by guards at Camp East Montana. NYG Decl. ¶ 20; ZOR Decl. ¶¶ 40. Another declarant was previously transferred from a different facility just after he filed a habeas corpus petition.

In addition to the potential for retaliation in or related to detention, Plaintiff and Anonymous Declarants could face deportation in retaliation for their participation in this suit. Officials at Camp East Montana have already attempted to unlawfully deport people to countries they have fled or third countries. ZOR Decl. ¶¶ 36–37. "Deportation is a particularly severe penalty," which is "intimately related to the criminal process." *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) (citation modified). Courts are mindful to protect litigants from "invit[ing] an opprobrium analogous to the infamy associated with criminal behavior." *Stegall*, 653 F.2d at 186. Plaintiff and Anonymous Declarants reasonably fear immigration retaliation for challenging their

conditions and suing the U.S. government.

Plaintiff and Anonymous Declarants also fear physical harm, harassment, and social stigma from the public—against them or their families. In Texas, over half of hate crimes in 2023 were motivated by race, ethnicity, and ancestry. *See Texas*, U.S. Dep't of Just., https://www.justice.gov/hatecrimes/state-data/texas (last visited Apr. 30, 2026). For example, in 2019, a Texas man carried out a mass shooting in El Paso, Texas. The man "characterized himself as a white nationalist, motivated to kill Hispanics because they were immigrating to the United States" and targeted El Paso for that reason. *See Hate Crime Case Examples*, U.S. Dep't of Justice, https://www.justice.gov/hatecrimes/hate-crimes-case-examples. National immigration policy is also subject to heated debate, which fuels harassment of noncitizens and people of color. Possible social stigma due to a plaintiff's personal connection to an intensely politicized issue can justify leave to proceed anonymously. *See, e.g.*, *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (discussing cases in which courts allowed plaintiffs to proceed anonymously in situations involving mental illness, sexuality, and gender identity).

Finally, ZOR, SNM, PKP, RES, and CCD fled persecution in their home countries, and fear continued persecution from the gangs, governments, or hostile regimes they fled if information about their current whereabouts becomes public or if they are returned to their home countries. *See* ZOR Decl. ¶ 4; SNM Decl. ¶ 3; PKP Decl. ¶ 28; RES Decl. ¶ 2; CCD Decl. ¶ 7. Courts often allow parties to proceed anonymously where revealing their identity could "jeopardize the safety" of the party and their family in their country of origin. *Doe v. Dep't of Homeland Sec.*, No. CV 22-5172, 2023 WL 372085, at *3 (E.D. La. Jan. 24, 2023); *see also Doe v. Gonzales*, 484 F.3d 445, 446 (7th Cir. 2007) ("He has been permitted to litigate his claim pseudonymously because of his fear that if he is returned to El Salvador he will be killed."); *O.M.G. v. Wolf,* No. 20-CV-786 (UNA), 2020

WL 12956895, at *1 (D.D.C. Mar. 23, 2020) (granting plaintiffs leave to file under pseudonyms because disclosure "may subject the claimant[s] to retaliatory measures by government authorities or non-state actors in their home countries") (citation modified).

These concerns are especially prevalent considering that Plaintiff and Anonymous Declarants could be located based on the information in their declarations if their names were made public. *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 617 (2021) (risks of intimidation, harassment, and physical violence "are heightened in the 21st century and seem to grow with each passing year, as anyone with access to a computer can compile a wealth of information about anyone else").

