**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| Gerald Akari Angye, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. Immigration and Customs Enforcement, *et al.*,<br><br>*Defendants*. | Civil Action No.: 3:26-cv-1515-LS |

**DECLARATION OF CHARLOTTE WEISS**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR LIMITED EXPEDITED DISCOVERY**

I, Charlotte Weiss, declare as follows:

1. I am an attorney at the Texas Civil Rights Project. My organization and I represent named Plaintiffs Gerald Akari Angye, Navdeep, Erik Ivan Rodriguez Flores, and ZOR in this lawsuit. I am a member of the New York State Bar, and my admission to the United States District Court for the Western District of Texas is pending.

2. I have personal knowledge of the facts stated in this declaration and, if called to testify, could and would competently testify thereto. I make this declaration in support of Plaintiffs' Motion for Limited Expedited Discovery.

**ICE Policies Regarding Medical Records**

3. On June 1, 2026, I visited the U.S. Immigration and Customs Enforcement ("ICE") website entitled, "Detention Management," at https://www.ice.gov/detain/detention-management. I clicked on the link for "2025 National Detention Standards," and then the link for "View the complete 2025 National Detention Standards," which directed me to https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf. A true and correct copy of the PDF document that appeared at https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf, entitled, "National Detention Standards (Revised 2025)," is attached hereto as **Exhibit A**.

4. On June 1, 2026, I visited the ICE website entitled, "National Detainee Handbook," at https://www.ice.gov/detain/detention-management/national-detainee-handbook. I clicked on the link for "English," which directed me to https://www.ice.gov/doclib/detention/ndHandbook/ndhEnglish.pdf. A true and correct copy of the PDF document that appeared at https://www.ice.gov/doclib/detention/ndHandbook/ndhEnglish.pdf, entitled, "National Detainee Handbook (2026)," is attached hereto as **Exhibit B**.

**Requests for Medical Records from Camp East Montana**

5. On March 12, 2026, my colleague Fabiola Alvelais, an attorney at the ACLU of Texas, sent a request for medical records for four people currently or previously held at Camp

East Montana to the Facility Director of Camp East Montana, Michael Watkins ("Director Watkins"), copying me. Ms. Alvelais attached medical record requests signed by the individual patients, including the ICE Privacy Waiver Authorizing Disclosure to a Third Party ("ICE Privacy Waiver") for each. The next day, Director Watkins responded by email, "I have sent your medical records request to our medical dept."

6. True and correct copies of Ms. Alvelais's email to Director Watkins on March 12, 2026, without attachments, and Director Watkins's response dated March 13, 2026, are attached hereto as **Exhibit C**.

7. I had seen news reports that the contractor operating Camp East Montana was changing to Amentum, so on March 13, 2026, I wrote to Director Watkins and asked who the new contact person would be for medical record requests when Amentum took over. I included on my email ICE officials, including Assistant Field Office Directors ("AFODs") Angel Garite and Daniel Subia. That same day, Director Watkins responded: "As it stands right now continue as is." I responded to Director Watkins that same day, thanking him for his prompt response and asking: "To follow up: How long will Acquisition Logistics continue as the contractor at the facility? And when Amentum takes over, could you share the information for the person who will be the new point of contact for the medical records request process?" Director Watkins did not respond to these questions.

8. True and correct copies of my emails with Director Watkins on March 13, 2026, are attached hereto as **Exhibit D**.

9. On March 18, 2026, after I had received no response to my email dated March 13, I sent a follow-up email reiterating my requests. ICE officials, including AFODs Garite and Subia, were copied on my email. Director Watkins did not respond to my March 18, 2026, follow-up email.

10. A true and correct copy of my email to Director Watkins on March 18, 2026, is attached hereto as **Exhibit E**.

11. On March 18, 2026, Ms. Alvelais sent another email to Director Watkins, copying me, asking for an update on the previous March 12, 2026 requests and requesting medical records from Camp East Montana for five additional people, again attaching signed medical record requests from the individual patients, including ICE Privacy Waivers. Because the facility remained closed to all in-person legal visitations due to a measles outbreak at the facility, the March 18, 2026, medical record requests included electronic signatures and attorney attestations in compliance with 6 C.F.R. § 5.21(e). Director Watkins did not respond to Ms. Alvelais's March 18, 2026, email.

