**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| Gerald Akari Angye, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No.: 3:26-cv-1515-LS |
| U.S. Immigration and Customs Enforcement, *et al.*, | |
| *Defendants*. | |

**PLAINTIFFS' MOTION FOR RECUSAL UNDER 28 U.S.C. § 455(a)**

Plaintiffs respectfully request that the Honorable Leon Schydlower recuse himself from this matter pursuant to 28 U.S.C. § 455(a). Judge Schydlower currently serves as an officer in the U.S. military, and this case was brought against Secretary of War Pete Hegseth and the Department of War, and will require him to adjudicate issues related to the U.S. military. Although Plaintiffs do not believe that Judge Schydlower has actual partiality that would prevent him from fairly adjudicating this matter, the facts and allegations at issue in this high-profile litigation, coupled with his affiliation with Defendants, have put Judge Schydlower in a sensitive position that gives rise to the appearance of partiality and that no judge should have to navigate.

Plaintiffs have conferred with Defendants about their position on this motion. Counsel for Defendants stated their position as follows: "At this time, Defendants reserve the right to take a position regarding the motion. Defendants will review the arguments in support of Plaintiffs' motion when filed and, at that time, take a position regarding Plaintiffs' motion to recuse." Declaration of Rita Lomio, filed herewith, ¶ 8 (hereinafter "Lomio Decl.") (emphasis omitted).

## I.       Section 455(a) Requires Recusal to Avoid Even the Appearance of Impartiality, Even Where There Is No Actual Partiality Alleged.

Under § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Fifth Circuit has explained that "the purpose of § 455(a), and the principle of recusal itself is not just to prevent actual partiality, but to avoid even the appearance of partiality." *Republic of Panama v. Am. Tobacco Co. Inc.*, 217 F.3d 343, 346 (5th Cir. 2000) (citation modified); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988) ("The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible."). Section 455(a) exists to address the "problem … that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges," a concern that "has constitutional dimensions." *Id.* at 864–65 & n.12. "Put simply, avoiding the appearance of impropriety is as important in developing public confidence in our judicial system as avoiding impropriety itself." *United States v. Jordan*, 49 F.3d 152, 155–56 (5th Cir. 1995).

"In order to determine whether a court's impartiality is reasonably in question, the objective inquiry is whether a well-informed, thoughtful and objective observer would question the court's impartiality." *Republic of Panama*, 217 F.3d at 346 (citation modified). "The analysis of a § 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the facts and circumstances of the particular claim." *Id.* Here, for the reasons set forth below, that "objective inquiry" leads to the conclusion that "a well-informed, thoughtful and objective observer would question the court's impartiality." *See id.*; *see also id.* at 347 (finding that, although there was "no evidence of actual bias," the trial judge abused his discretion in failing to recuse where "a reasonable person might harbor doubts about the trial judge's impartiality").

## II.    This Is a High-Profile Case Alleging Egregious Conditions of Confinement on a U.S. Military Base.

This is a high-profile case that will require the Court to determine whether thousands of people have been and are being held on a U.S. military base in violation of the U.S. Constitution and Administrative Procedure Act. Plaintiffs filed a 78-page complaint alleging unconstitutional and inhumane conditions of confinement at the ERO El Paso Camp East Montana Detention Facility ("Camp East Montana"), a tent encampment located on the Fort Bliss military base in El Paso, Texas. *See* ECF No. 1. Plaintiffs alleged that people detained at Camp East Montana are subjected to conditions that amount to unconstitutional punishment, including confinement to unsanitary and unsafe windowless tent enclosures, with little access to the outdoors or recreation; physical abuse by guards that resulted in the death of one detainee; abhorrent medical and mental health care, including for people with chronic conditions; and indiscriminate use of solitary confinement to punish people who raise concerns about their treatment. *Id.*

The facility and this litigation already have garnered widespread press attention, including regarding three deaths that have occurred in less than a year of operation.[1] Several members of

