**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

Gerald Akari Angye, *et al.*,

*Plaintiffs*,

v.

U.S. Immigration and Customs Enforcement, *et al.*,

*Defendants*.

Civil Action No.: 3:26-cv-1515-LS

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECUSAL**

## INTRODUCTION

Under Section 455(a), a judge "*shall* disqualify himself in any proceeding in which his impartiality *might* reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added). "The goal of section 455(a) is to avoid even the appearance of partiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (quotation marks and citation omitted). In other words, its purpose is to protect the courts and further "public confidence in our judicial system . . . ." *United States v. Jordan*, 49 F.3d 152, 155–56 (5th Cir. 1995). Moreover, "if the question of whether § 455(a) requires disqualification is a close one the balance tips in favor of recusal." *Republic of Panama v. Am. Tobacco Co. Inc.*, 217 F.3d 343, 347 (5th Cir. 2000).

Defendants do not dispute the facts and circumstances that Plaintiffs set forth in their motion for recusal. Instead, Defendants invite the Court to adjudicate the merits of the case and rely on technical designations—exactly what Section 455(a) does not allow. Because the material facts are not in dispute, Plaintiffs respectfully request that the Honorable Leon Schydlower recuse himself from this matter.

## ARGUMENT

### I. The Undisputed Facts and Circumstances of This Case Warrant Recusal.

Section 455(a) requires "an independent examination of the facts and circumstances of the particular claim." *Republic of Panama*, 217 F.3d at 346. The material facts and circumstances here are undisputed. Defendants acknowledge that "[t]he Honorable Leon Schydlower *currently* serves as a Lieutenant Colonel in the United States Air Force Reserves." ECF No. 40 at 2 n.1 (emphasis by Defendants).[1] Defendants do not dispute, among other things, the following:

- "[T]his case was brought against Secretary of War Pete Hegseth and the Department of War, and will require [the Court] to adjudicate issues related to the U.S. military." ECF No. 31 at 2.
- This case "will require the Court to determine whether thousands of people have been and are being held on a U.S. military base in violation of the U.S. Constitution and Administrative Procedure Act." *Id*. at 3.

[1] Citations to the docket are to the page numbers assigned by the Court's Electronic Case Filing system, and not to any internal page numbers therein.

- "The Army, a component of Defendant Department of War and under the purview of Defendant Hegseth, 'awarded and administered the $1.3 billion facility contract' under which the Camp East Montana tent encampment was erected—the tent encampment that Plaintiffs allege was designed and built in a way that leads to unconstitutional conditions, including lack of access to sunlight and constant sand and dust contamination of living spaces." *Id.* at 6 & n.4 (quoting U.S. Gov't Accountability Off., Immigration Detention: Waste and Performance Issues at Camp East Montana Provide Valuable Lessons for Future Facilities, GAO-26-108886 (June 9, 2026)).

- "Defendant Department of War's own audits reveal violations of contract requirements and raise concerns about the adequacy of the Department's oversight of Camp East Montana." *Id.* at 7 & n.6 (citing U.S. Dep't of War, Inspector General, Report No. DOWIG-2026-088, Audit of DoW Support for the Care and Safety of Detainees in Response to the National Emergency at the Southern Border 14–16 (June 9, 2026)).

- "[A]fter the El Paso County Office of the Medical Examiner ruled the death of a person detained at Camp East Montana a homicide, Defendants began using the William Beaumont Army Medical Center on the Fort Bliss military base to perform autopsies, shielding information from public scrutiny, and there is an open question as to whether and how the Center has otherwise been used to provide services to people detained at Camp East Montana." *Id.* at 7.

- "[T]he Fort Bliss military police have jurisdiction over police matters arising out of Camp East Montana—relevant to allegations of guard abuse and violence against people detained at the facility." *Id.* at 7 (citing ECF No. 31-2 ¶ 7).