**D. The public interest in open courts will not be meaningfully impinged by sealing the identities of Plaintiff ZOR and Anonymous Declarants.**

The public interest in open courts will not be substantially harmed by granting this motion. Courts ultimately weigh the privacy interests discussed above against the public interest in, and presumption towards, open courts. *See Van Waeyenberghe*, 990 F.2d at 848; *Stegall*, 653 F.2d at 185–186. While there is a presumption in favor of public access, the Fifth Circuit "has repeatedly refused to so characterize the public access presumption as 'strong' or require a strong showing of proof." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019) (citations omitted). Importantly, the propriety of sealing records is evaluated "line-by-line." *Binh Hoa Le*, 990 F.3d at 419. And ultimately, "anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." *Stegall*, 653 F.2d at 185. Sealing only the names and identifying information of Plaintiff and Anonymous Declarants, while providing public access to all other relevant information, as proposed here, will not seriously impede the public from engaging with the case. *See League of United Latin Am. Citizens*, 2022 WL 2806850 at *8; *Doe v. Dep't of Homeland Sec.*, 2023 WL 372085, at *2. Because the balancing at issue here

favors anonymity, this motion should be granted.

Respectfully submitted,

Dated: June 1st, 2026

_/s/ Kyle Virgien_
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Kyle Virgien (*pro hac vice* forthcoming)
Rita Lomio (*pro hac vice* forthcoming)
Felipe Hernandez (*pro hac vice* forthcoming)
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770
kvirgien@aclu.org
npp_rlomio@aclu.org
npp_fhernandez@aclu.org

Carmen Iguina Gonzalez (*pro hac vice* forthcoming)
Elisa Epstein (*pro hac vice* forthcoming)
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Tel.: (202) 393-4930
ciguinagonzalez@aclu.org
eepstein@aclu.org

FARELLA BRAUN + MARTEL LLP
Jim Day (CA SBN 197158) (*admitted*)
Cynthia A. Castillo (TX SBN 24097474)
Raven Quesenberry (CA SBN 346250) (*admitted*)
Hilary C. Krase (CA 318762) (*pro hac vice* forthcoming)
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Fax: (415) 954-4480
jday@fbm.com
ccastillo@fbm.com

_/s/ Savannah Kumar_
Savannah Kumar
TX Bar No. 24120098
Fabiola Alvelais
TX Bar No. 24146029
Edgar Saldivar
TX Bar No. 24038188
Adriana Pinon
TX Bar No. 24089768
ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax (713) 942-8966
skumar@aclutx.org
falvelais@aclutx.org
esaldivar@aclutx.org
apinon@aclutx.org

Alana Park
Texas Bar No. 24150568
Zachary Dolling
Texas Bar No. 24105809
Charlotte Weiss (application for admission pending)
New York Bar No. 6313639
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, Texas 78760
(512) 474-5073 ext. 162
alana@texascivilrightsproject.org
zachary@texascivilrightsproject.org
cweiss@texascivilrightsproject.org

Dustin Rynders
Texas Bar No. 24048005
TEXAS CIVIL RIGHTS PROJECT

rquesenberry@fbm.com
hkrase@fbm.com

P.O. Box 1108
Houston, Texas 77251
(832) 767-3630 ext. 196
dustin@texascivilrightsproject.org

Daniel Hatoum
Texas Bar No. 24138347
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 219
Alamo, Texas 78516
(956) 787-8171 ext. 127
daniel@texascivilrightsproject.org

## CERTIFICATE OF CONFERENCE

This motion was initially filed simultaneously with the Complaint in this action. Plaintiffs did not confer with counsel for Defendants because counsel had not yet been identified. I certify that Plaintiffs are conferring with Defendants regarding this motion, but do not yet know Defendants' position..

*/s/ Savannah Kumar*

Savannah Kumar
Texas State Bar Number: 24120098
ACLU Foundation of Texas, Inc.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax (713) 942-8966
skumar@aclutx.org

## CERTIFICATE OF SERVICE

This motion was initially filed simultaneously with the Complaint in this action. I certify that Plaintiffs will serve this motion in accordance with the Federal Rules of Civil Procedure and the local rules of this court.

*/s/ Savannah Kumar*

Savannah Kumar
Texas State Bar Number: 24120098
ACLU Foundation of Texas, Inc.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax (713) 942-8966
skumar@aclutx.org