12. A true and correct copy of Ms. Alvelais's email to Director Watkins dated March 18, 2026, without attachments, is attached hereto as **Exhibit F**.

13. On March 26, 2026, Ms. Alvelais sent another email to Director Watkins, copying me, to "follow up on our repeated requests for medical records." Ms. Alvelais explained that "detainees and their representatives are entitled to medical records under the National Detention Standards (see Standard 4.3)." Ms. Alvelais further stated: "Please produce the requested medical records immediately. If they are not produced this week, please provide an explanation for the delay and the date on which they will be produced." Ms. Alvelais asked Director Watkins to call her if it would be helpful to discuss the matter. The same day, Director Watkins replied, "I will follow up on this."

14. A true and correct copy of Ms. Alvelais's email to Director Watkins dated March 26, 2026, without attachments, and his response the same day, is attached hereto as **Exhibit G**.

15. On March 31, 2026, Ms. Alvelais sent an email to Director Watkins, copying me, requesting medical records from Camp East Montana for two additional people, again attaching signed medical record requests from the individual patients, including ICE Privacy Waivers. She further asked: "When can we anticipate a response to this and our requests of March 12 and 18?" That same day, Director Watkins responded: "Medical is working on them."

16. True and correct copies of Ms. Alvelais's email to Director Watkins dated March 31, 2026, without attachments, and his response the same day, are attached hereto as **Exhibit H**.

17. On April 7, 2026, Director Watkins emailed Ms. Alvelais, copying me, stating, "I do not see where the detainee signed these forms to release information to you. Once you get these signed my medical dept will look into this." Ms. Alvelais responded the same day, explaining: "The medical request forms have been electronically signed during attorney virtual visits. Please see the e-signature at the bottom of each page. We have also included a signed attestation of this process with both requests. Can you please confirm that your medical department will process the requests for [two patients]? Additionally, there are 14 other pending requests made as early as 3/12. Can you please confirm these are being processed?" Ms. Alvelais concluded by asking for a Zoom call to discuss the medical request process and gave our availability for a meeting.

18. True and correct copies of Director Watkins's email to Ms. Alvelais and me dated April 7, 2026, and Ms. Alvelais's response the same day, are attached hereto as **Exhibit I**. By "attestation," Ms. Alvelais was referring to attestations by Plaintiffs' counsel under penalty of perjury that they had read the contents of the waiver to the person and the person expressly authorized Plaintiffs' counsel to affix their signature on the waiver, which Plaintiffs had sent with the signed releases. An example excerpt is below, and an example of the medical record request sent for Plaintiff Erik Ivan Rodriguez Flores is attached hereto as **Exhibit J**.

**ATTORNEY ATTESTATION**

I, Felipe De Jesus Hernandez, declare that, on March 18, 2026, the Ft. Bliss Camp East Montana facility remained closed to in-person legal visits due to the measles outbreak, which prevented me from obtaining an in-person signature from **ERIK IVAN RODRIGUEZ FLORES** on their medical release waivers. During a virtual legal visit, I read the contents of this waiver verbatim to **ERIK IVAN RODRIGUEZ FLORES**. After I read the waiver, **ERIK IVAN RODRIGUEZ FLORES** confirmed that the contents were true and correct and expressly authorized me to affix their signature to the waiver on their behalf.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 18, 2026

*<u>/s/ Felipe De Jesus Hernandez</u>*
Felipe De Jesus Hernandez

19. On April 9, 2026, Ms. Alvelais sent an email to Director Watkins, copying me, requesting medical records from Camp East Montana for three additional people, again attaching

signed medical record requests from the individual patients, including ICE Privacy Waivers. She also requested a response to her email dated April 7, 2026.

20. On April 10, 2026, Director Watkins responded to Ms. Alvelais's April 9, 2026, email, stating: "Yes, medical is working all your medical request [sic]. As you are aware we have a lot going on right now and this is tedious work to get medical records. But rest assured medical has been task [sic] and is working them."

21. True and correct copies of Ms. Alvelais's email to Director Watkins dated April 9, 2026, without attachments, and Director Watkins's response the following day are attached hereto as **Exhibit K**.