---

[1] *See, e.g.*, Emma Hoggard, *Autopsy reveals first Camp East Montana fatality died of natural causes*, KVIA (Jan. 21, 2026), https://kvia.com/news/border/2025/12/09/camp-east-montanadetainee-dies-at-el-paso-hospital-of-natural-causes-ice-says/    [https://perma.cc/C4ER-

MWNW]; Michael Biesecker, Cedar Attanasio & Ryan J. Foley, *ICE says Cuban immigrant died while attempting suicide. A witness says guards pinned and choked him*, AP NEWS (Jan. 17, 2026), https://apnews.com/article/ice-immigration-detention-death-texas2bfb614b2b222803d309f338357d04eb [https://perma.cc/UG8K-6NGP]; Natalie Venegas, *Medical Examiner Rules Migrant's Death at Camp East Montana a Homicide*, KFOX14 (Jan. 21, 2026), https://kfoxtv.com/news/local/medical-examiner-rules-migrants-death-at-camp-east-montana-a-homicide [https://perma.cc/7877-FZ6F]; Colleen DeGuzman, *After El Paso's ME ruled migrant's death a homicide, ICE sent the next body to an Army hospital*, TEXAS TRIBUNE (Feb. 3, 2026), https://www.texastribune.org/2026/02/03/texas-ice-detention-deaths-autopsy-elpaso/ [https://perma.cc/RY9K-NZ2H]; Andrew Hay, *Rights Groups Sue Over Conditions at Largest U.S. Immigration Detention Center*, REUTERS (May 30, 2026), https://www.reuters.com/legal/government/rights-groups-sue-over-conditions-largest-us-immigration-detention-center-2026-05-30/ [https://perma.cc/Z9KB-Y8BN]; Kristin Wright, *Immigrant detainees sue over 'horrific' conditions at Texas ICE facility*, NPR (May 30, 2026), https://www.npr.org/2026/05/30/nx-s1-5841359/immigrant-detainees-sue-texas-camp-east-montana [https://perma.cc/P25L-86MX]; Alex Nguyen, *ICE sued over "inhumane" conditions at Camp East Montana in West Texas*, TEXAS TRIBUNE (May 30, 2026), https://www.texastribune.org/2026/05/30/texas-ice-camp-east-montana-conditions-lawsuit/ [https://perma.cc/U3AU-8TXH]; Dave Burge, *Groups Sue ICE Over "Inhumane" Conditions at Texas Detention Center*, YAHOO NEWS (May 30, 2026), https://www.yahoo.com/news/politics/articles/groups-sue-ice-over-inhumane-150559064.html [https://perma.cc/E9ZG-UCTD]; Alexandra Villarreal, *"Dire" conditions at ICE facility severely violate human rights, lawsuit claims*, THE GUARDIAN (May 30, 2026), https://www.theguardian.com/us-news/2026/may/30/lawsuit-camp-east-montana-texas-us-immigration-ice [https://perma.cc/U5U6-UYK3]; Ryan Autullo, *US's Largest Migrant Detention Center Sued After Three Deaths*, BLOOMBERG LAW (June 1, 2026), https://news.bloomberglaw.com/health-law-and-business/uss-largest-migrant-detention-center-sued-after-three-deaths [https://perma.cc/SK2Y-RX6X]; Mateo Rosiles, *Texas ICE detainees in El Paso sue over 'flagrant human rights abuses,'* USA TODAY (June 1, 2026), https://www.usatoday.com/story/news/2026/06/01/four-detainees-sue-ice-over-conditions-at-camp-east-montana-in-texas/90350551007/ [https://perma.cc/VBG2-8BXH]; Laura Romero and Armando Garcia, *ACLU sues DHS over "inhumane conditions" at nation's largest immigration detention facility*, ABC NEWS (June 1, 2026), https://abcnews.com/US/aclu-sues-dhs-inhumane-conditions-nations-largest-immigration/story?id=133492027 [https://perma.cc/22KE-TW2K]; Ryan Mancini, *Rights groups allege abuses at largest US immigration detention center*, THE HILL (Jun. 1, 2026), https://thehill.com/regulation/court-battles/5904627-ice-detention-abuses-lawsuit/ [https://perma.cc/S55Y-TQFL]; Jonathan Blitzer, *Locked Away*, THE NEW YORKER (July 13, 2026), https://www.newyorker.com/magazine/2026/07/20/locked-away [https://perma.cc/GXT6-FYZ8]; Douglas MacMillan, *ICE detention camp endangered migrants and wasted millions, watchdog finds*, THE WASHINGTON POST (June 9, 2026), https://www.washingtonpost.com/business/2026/06/09/ice-detention-camp-wasted-millions-endangered-migrants-gao-finds/ [https://perma.cc/JPJ8-7LBC].