- "[T]he Court will . . . be called upon to rule on discovery disputes for information and records related to Defendants Department of War and Secretary Hegseth given their involvement in the facility contracting, operations and oversight, medical care and autopsies, police matters, and other potential issues in the case." *Id.* at 7–8 n.9.

- "Judge Schydlower appears to be in line for promotion to the rank of Colonel as early as next year." *Id.* at 10.

- "Under 10 U.S.C. § 629, the President has the power to remove officers from military promotion lists, such as the one that would be applicable to Judge Schydlower, and most of that authority has been delegated to the Secretary of War via Executive Order 12396." *Id.* at 10.

- "[T]here are widespread reports, including by news media and members of Congress, that Defendant Hegseth has blocked promotion of officers deemed ideologically incompatible, circumvented ordinary layers of review for promotions, and attempted to demote a retired officer for his actions as a sitting U.S. senator." *Id.* at 10 (internal quotation marks and citations omitted).

. . . .

. . . .

. . . .

. . . .

Instead of disputing the material facts at issue in this motion, Defendants assert that "arguing that any potential upcoming promotion for a reserve military officer would be impacted by his rulings in this case is completely speculative and borders on the absurd." ECF No. 40 at 5–6. But Defendants apply the wrong standard. The question is not whether the upcoming promotion for Judge Schydlower would *in fact* be impacted by his rulings in this case. That is not what Plaintiffs argue, and it is not what the law requires. Rather, under the plain terms of Section 455(a), the question is whether a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *see also Republic of Panama*, 217 F.3d at 347 (holding that district court abused its discretion in denying motion to recuse where "a reasonable person might harbor doubts about the trial judge's impartiality"). As the Fifth Circuit has cautioned:

> Judges who are asked to recuse themselves are reluctant to impugn their own standards. Likewise, judges sitting in review of others do not like to cast aspersions. Yet drawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety. Accordingly, we are mindful that an observer of our judicial system is less likely to credit judge's impartiality than the judiciary.

*Jordan*, 49 F.3d at 157 (internal quotation marks and citation omitted) (holding that judge "abused her discretion in failing to recuse herself").

Here, a reasonable person might harbor doubts as to the ability of a judge to remain impartial given the undisputed facts and circumstances of this case while also serving as a senior officer in the U.S. military. This is particularly so in light of widespread reports that Defendant Hegseth has, to a degree unprecedented in modern times, blocked promotion of and demoted officers for critical or otherwise disfavored views expressed on and off duty. *See* ECF No. 31 at 10 & n.15. Earlier this year, Defendants Department of War and Secretary Hegseth were found to have "punish[ed] a sitting U.S. Senator for his views on military policy." *Kelly v. Hegseth*, 820 F. Supp. 3d 1, 24 (D.D.C. 2026). The court explained:

> United States Senator Mark Kelly, a *retired* naval officer, has been censured by Secretary of Defense Pete Hegseth for voicing certain opinions on military actions and policy. In addition, he has been subjected to proceedings to possibly reduce his retirement rank and

> pay and threatened with criminal prosecution if he continues to speak out on these issues.

*Id.* at 10 (emphasis in original).[2] The *Kelly* court, in its opinion, expressed alarm as to the illegal actions and baseless legal arguments of the Department of War and Secretary Hegseth. *See, e.g.*, *id.* at 10, 21. The case attracted substantial media attention, with reporters naming the judge and quoting the opinion.[3]

Unfortunately, Senator Kelly's case does not appear to be an anomaly. Last month, U.S. Senators Brian Schatz and Cory A. Booker publicly requested an investigation into Secretary

---

[2] *Kelly* turned on the fact that retired servicemembers, like Senator Kelly, have more First Amendment protections than current servicemembers. In particular, the court noted:

> Secretary Hegseth relies on the well-established doctrine that military servicemembers enjoy less vigorous First Amendment protections given the fundamental obligation for obedience and discipline in the armed forces. Unfortunately for Secretary Hegseth, no court has ever extended those principles to *retired* servicemembers, much less a retired servicemember serving in Congress and exercising oversight responsibility over the military.