22. On April 14, 2026, I sent an email to Director Watkins informing him that I would be at Camp East Montana on April 15, 2026, and requesting to speak with him. Director Watkins did not respond to my email.

23. A true and correct copy of my email to Director Watkins dated April 14, 2026, is attached hereto as **Exhibit L**.

24. On April 15, 2026, my colleague Savannah Kumar, an attorney with the ACLU of Texas, responded to Director Watkins's April 10, 2026, email, asking if Director Watkins can provide a time estimate for when the medical records will be produced. That same day, Director Watkins responded that he cannot because "[a]s of now medical is backlogged with ongoing medical at the facility and this is put in as it can be done." In response, Ms. Kumar asked if Director Watkins was available to meet by Zoom or phone to discuss the medical records request process. Director Watkins responded that he was not available to meet. Additionally, he stated: "I assure you that once we are able to get to your request we will."

25. True and correct copies of Ms. Kumar's emails to Director Watkins dated April 15, 2026, and Director Watkins's responses that day are attached hereto as **Exhibit M.**

26. On April 15, 2026, after my scheduled legal visitation at Camp East Montana, I requested to speak with Director Watkins because none of the medical records—including records requested as far back as March 12, 2026—had been produced. Director Watkins met me

in person in the check-in visitation area. Director Watkins told me that on April 18, 2026, the contractor operating Camp East Montana would change from Acquisition Logistics to Amentum, and the security subcontractor would change from Akima to Garda. Director Watkins also told me that Loyal Source Government Services ("Loyal Source") would remain the medical subcontractor. I asked Director Watkins for the name and contact information of the incoming Amentum Facility Director and Director Watkins stated he would share with me this information before his last day on April 17, 2026.

27. On April 15, 2026, Director Watkins also told me that since my office and the ACLU of Texas began requesting medical records, the ICE Health Services Corps. had been changing its electronic medical records system and that no one received their medical records during the data migration. He also told me that our emails requesting medical records never indicated a deadline for receipt of the records. Director Watkins provided me the name of the Loyal Source Health Services Administrator ("HSA"), Luis González.

28. On April 17, 2026, I sent an email to Director Watkins, explaining that our discussion on April 15 "was the first time you shared with us that information [about the data migration], despite the numerous emails we sent asking for an update on the medical records processing." That same day, Director Watkins responded that he forwarded my email to the incoming Facility Director Jack Warford and that Mr. Warford "should be in touch."

29. True and correct copies of my email to Director Watkins on April 17, 2026, and his response the same day are attached hereto as **Exhibit N**.

30. On April 21, 2026, I again visited Camp East Montana. Following my conversation with Director Watkins, I asked to speak with Loyal Source HSA Luis González, but the front desk staff told me that he was not available. I spoke instead with an employee who identified herself as the Security Operations Trainee at Amentum and who said that she previously worked with Acquisition Logistics. The employee recommended that I email Amentum Directors Jack Warford and Christian Rodriguez, and Loyal Source HSAs and Assistant HSAs Luis González, Yvonne Lares, and Rosana Esqueda. She provided email

addresses for those five individuals. The Security Operations Trainee also told me that ICE hadn't approved an electronic medical records system for Camp East Montana until recently, but that the new system, Sapphire, should go into effect on May 1, 2026. The employee also told me that people detained at Camp East Montana can request their medical records via tablet or written requests and should receive a response within five days because it is considered a grievance.

31. On April 22, 2026, as directed by the Security Operations Trainee, I sent an email to Directors Warford and Rodriguez introducing myself, requesting help processing medical records we had requested as far back as March 12, requesting a meeting to discuss the process for requesting medical records, and requesting information about the medical records clerk or the person to whom I should address future requests for medical records. I reattached fifteen pending medical record requests for their convenience. As previously directed by Director Watkins, I included in my email a deadline (April 24) for processing the pending medical record requests. Neither Director Warford nor Director Rodriguez responded to my April 22, 2026, email.

32. A true and correct copy of the email I sent to Directors Warford and Rodriguez on April 22, 2026, without attachments, is attached hereto as **Exhibit O**.

33. After I received no response to my email dated April 22, 2026, I sent two follow-up emails to Directors Warford and Rodriguez on April 27, 2026, and May 5, 2026, renewing my requests. Neither Director Warford nor Director Rodriguez responded to my follow-up emails.