3

Congress have visited the facility and reported their findings of abusive conditions inside, and at least 24 members of Congress have demanded that the facility be shut down to end continued abuse and government waste.[2]

In addition, immigration detention more broadly, conditions of confinement in detention facilities, and related litigation have attracted significant attention from the public, with constant media reporting on rulings and case developments concerning such litigation.[3] There is no question, therefore, that this high-profile case will continue to be the subject of heavy public scrutiny and media reporting on court rulings and litigation developments.

---

[2] Letter from Veronica Escobar, *et al.*, to DHS Secretary Kristi Noem (Feb. 26, 2026), https://escobar.house.gov/uploadedfiles/shut_down_camp_east_montana_final.pdf [https://perma.cc/AK96-H3MR]; Press Release, *U.S. Rep. Kelly Morrison Conducts Oversight of Nation's Largest Detention Facility in Texas Where Minnesotans Are Being Held* (Mar. 25, 2026), https://morrison.house.gov/media/press-releases/us-rep-kelly-morrison-conducts-oversightnations-largest-detention-facility [https://perma.cc/LDG9-3SZA]; Press Release, *Rep. Gabe Vasquez Conducts Congressional Oversight Visit at Camp East Montana* (Apr. 6, 2026), https://vasquez.house.gov/media/press-releases/rep-gabe-vasquezconducts-congressional-oversight-visit-camp-east-montana [https://perma.cc/D83Y-VSMJ].

[3] *See, e.g.*, Tyche Hendricks and Elize Manoukian, *Judge Orders ICE to Provide Medical Care in Largest Immigration Jail in California*, KQED (Feb. 11, 2026), https://www.kqed.org/news/12073215/judge-orders-ice-to-provide-medical-care-in-largest-immigration-jail-in-california [https://perma.cc/63NW-52P3]; Wendy Fry & Sergio Olmos, *Judge Demands Immigrants at Adelanto Get Clean Water and Medical Care*, CALMATTERS (July 16, 2026), https://calmatters.org/justice/2026/07/judge-adelanto-conditions-injunction/ [https://perma.cc/5KWN-JBVX]; Hillel Aron, *Judge orders ICE to improve conditions at Adelanto detention center*, COURTHOUSE NEWS SERVICE (July 16, 2026), https://www.courthousenews.com/judge-orders-ice-to-improve-conditions-at-adelanto-detention-center/ [https://perma.cc/6XWH-TWCB]; Matthew Rodriguez, *Federal judge orders extensive reforms to Adelanto ICE detention center*, CBS NEWS (July 17, 2026), https://www.cbsnews.com/losangeles/news/federal-judge-orders-extensive-reforms-to-adelanto-ice-detention-center/ [https://perma.cc/P2M9-2EZV]; Nigel Duara, *A Judge Sent a Doctor to Evaluate California's Largest ICE Detention Center. What He Found*, KPBS (July 30, 2026), https://www.kpbs.org/news/border-immigration/2026/07/30/a-judge-sent-a-doctor-to-evaluate-californias-largest-ice-detention-center-what-he-found [https://perma.cc/T5VV-QGQU]; Brittny Mejia and Ruben Vives, *Federal Judge Orders Sweeping Changes at Adelanto ICE Detention Center*, LA TIMES (July 16, 2026), https://www.latimes.com/california/story/2026-07-16/federal-judge-orders-sweeping-changes-at-adelanto-ice-detention-center [https://perma.cc/C6SX-9M28].