820 F. Supp. 3d at 10. The well-informed observer here may reasonably be concerned that Judge Schydlower, who is not retired from the military, arguably has fewer speech protections. *See id.* at 20 (noting cases holding that reserve active-status officers have more limited First Amendment protection than retired officers).

[3] *See, e.g.*, Megan Mineiro & Zach Montague, *Judge Temporarily Blocks Hegseth from Punishing Kelly for Video*, N.Y. Times (Feb. 12, 2026) (quoting "blunt ruling" of Judge Richard J. Leon), *available at* https://www.nytimes.com/2026/02/12/us/judge-blocks-kelly-punishment-hegseth.html; Ryan Knappenberger, *Judge picks apart Pentagon defense for Mark Kelly censure*, Courthouse News Service (Feb. 3, 2026), *available at* https://www.courthousenews.com/judge-picks-apart-pentagon-defense-for-mark-kelly-censure/ [https://perma.cc/C2EE-XDBP]; Connor O'Brien & Josh Gerstein, *Federal court blocks Hegseth effort to punish Democratic senator*, Politico (Feb. 12, 2026), *available at* https://www.politico.com/news/2026/02/12/court-hegseth-kelly-senator-00778449 ("The judge said the Pentagon had 'trampled' on Sen. Mark Kelly's First Amendment freedoms."); Devan Cole, *Judge says Pete Hegseth is unlawfully retaliating against Sen. Mark Kelly over 'illegal orders' video*, CNN (Feb. 12, 2026), *available at* https://www.cnn.com/2026/02/12/politics/mark-kelly-pentagon-lawsuit-ruling [https://perma.cc/EG9U-PT82]; Ashley Carnahan *et al.*, *Federal judge grills DOJ lawyers over censure of Democratic senator*, Fox News (Feb. 4, 2026), *available at* https://www.foxnews.com/politics/federal-judge-grills-doj-lawyers-over-censure-democratic-senator?msockid=3c2585e4633a6f68389292f662616e17 [https://perma.cc/CLU5-DGK5]; Grace Eliza Goodwin, *Judge blocks US military from demoting Mark Kelly over 'illegal orders' video*, BBC (Feb. 12, 2026), *available at* https://www.bbc.com/news/articles/cvgk4vl30vko [https://perma.cc/5MX7-LXDE].

Hegseth's "reported removal of officers from various selection boards' lists"—*i.e.*, military promotion lists like the one it appears Judge Schydlower would be on for his upcoming promotion:

> We write to express our concern about the reported decision by Secretary Hegseth to remove certain officers from approved lists provided by promotion selection boards. Secretary Hegseth allegedly took the unprecedented step to remove these officers from promotion lists after selection boards had formally approved them, using what appear to be arbitrary vetting standards. If accurate, such an intervention risks depriving the armed services of highly qualified and distinguished leaders. . . . It is clear his determinations are antithetical to the standards that should be assessed when considering promotions.

Letter from Brian Schatz and Cory A. Booker, U.S. Senators, to Hon. Platte B. Moring III, Inspector General, Department of Defense (July 15, 2026), *available at* https://www.booker.senate.gov/imo/media/doc/dod_ig_letterpdf.pdf [https://perma.cc/X6WD-V9YW]. Moreover, as the *Kelly* court noted, even retired military officers now fear "official reprisal" if they "participate in public debate on important and contested issues." 820 F. Supp. 3d at 22 (quoting amicus brief of 41 retired military officers). A reasonable observer might well conclude that this fear is even more pronounced for any member currently serving in the military, such as Judge Schydlower.