34. True and correct copies of my emails to Directors Warford and Rodriguez on April 27, 2026 and May 5, 2026, are attached hereto as **Exhibit P**.

35. On April 22, 2026, as directed by the Security Operations Trainee, I also sent an email to HSA González, copying Assistant HSAs Lares and Esqueda, introducing myself, requesting help processing medical records we had requested as far back as March 12, requesting a meeting to discuss the process for requesting medical records, and requesting information about the medical records clerk or the person to whom I should address future requests for medical records. I reattached fifteen pending medical record requests for their convenience. As

previously directed by Director Watkins, I included in my email a deadline (April 24) for processing the pending medical record requests. Neither HSA González nor Assistant HSAs Lares and Esqueda responded to my April 22, 2026, email.

36. After I received no response to my email dated April 22, 2026, I sent two follow-up emails to HSA González and Assistant HSAs Lares and Esqueda on April 27, 2026, and May 5, 2026, renewing my requests. Neither HSA González nor Assistant HSAs Lares and Esqueda responded to my follow-up emails.

37. True and correct copies of my April 22, 2026, email to HSA González, Assistant HSAs Lares, and Esqueda, and my April 27, 2026, and May 5, 2026, follow-up emails, are attached hereto as **Exhibit Q**.

38. I visited Camp East Montana on April 29, 2026, because neither Directors Warford and Rodriguez nor HSA González and Assistant HSAs Lares and Esqueda responded to my April 22, 2026, April 27, 2026, and May 5, 2026, emails. Directors Warford and Rodriguez were unavailable to speak with me. I also requested to speak with HSA González and Assistant HSAs Lares and Esqueda. The front desk passed along my request to a Garda lieutenant, who spoke to HSA González and Assistant HSAs Lares and Esqueda. The lieutenant stated that Loyal Source has a policy of not speaking with attorneys and directed me to speak with ICE as an intermediary. Because HSA González and Assistant HSAs Lares and Esqueda never responded to my repeated emails, this was the first time I learned about this policy.

39. On May 5, 2026, in compliance with Loyal Source's stated policy, I sent an email to AFOD Garite and Officer Valle, introducing myself and explaining that I had not received the medical records my colleagues and I had requested as far back as March 12, 2026. That same day, I received a response from AFOD Garite, stating: "I will provide you an update tomorrow. We did have our compliance team reviewing the request." The next morning, on May 6, 2026, I thanked AFOD Garite for his response and let him know that I would be at Camp East Montana that afternoon. I asked for his availability for an in-person meeting that day.

40. A true and correct copy of my emails with AFODs Garite and Officer Valle dated May 5, 2026, and my response on May 6, 2026, is attached hereto as **Exhibit R**.

41. On May 6, 2026, AFOD Garite sent me an email denying all pending requests. Among other things, he said that electronic signatures were not "legally sufficient" and that records for people no longer at Camp East Montana, including people detained by ICE in other facilities, "must be requested through FOIA." AFOD Garite also told me to not contact the contractor directly and stated that future requests should be submitted through ElPaso.Outreach@ice.dhs.gov.

42. On May 8, 2026, I sent an email to AFOD Garite explaining that "former Acquisition Logistics Director Mike Watkins instructed us to submit medical records by filling out the privacy waiver authorization form and the Acquisition Logistics form" and "never instructed us to go through ICE nor did he reject our medical record requests on the grounds" listed. Furthermore, I explained to AFOD Garite that per 6 C.F.R. § 5.21(e), the electronic signatures with attestations were valid and had been needed "when in-person attorney visits were denied because of the facility's measles outbreak," and that requests for people not currently at Camp East Montana did not have to be made through FOIA. I again requested a meeting to discuss the medical record request process.

43. True and correct copies of AFOD Garite's email to me on May 6, 2026, denying our requests for medical records, and my response email to AFOD Garite on May 8, 2026, are attached hereto as **Exhibit S**.

44. After I did not receive a response to my May 8, 2026 email, I sent AFODs Garite and Subia an email on May 13, 2026, following-up on my previous email, asking about transfer of medical records from Camp East Montana, and again requesting an in-person meeting.