Those court rulings and litigation developments will include the Court's adjudication of allegations and requests related to Defendant Department of War and Defendant Hegseth. The role of the U.S. military is squarely at issue in this case, including in the building and initial operation of Camp East Montana, inadequate oversight and accountability, and the continued use of military resources to operate Camp East Montana. The Army, a component of Defendant Department of War and under the purview of Defendant Hegseth, "awarded and administered the $1.3 billion facility contract" under which the Camp East Montana tent encampment was erected[4]—the tent encampment that Plaintiffs allege was designed and built in a way that leads to unconstitutional conditions, including lack of access to sunlight and constant sand and dust contamination of living spaces.[5] In fact, the government recently acknowledged "a history of significant performance deficiencies under the current contract, which was originally issued by the Department of the Army on July 18, 2025," noting that "ICE was not the source selection authority for the original task order, resulting in a contract and Performance Work Statement (PWS) that did not accurately

---

[4] Government Accountability Office, *Immigration Detention: Waste and Performance Issues at Camp East Montana Provide Valuable Lessons for Future Facilities*, GAO-26-108886 (June 09, 2026), https://files.gao.gov/reports/GAO-26-108886/index.html? [https://perma.cc/MX59-HUMJ]; *see also* Blitzer, *supra note* 1 ("ICE was ramping up arrests nationwide, and the government, in search of more space to hold people, opted to erect tents . . . at military installations and close to existing ICE jails. 'The idea seemed to be: How can we do this as cheaply and brutally as possible?' Claire Trickler-McNulty, a former senior ICE official, told me."); Douglas S. Pasternak, *Billion Dollar Collapse: The Anatomy and Failure of an ICE Detention Center Contract* 5 (Apr. 13, 2026), https://www.citizen.org/article/billion-dollar-collapse/ [https://perma.cc/LL2M-MA58] ("The U.S. Army . . . was found by a federal judge to have violated federal contracting regulations and the Competition in Contracting Act (CICA), by not temporarily suspending the contract in July 2025").

[5] *See, e.g.*, ECF No. 1 ¶ 4 ("limited or no access to sunlight"), ¶ 7 ("Detained people struggle to breathe as sand and dust from the desert pours in through the ventilation system and gaps in the shoddy tents they are forced to live in."), ¶ 8 ("There are no windows anywhere in the unit—no view of the sun or sky, no way to mark the passage of time."), ¶ 46 ("People are caged together in windowless pods for 23 or 24 hours a day, cut off from the outdoors and sunlight"), ¶ 88 ("People at Camp East Montana get limited time outdoors in what they have described as being herded into a dog pen."), ¶ 90 ("Some detained people have gone weeks without seeing the sun during their time at Camp East Montana"), ¶ 179 ("They describe dust coating their beds, tables, and even food that they eat.").

reflect ICE's operational needs or the actual usage of the facility." Lomio Decl., Ex. 3 at 3. Defendant Department of War's own audits reveal violations of contract requirements and raise concerns about the adequacy of the Department's oversight of Camp East Montana.[6]

In addition, after the El Paso County Office of the Medical Examiner ruled the death of a person detained at Camp East Montana a homicide, Defendants began using the William Beaumont Army Medical Center on the Fort Bliss military base to perform autopsies, shielding information from public scrutiny, and there is an open question as to whether and how the Center has otherwise been used to provide services to people detained at Camp East Montana.[7] Furthermore, it appears that the Fort Bliss military police have jurisdiction over police matters arising out of Camp East Montana, Lomio Decl. ¶¶ 6–7—relevant to allegations of guard abuse and violence against people detained at the facility.[8]

Those topics and others likely will be the subject of discovery and litigation, with the Court having to adjudicate any disputes between the parties. The public eye, therefore, will be on the Court and how it resolves contentious issues related to the U.S. military in this case.[9]

---

[6] U.S. Department of War, Inspector General, Report No. DOWIG-2026-088, *Audit of DoW Support for the Care and Safety of Detainees in Response to the National Emergency at the Southern Border* 14-16 (June 9, 2026), https://www.dodig.mil/Reports/Audits-and-Evaluations/Article/4514333/audit-of-dow-support-for-the-care-and-safety-of-detainees-in-response-to-the-na/ (twelve of 22 identified deficiencies in August 2025 had a compliance status of "Noncomplaint" or "Unknown" as of September 25, 2025).