Notably, the *Kelly* court concluded that "whether Senator Kelly himself has *actually* been deterred is largely beside the point." 820 F. Supp. 3d at 22 (internal citation omitted). The same principle applies here. The question is not whether Judge Schydlower will in fact be deterred from ruling fairly—and, when necessary, firmly—against and on matters related to the Department of War and Secretary Hegseth, or whether he will feel as free as the judge in *Kelly* to express concerns as to illegal actions and baseless legal arguments. Rather, the question is whether a reasonable observer would harbor doubts about the ability of Judge Schydlower, a senior military officer subordinate to a named defendant, to remain impartial in a high-profile case against the Department of War and Secretary Hegseth regarding alleged abuses on a U.S. military base. "Any person, judge or not, could be forgiven for struggling to navigate such a sensitive situation. And

that is precisely why judges are forbidden from even trying." *See In re Al-Nashiri*, 921 F.3d 224, 236–37 (D.C. Cir. 2019) (holding that judge abused his discretion in denying motion for recusal).

**II. Defendants Misapply the Section 455(a) Standard.**

Defendants' remaining arguments against recusal also grossly misapply the Section 455(a) standard. Defendants first parse the complaint and contend that, applying *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Department of War and Secretary Hegseth are not proper defendants in this case and cannot be held liable for any current abuses on the military base. ECF No. 40 at 3–4. In other words, Defendants argue that if the Court grants their yet-to-be-filed motion to dismiss, there will be no need for recusal. To start, Plaintiffs strenuously disagree with Defendants' characterization of the allegations in the complaint and the propriety of the parties in the case. And Defendants' resorting to an argument on the merits proves Plaintiffs' point. That Defendants will ask the Court to adjudicate the merits of those arguments soon through a motion to dismiss, and if unsuccessful during a subsequent bench trial, is precisely why recusal is necessary—again, a well-informed observer might reasonably question whether a judge who currently serves as a senior officer in the U.S. military and is up for promotion next year would be impartial in deciding the liability of Defendants Department of War and Secretary Hegseth in a high-profile case regarding abuses on a U.S. military base. *See IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 418 (5th Cir. 2023) ("concerns of judicial impartiality are heightened in the context of bench trials").

Defendants' invitation to the Court to consider the merits of their legal arguments under *Twombly* and 5 U.S.C. § 702 as part of a Section 455(a) analysis also is improper. *See* ECF No. 40 at 4. It is hornbook law that the recusal analysis is from the position of "the same average layperson on the street who would provide the standard in any case, not a person with professional skills and experience in litigation." 32 Am. Jur. 2d Federal Courts § 60; *see also Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1310 (10th Cir. 2015) ("The reasonable observer is not the judge or even someone familiar with the judicial system, but rather an average member of the public."); *Jordan*, 49 F.3d at 156–57 ("Judges must ascertain how a reasonable person would react

to the facts. Problematic is the fact that judges do not stand outside of the judicial system; they are intimately involved in the process of obtaining justice.").

Defendants' argument also fails because analysis under Section 455(a) is not limited to the judge's relationship with a *named* defendant. Section 455(a) sweeps more broadly; as the D.C. Circuit explained, "[o]n issues of judicial impartiality, . . . we confront a question of reasonable appearances, not just formal designations." *In re Al-Nashiri*, 921 F.3d at 236 (rejecting government's argument that recusal was not necessary because the judge's prospective employer was not a formal "party" to the case).[4] Whatever the outcome of any motion to dismiss the Department of War and Secretary Hegseth as defendants (which Plaintiffs will oppose), the Court still will be called on to decide the ultimate question, which unavoidably involves the U.S. military: whether the federal government is unlawfully detaining people on the Fort Bliss military base in El Paso, Texas. ECF No. 31 at 3. And there will be many decisions along the way that likewise implicate the U.S. military; as Plaintiffs previously explained, the Court will "be called upon to rule on discovery disputes for information and records related to Defendants Department of War and Secretary Hegseth given their involvement in the facility contracting, operations and oversight, medical care and autopsies, police matters, and other potential issues in the case." *Id.* at 7–8 n.9. As to those points, Defendants provide no response. Their argument hinges entirely on an overly narrow and technical recusal analysis.