45. On May 14, 2026, AFOD Garite responded that he was not available for a meeting that week and that "[a]ll detainees are transferred in accordance with policy, which includes providing a detailed medical summary and records as needed."

46. On May 15, 2026, I responded to AFOD Garite and told him I was available the following Monday through Wednesday to meet. AFOD Garite never responded to my May 15, 2026 email.

47. True and correct copies of my email to AFODs Garite and Subia on May 13, 2026, AFOD Garite's response on May 14, 2026, and my response on May 15, 2026, are attached hereto as **Exhibit T**.

48. On May 18, 2026, I visited Camp East Montana again to get wet signatures on medical request authorization forms. That same day, I sent an email to ElPaso.Outreach@ice.dhs.gov, as previously directed by AFOD Garite, and copying AFODs Garite and Subia, attaching eight requests for medical records from Camp East Montana, including signed ICE Privacy Waivers. I noted in the email that seven were for people currently detained at Camp East Montana, and one was for someone recently detained at Camp East Montana. I asked that the records be produced by May 26, 2026. I noted in my email that we previously requested medical records for three of the people "with electronic signatures and attestations of counsel because the facility was closed due to a measles outbreak and we therefore could not get wet signatures." I explained that "[w]e continue to take the position that the electronic signatures are valid, but are resubmitting these now to avoid further delay." I asked that they let me know immediately if they had any questions or concerns, "so we can work through any issues promptly."

49. That day, AFOD Garite responded, stating, "ERO is receipt [sic] of your request, and we will begin to process them accordingly."

50. True and correct copies of my email to ElPaso.Outreach@ice.dhs.gov and AFODs Garite and Subia dated May 18, 2026, and AFOD Garite's response the same day, are attached hereto as **Exhibit U**.

51. On May 19, 2026, I sent another email to ElPaso.Outreach@ice.dhs.gov, copying AFODs Garite and Subia, attaching an additional two requests for medical records from Camp East Montana. I asked that the records be produced by May 27, 2026.

52. A true and correct copy of my email dated May 19, 2026, requesting medical records for two people is attached hereto as **Exhibit V**.

53. On May 22, 2026, I sent another email to ElPaso.Outreach@ice.dhs.gov, copying AFODs Garite and Subia, attaching an additional four signed requests for medical records from Camp East Montana. I explained that two of the requests were for people currently at Camp East Montana and two were for people who previously were at Camp East Montana. I asked that the medical records be produced by May 29, 2026.

54. A true and correct copy of my email dated May 22, 2026, requesting medical records for four people, is attached hereto as **Exhibit W**.

55. On May 18, 2026, my colleague Alana Park, an attorney at the Texas Civil Rights Project, emailed Amentum Facility Director Warford and other Amentum and Loyal Source staff a formal demand letter regarding the withheld medical records. The letter was submitted via e-mail and U.S. Postal Service priority mail and gave Amentum and Loyal Source a deadline of May 22, 2026, to produce the withheld medical records. No one from Amentum or Loyal Source responded to this correspondence via email or mail or produced medical records to us.

56. True and correct copies of the May 18, 2026, email, demand letter, and the U.S. Postal Service delivery confirmations are attached hereto as **Exhibit X**.

57. To date, I have received no responses to my emails dated May 19, 2026, and May 22, 2026. I have not received **any** medical records from Camp East Montana from ICE officials or ICE contractors.

**Communication with Opposing Counsel**

58. On May 30, 2026, my colleague Kyle Virgien, an attorney at the ACLU, sent an email to the Chief of the Civil Division for the U.S. Attorney's Office for the Western District of Texas, copying me, asking if she would oppose this motion.

59. On June 1, 2026, the Civil Chief responded to Mr. Virgien's email, stating, in relevant part: "We are working to determine the handling and staffing of this case. I believe it is important to allow the attorneys and office that will primarily handle this litigation to weigh in

on the issues you would like to meet and confer about below. As soon as we have the staffing process completed, we can respond to your request, but if an answer is needed immediately, please state the defendants are opposed to expedited discovery in this case at this time."

60. True and correct copies of Mr. Virgien's email dated May 30, 2026, and the Civil Chief's response on June 1, 2026, are attached hereto as **Exhibit Y**.

61. I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 1, 2026, in El Paso, Texas.

Signature: Charlotte Weiss