[7] *See, e.g.*, Colleen DeGuzman, *After El Paso medical examiner ruled migrant's death a homicide, ICE sent next body to Army hospital*, TEXAS TRIBUNE (Feb. 3, 2026), https://elpasomatters.org/2026/02/03/ice-camp-east-montana-migrant-death-autopsy-army-hospital-fort-bliss/ [https://perma.cc/KY7V-W7HE] ("The body of a migrant who died at an El Paso immigration detention center was sent to a military hospital rather than the county medical examiner who investigated two previous deaths at the facility — and concluded that one of them was a homicide rather than a suicide.").

[8] *See, e.g.*, ECF No. 1 ¶ 49 ("The guards grabbed Mr. Lunas Campos and physically assaulted him. The last thing others in the solitary confinement unit heard him say was 'Me estás asfixiando'— Spanish for 'you're choking me.' Then silence."), ¶¶ 59–66.

[9] Defendants have indicated that they intend to move to dismiss the complaint in this case. ECF No. 26 at 2 ¶ 2. To the extent that Defendants will argue that recusal is not warranted because

### III.    Judge Schydlower Currently Serves as a U.S. Military Officer, Defendant Department of War Is His Employer, and Defendant Hegseth Controls His Promotion.

Plaintiffs understand from official government websites that Judge Schydlower currently serves as a reserve officer in the U.S. military. Specifically, his biography on the website for this Court and the Federal Judicial Center state that Judge Schydlower is a Lieutenant Colonel in the U.S. Air Force Reserve ("USAFR") and that he has been a USAFR commissioned officer from 2011 to the present. Lomio Decl., Exs. 1 & 2. Plaintiffs do not suggest that Judge Schydlower is currently on "active duty," but instead it appears he is a reserve military officer; although it is distinct from active duty, public sources indicate that reservist status is itself a form of active status.[10] U.S. Air Force reporting shows that Judge Schydlower was selected for promotion to Lieutenant Colonel in Fiscal Year 2020,[11] which appears to put him in line for promotion to the rank of Colonel as soon as 2027.[12]

---

they will move to dismiss Defendants Department of War and Secretary Hegseth from the matter, that ignores that the Court will need to rule on such a motion to dismiss, which means passing judgment on the allegations against these Defendants. And, whatever the outcome of the motion, the Court will still be called upon to rule on discovery disputes for information and records related to Defendants Department of War and Secretary Hegseth given their involvement in the facility contracting, operations and oversight, medical care and autopsies, police matters, and other potential issues in the case.

[10] Air Force Reserve Command, *Glossary of Military & Reserve Terminology*, https://www.afrc.af.mil/About-Us/Fact-Sheets/Display/Article/156010/glossary-of-military-reserve-terminology/ [https://perma.cc/9SGS-F9GP] (defining "Active Status") (last visited Aug. 1, 2026).

[11] Air Reserve Personnel Center, *CY20 USAFR Lieutenant Colonel Promotion List*, at 18, https://www.arpc.afrc.af.mil/Portals/4/CY20%20USAFR%20Lieutenant%20Colonel%20Promotion%20List.pdf (last visited Aug. 1, 2026).

[12] Air Reserve Personnel Center, *Officer Promotion Boards*, https://www.arpc.afrc.af.mil/Services/Officer-Promotion-Boards/ [https://perma.cc/9NGD-WFZD] (last visited Aug. 1, 2026) ("Officers eligible for promotion to the ranks of Maj through Col will meet the mandatory board; in-the-promotion zone (IPZ) members will meet the board at six (6) years time-in-grade (TIG) and, if selected/approved for promotion, these members will pin-on at seven (7) years TIG.").