Next, Defendants point to a statute enacted to "protect reservists from being disadvantaged in employment merely because of their status as members of the armed services." *Woods v. Covington County Bank*, 537 F.2d 804, 811 (5th Cir. 1976); *see* ECF No. 40 at 5 (citing 5 U.S.C. § 2105(d)). That has no relevance here. "By eliminating blanket prohibitions against the civilian

---

[4] "In 1974 Congress amended the Judicial Code 'to broaden and clarify the grounds for judicial disqualification.'" *Liljeberg*, 486 U.S. at 849 (quoting 88 Stat. 1609). "Prior to the 1974 amendments, § 455 simply provided: 'Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.'" *Id.* at 858 n.7 (quoting 28 U.S.C. § 455 (1970 ed.)).

employment of reservists, Congress did not intend to relieve them of the ethical obligations of their respective professions." *Woods*, 537 F.2d at 811–12; *Am. Fed'n of Gov't Emps. v. Hoffman*, 543 F.2d 930, 942 (D.C. Cir. 1976) ("The purpose of Section 2105(d) was simply to exempt reserve members who were not otherwise employed by the United States from statutory restrictions on activities of federal employees"). For that reason, the existence of the statute does not foreclose inquiry into whether there is an appearance of partiality here. *See Woods*, 537 F.2d at 811 (explaining that reservists protected by Section 2105(d) are not "exempt from the Canon 9 requirement that a lawyer should avoid even the appearance of professional impropriety").

Finally, Defendants quibble with a footnote in *Maier v. Orr*, 758 F.2d 1578 (Fed. Cir. 1985). ECF No. 40 at 5. In that case, the Federal Circuit rejected a motion to vacate an order and for rehearing in a suit against the Secretary of the Air Force where the chief judge, who sat on the panel that unanimously decided against the movant, "has been retired from, and has thus not been 'in' or associated with the Air Force Reserve or any military organization for *nine years*." *Maier*, 758 F.2d at 1581 (emphasis in original). The Court found the motion frivolous because it was based on false information, explaining among other things that the assertion that the chief judge "*is* a Reserve Brigadier General in the Air Force" was "untrue." *Id.* at 1581 (emphasis added); *see also id.* at 1584 (admonishing counsel for not "investigating the accuracy of statements," which could have been accomplished through a "single phone call to the Administrative Office of the United States Courts, or to the Clerk of this court, or a single checking of biographical listings available in every library"). The Court added in a footnote: "Though legally entitled to remain a member of the active reserve, 5 U.S.C. § 5534, [the chief judge] elected, in the spirit of Canon 5 C(3), Code of Judicial Conduct for United States Judges, to retire from the Reserve prematurely in 1976." *Id.* at 1581 n.3; *see* Canon 5 C(3), Code of Judicial Conduct for United States Judges, 69 F.R.D. 273, 282 (1973) ("As soon as he can do so without serious financial detriment, [a judge] should divest himself of investments and other financial interests that might require frequent disqualification.").

It is not clear what Defendants attempt to make of *Maier*. To the extent they suggest that the motion to recuse in this case is frivolous for the same reason it was in *Maier*, *see* ECF No. 40 at 5, they are deeply mistaken. Unlike *Maier*, Defendants here admit that "[t]he Honorable Leon Schydlower *currently* serves as a Lieutenant Colonel in the United States Air Force Reserves." ECF No. 40 at 2 n.1 (emphasis by Defendants). The official websites for the U.S. District Court for the Western District of Texas and the Federal Judicial Center, "the research and education agency of the judicial branch of the U.S. government," publicly state that Judge Schydlower is a Lieutenant Colonel in the U.S. Air Force Reserve. *See* ECF Nos. 31-2 ¶¶ 2–5, 31-3 at 3 ("**Military Service**: United States Air Force Reserve (2011-Present)"), 31-4 at 2–3 ("**Professional Career**: . . . U.S. Air Force Reserve lieutenant colonel, 2010-"). There is no suggestion, then, that Plaintiffs' statement that Judge Schydlower currently serves as a senior officer in the U.S. Air Force Reserve is unsupported. All agree that he does.