7

This means that Judge Schydlower is currently employed by Defendant Department of War. This distinguishes this case from *Maier v. Orr*, 758 F.2d 1578 (Fed. Cir. 1985), where the U.S. Court of Appeals for the Federal Circuit reasoned that *past* military service and the receipt of a pension for that service did not mean that a judge had to recuse himself from a case where the military was a party, absent a showing that the pension would be impacted by the outcome of the case. *See id.* at 1582–83. At issue here is *current*, not past, military service by the judge—a distinction specifically noted by the Court in its opinion. *See id.* at 1581 n.3 ("Though legally entitled to remain a member of the active reserve, 5 U.S.C. § 5534, he elected, in the spirit of Canon 5C(3), Code of Judicial Conduct for United States Judges, to retire from the Reserve prematurely in 1976.").

That distinction is critical. The test under § 455(a) "is whether a well-informed, thoughtful and objective observer would question the court's impartiality." *Republic of Panama*, 217 F.3d at 346 (citation modified). The question, then, is whether that "well-informed, thoughtful and objective observer" would have concerns about the impartiality of proceedings in this high-profile case where the judge on the case is in the active employ of one of the defendants. The answer is unquestionably yes. *Cf. In re Al-Nashiri*, 921 F.3d 224, 236–37 (D.C. Cir. 2019) ("The challenge [the judge] faced, then, was to treat the Justice Department with neutral disinterest in his courtroom while communicating significant personal interest in his job application. Any person, judge or not, could be forgiven for struggling to navigate such a sensitive situation. And that is precisely why judges are forbidden from even trying."); *see also id.* at 235 (finding relevant that "[o]nce appointed … immigration judges are subject to such supervision and obligated to perform such duties as the Attorney General shall prescribe" in evaluating potential recusal of judge who had applied and accepted position as immigration judge) (citation modified).[13]

---

[13] Although *Al-Nashiri* involved the recusal of a military judge, rather than an Article III judge, nothing in its analysis was limited to the specific duties served by those judges. In fact, the analysis concerning the potential appearance of impartiality created by dual employment applies with equal force to Article III judges, as the Judicial Conference of the United States Committee on Codes of Conduct recognizes. *See* Opinion No. 84: Pursuit of Post-Judicial Employment,

Moreover, as noted above, Judge Schydlower appears to be in line for promotion to the rank of Colonel as early as next year. And Defendant Secretary Hegseth controls the future of that promotion. Under 10 U.S.C. § 629, the President has the power to remove officers from military promotion lists, such as the one that would be applicable to Judge Schydlower, and most of that authority has been delegated to the Secretary of War via Executive Order 12396.[14] In addition, there are widespread reports, including by news media and members of Congress, that Defendant Hegseth has blocked promotion of officers "deemed ideologically incompatible," circumvented ordinary layers of review for promotions, and attempted to demote a retired officer for his actions as a sitting U.S. senator.[15]

---

https://www.uscourts.gov/sites/default/files/document/guide-vol02b-ch02.pdf; *see also Al-Nashiri*, 921 F.3d at 235 ("That said, relying on section 455, judicial codes of conduct, precedent, and our own judgment as ethics-bound jurists to guide us, we conclude that, based on the totality of the circumstances, Judge Spath's conduct falls squarely on the impermissible side of the line.").

[14] Exec. Order 12396, Defense officer personnel management § 1(b) (Dec. 9, 1982), https://www.archives.gov/federal-register/codification/executive-order/12396.html [https://perma.cc/H2DF-Y8JZ].

[15] *See, e.g.*, Tom Bowman, *Defense Secretary Hegseth intervened to stop promotions of Black and female officers*, NPR (Mar. 27, 2026), https://www.npr.org/2026/03/27/nx-s1-5763863/hegseth-soldiers-promotions [https://perma.cc/V7AV-4W5S]; Sen. Cory Booker, *Following Reports of Political Interference, Booker, Schatz Demand Investigation into Military Promotions Blocked by Hegseth* (July 17, 2026), https://www.booker.senate.gov/news/press/following-reports-of-political-interference-booker-schatz-demand-investigation-into-military-promotions-blocked-by-hegseth [https://perma.cc/D6SM-HDCK]; Grace Eliza Goodwin, *Judge blocks US military from demoting Mark Kelly over 'illegal orders' video*, BBC (Feb. 12, 2026), https://www.bbc.com/news/articles/cvgk4vl30vko [https://perma.cc/T5A7-23J5]; *Kelly v. Hegseth*, 820 F. Supp. 3d 1, 10 (D.D.C. 2026) (granting preliminary injunction where "United States Senator Mark Kelly, a retired naval officer, has been censured by Secretary of Defense Pete Hegseth for voicing certain opinions on military actions and policy" and "has been subjected to proceedings to possibly reduce his retirement rank and pay and threatened with criminal prosecution if he continues to speak out on these issues") (emphasis omitted); *id.* at 20 (noting cases holding that reserve active-status officers have more limited First Amendment protection than retired officers).