## CONCLUSION

Given the specific facts and allegations at issue in this case, and to preserve public confidence in these proceedings, Plaintiffs respectfully request that the Honorable Leon Schydlower recuse himself from this matter under 28 U.S.C. § 455(a) and that this matter be reassigned to another judge on the Court.

Matters important to the prosecution of this lawsuit are fully briefed and ready for decision, or very soon will be.[5] Reassignment will ensure that Judge Schydlower is not forced to navigate the sensitive situation that the particular facts and circumstances of this case create, and will ensure that there is no question about the validity of judicial decisions on these and future disputes in this

[5] Plaintiffs' motion for class certification was filed on May 30, 2026, and Defendants have long missed their deadline to file a response. *See* ECF Nos. 2, 18 (setting deadline of July 16, 2026, for Defendants' response). Plaintiffs' motions related to protecting Named Plaintiffs, declarants, and third parties are fully briefed. *See* ECF Nos. 12, 14, 21, 22, 24, 25. Plaintiffs' motion for limited expedited discovery currently is scheduled to be fully briefed by or on September 1, 2026, *see* Text Order granting ECF No. 39, although Plaintiffs have requested an extension until September 10, 2026, to file their reply. ECF No. 41. Defendants' motion to dismiss is due October 6, 2026. ECF No. 38.

complex litigation that raises serious allegations—abuses and preventable deaths of people detained on the Fort Bliss military base.

Dated: August 28, 2026

Respectfully submitted,

*/s/ Rita Lomio*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Rita Lomio (CA 254501) (*pro hac vice*)
Kyle Virgien (CA 278747) (*pro hac vice*)
Felipe Hernandez (CA 338468) (*pro hac vice*)
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770
rlomio@aclu.org
kvirgien@aclu.org
npp_fhernandez@aclu.org

Carmen Iguina Gonzalez (*pro hac vice*)
Elisa Epstein (*pro hac vice*)
915 15th Street NW, 7th Floor
Washington, D.C. 20005
Tel.: (202) 393-4930
ciguinagonzalez@aclu.org
eepstein@aclu.org

Alana Park
Texas Bar No. 24150568
Zachary Dolling
Texas Bar No. 24105809
Charlotte Weiss (application for admission pending)
New York Bar No. 6313639
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, Texas 78760
Tel.: (512) 474-5073 ext. 162
alana@texascivilrightsproject.org
zachary@texascivilrightsproject.org
cweiss@texascivilrightsproject.org

ACLU FOUNDATION OF TEXAS, INC.
Savannah Kumar
Texas Bar No. 24120098
Fabiola Alvelais
Texas Bar No. 24146029
Edgar Saldivar
Texas Bar No. 24038188
Adriana Pinon
Texas Bar No. 24089768
P.O. Box 8306
Houston, TX 77288
Tel.: (713) 942-8146
Fax: (713) 942-8966
skumar@aclutx.org
falvelais@aclutx.org
esaldivar@aclutx.org
apinon@aclutx.org

FARELLA BRAUN + MARTEL LLP
Jim Day (CA 197158) (*admitted*)
Cynthia A. Castillo (TX 24097474)
Raven Quesenberry (CA 346250) (*admitted*)
Hilary C. Krase (CA 318762) (*pro hac vice*)
One Bush Street, Suite 900
San Francisco, California 94104
Tel.: (415) 954-4400
Fax: (415) 954-4480
jday@fbm.com
ccastillo@fbm.com
rquesenberry@fbm.com
hkrase@fbm.com

Dustin Rynders
Texas Bar No. 24048005
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 1108
Houston, Texas 77251
Tel.: (832) 767-3630 ext. 196
dustin@texascivilrightsproject.org

Daniel Hatoum
Texas Bar No. 24099136
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 219
Alamo, Texas 78516
Tel.: (956) 787-8171 ext. 127
daniel@texascivilrightsproject.org

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2026, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record.

*/s/ Rita Lomio*