9

The question under § 455(a) is, again, whether "a well-informed, thoughtful and objective observer" would have concerns about the impartiality of proceedings where a defendant controls the upcoming promotion prospects of the judge on this high-profile case. The answer is, again, unquestionably yes. Judge Schydlower's status as a military officer, the fact that Defendant Department of War is his employer, and Defendant Hegseth's control over his promotion, together create a predicament no judge should have to face.

*       *       *

Given the specific facts and allegations at issue in this case, and to preserve public confidence in these proceedings, Plaintiffs respectfully request that the Honorable Leon Schydlower recuse himself from this matter under 28 U.S.C. § 455(a) in an abundance of caution and that this matter be reassigned to another judge on the Court.


Dated: August 3, 2026                                  Respectfully submitted,

                                                       /s/ Rita Lomio
ACLU FOUNDATION OF TEXAS, INC.                         AMERICAN CIVIL LIBERTIES UNION
Savannah Kumar                                         FOUNDATION
Texas Bar No. 24120098                                 Rita Lomio (CA 254501) (*pro hac vice*)
Fabiola Alvelais                                       Kyle Virgien (CA 278747) (*pro hac vice*)
Texas Bar No. 24146029                                 Felipe Hernandez (CA 338468) (*pro hac
Edgar Saldivar                                         vice*)
Texas Bar No. 24038188                                 425 California Street, 7th Floor
Adriana Pinon                                          San Francisco, CA 94104
Texas Bar No. 24089768                                 Tel.: (415) 343-0770
P.O. Box 8306                                          rlomio@aclu.org
Houston, TX 77288                                      kvirgien@aclu.org
Tel.: (713) 942-8146                                   npp_fhernandez@aclu.org
Fax: (713) 942-8966
skumar@aclutx.org                                      Carmen Iguina Gonzalez (*pro hac vice*)
falvelais@aclutx.org                                   Elisa Epstein (*pro hac vice*)
esaldivar@aclutx.org                                   915 15th Street NW, 7th Floor
apinon@aclutx.org                                      Washington, D.C. 20005
                                                       Tel.: (202) 393-4930
                                                       ciguinagonzalez@aclu.org
FARELLA BRAUN + MARTEL LLP                             eepstein@aclu.org
Jim Day (CA 197158) (*admitted*)
Cynthia A. Castillo (TX 24097474)
Raven Quesenberry (CA 346250) (*admitted*)

Hilary C. Krase (CA 318762) (*pro hac vice*)
One Bush Street, Suite 900
San Francisco, California 94104
Tel.: (415) 954-4400
Fax: (415) 954-4480
jday@fbm.com
ccastillo@fbm.com
rquesenberry@fbm.com
hkrase@fbm.com

Alana Park
Texas Bar No. 24150568
Zachary Dolling
Texas Bar No. 24105809
Charlotte Weiss (application for admission pending)
New York Bar No. 6313639
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, Texas 78760
Tel.: (512) 474-5073 ext. 162
alana@texascivilrightsproject.org
zachary@texascivilrightsproject.org
cweiss@texascivilrightsproject.org

Dustin Rynders
Texas Bar No. 24048005
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 1108
Houston, Texas 77251
Tel.: (832) 767-3630 ext. 196
dustin@texascivilrightsproject.org

Daniel Hatoum
Texas Bar No. 24099136
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 219
Alamo, Texas 78516
Tel.: (956) 787-8171 ext. 127
daniel@texascivilrightsproject.org

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2026, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record.


*/s/ Rita Lomio*