**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

Gerald Akari Angye, *et al.*,

*Plaintiffs*,

v.

U.S. Immigration and Customs Enforcement, *et al.*,

*Defendants*.

Civil Action No.: 3:26-cv-1515-LS

**[PROPOSED] PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65 and having reviewed Plaintiffs' Motion for Preliminary Injunction, Plaintiffs' supporting Memorandum of Points and Authorities with attached declarations, Defendants' response thereto, Plaintiffs' reply, and the argument of counsel, the Court finds that Plaintiffs have demonstrated that they are likely to prevail on the merits of their claims, that they will suffer irreparable harm if the Court does not issue relief, that the balance of equities tips in their favor, and that the public interest lies in issuing a preliminary injunction. Pursuant to Federal Rule of Civil Procedure 23 and having reviewed Plaintiffs' Motion to Certify Class and Plaintiffs' supporting Memorandum of Points and Authorities with attached declarations and the argument of counsel, the Court finds that Plaintiffs have satisfied the requirements of Rule 23(a) and (b)(2) for class certification.

Accordingly, the Court HEREBY ORDERS:

1) Plaintiffs' Motion for Preliminary Injunction is GRANTED.

**Health Care**

2) Defendants are ordered to develop and file within 14 calendar days, a detailed plan to ensure clinically appropriate health care at Camp East Montana ("Health Care Plan"),[1] including but not limited to providing:

a. Adequate health care staffing, including the allocation of sufficient custody staff to facilitate health care encounters, including movement through the facility;[2]

b. Sufficient confidential and clinically appropriate space for all healthcare encounters, including healthcare screening during intake, with audio and visual privacy from non-medical staff and detained individuals, including other detained individuals experiencing simultaneous healthcare screenings;[3]

c. Safe housing upon intake, with people exhibiting symptoms of illness and those who are immunocompromised promptly removed and isolated from others, placed in an adequately sanitary area, and promptly medically evaluated;[4]

d. Comprehensive, confidential, and documented health intake screening performed by a qualified medical provider within 12 hours of a person's arrival, including tuberculosis screening;[5]

---

[1] *See L.T. v. ICE*, No. 5:26-00322, 2026 WL 2131142, at *2 ¶ 4 (C.D. Cal. July 16, 2026); Dr. Keller Expert Decl. ¶ 20.

[2] *See Gomez Ruiz v. ICE*, No. 3:25-CV-09757-MMC, 2026 WL 391924, at *1 ¶ 1.a (N.D. Cal. Feb. 10, 2026); Dr. Keller Expert Decl. ¶¶ 68, 70, 120.

[3] *See* Dr. Keller Expert Decl. ¶¶ 44–47.

[4] *See* Dr. Keller Expert Decl. ¶¶ 34–36; Williams Expert Decl. ¶¶ 72–77.

[5] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.b; *Barco Mercado v. Mullin*, No. 25-CV-6568 (LAK), 2026 WL 2969657, at *2 ¶ 4 (S.D.N.Y. Oct. 2, 2026); *L.T.*, 2026 WL 2131142, at *2 ¶ 4.a.i.; Dr. Keller Expert Decl. ¶¶ 37–54

e. Comprehensive, confidential, and documented health assessments performed by a primary care provider within 14 days of a person's arrival;[6]

f. Timely and responsive emergency services, including adequate training and functional emergency equipment;[7]

g. Continuity of healthcare upon intake and thereafter, including timely completion of active medical orders, and consistent provision of medication without lapses and with proper administration;[8]

h. A confidential and reliable "sick call" request system that ensures patients are seen timely and during reasonable hours of the day, receive appropriate evaluation and treatment, and people with repeated complaints are appropriately evaluated;[9]

i. Timely diagnostic testing and required timeframes for review, communication to patients, and follow-up of results;[10]

j. Abnormal vital signs and lab results are timely acted upon;[11]

k. Clinically appropriate chronic care, including for people with hypertension, hyperlipidemia, asthma, diabetes, and HIV;[12]

l. Timely evaluation by medical staff after use of force against detained individuals;[13]

m. Infectious disease prevention and treatment protocols, including access to soap, water, and masks at all times and in all areas of the facility, and sufficient quarantine and isolation space with meaningful access to

[6] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.c.; Dr. Keller Expert Decl. ¶¶ 62–65.
[7] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.e; Dr. Keller Expert Decl. ¶¶ 127–133.
[8] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.f.; *L.T.*, 2026 WL 2131142, at *2 ¶ 4.a.iv; *Barco Mercado*, 2026 WL 2969657, at *2 ¶ 4.b; Dr. Keller Expert Decl. ¶¶ 55–61.
[9] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.h; Dr. Keller Expert Decl. ¶¶ 66–85.
[10] *See L.T.*, 2026 WL 2131142, at *2 ¶ 4.a.iii; Dr. Keller Expert Decl. ¶¶ 76, 79, 80. 81, 83, 93.
[11] *See L.T.*, 2026 WL 2131142, at *2 ¶ 4.a.iii; Dr. Keller Expert Decl. ¶¶ 72, 74–75, 80.
[12] *See L.T.*, 2026 WL 2131142, at *2 ¶ 4.a.ii; Dr. Keller Expert Decl. ¶¶ 86–111.
[13] *See* Dr. Keller Expert Decl. ¶ 181.

communication with attorneys and loved ones, programming, recreation, and personal grooming supplies;[14]

n. Prevention and treatment of mold and fungal disease, including coccidiomycosis, through daily inspection and removal of sand, dust, and mold from living areas; and remediation of excessive sand, dust, and other airborne contaminants within 24 hours of identification or notice, maintenance of operational ventilation and filtration systems at all times, and documentation of such compliance;

o. Specialty care outside of the facility for individuals who require it after assessment from a medical provider;[15]

p. Appropriate diets for individuals with medical conditions, such as diabetes, high cholesterol, and high blood pressure;[16]

q. A supply of medication for individuals who are released, transferred, or deported from the facility, to include all continuing prescription medication that the individual took while detained, and printed information about current diagnoses, prescriptions, and referrals;[17]

r. Maintenance of complete and accurate healthcare records for all current and former patients;[18]

s. A reliable system to provide copies of complete medical records within seven calendar days of request to patients and their representatives, including after release; [19] and

---

[14] *See* Dr. Keller Expert Decl. ¶¶ 134–35, 138–39; Williams Expert Decl. ¶ 109.
[15] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 1.d; Dr. Keller Expert Decl. ¶¶ 121–26.
[16] *See Barco Mercado*, 2026 WL 2969657, at *2 ¶ 4.d; Dr. Keller Expert Decl. ¶¶ 151–53.
[17] *See* Dr. Keller Expert Decl. ¶ 28.
[18] *See id.* ¶ 165–168.
[19] *See L.T.*, 2026 WL 2131142, at *2 ¶ 4.a.v; Dr. Keller Expert Decl. ¶ 169–170.

t. Comprehensive monitoring and oversight processes for the above.[20]

**Other Conditions of Confinement**

3) Defendants are ordered to develop and submit to the Court and Plaintiffs, within 14 calendar days, a detailed plan to ensure the following, with exceptions only where necessary for individualized, documented security concerns ("Custody Plan"):

a. Compliance with use of force standards, including related to policies, training, and documentation, as set forth in Standard 2.8 of the NDS 2025;[21]

b. Compliance with special management standards, as set forth in Standard 2.9 of the NDS 2025;[22]

c. Compliance with requirements regarding professional conduct toward detained individuals, as set forth in Standards 2.7 and 2.10 of the NDS 2025;[23]

d. A separate mattress, pillow, and sufficiently warm blanket for each person held overnight;[24]

e. A temperature for all occupied areas between 68 and 74 degrees Fahrenheit;[25]

f. Increased freedom of movement, including by ceasing the blanket policy or practice of body searches whenever a person leaves or returns to a housing unit;[26]

g. At least four hours per day of access to outdoor recreation spaces where people can clearly see the open sky and sunlight and feel the sun, with places

---

[20] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 2; *L.T.*, 2026 WL 2131142, at *3 ¶ 5; Dr. Keller Expert Decl. ¶¶ 228–29.
[21] *See* Williams Expert Decl. ¶¶ 34–50.
[22] *See id.* ¶¶ 63–69.
[23] *See id.* ¶¶ 51–57.
[24] *See Gomez Ruiz*, 2026 WL 391924, at *2 ¶ 4.a; *L.T.*, 2026 WL 2131142, at *1 ¶ 1.f; *Barco Mercado*, 2026 WL 2969657, at *1 ¶ 1.b; Williams Expert Decl. ¶ 89.
[25] *See Barco Mercado*, 2026 WL 2969657, at *1 ¶ 1.c; Williams Expert Decl. ¶¶ 89–90.
[26] *See* Williams Expert Decl. ¶¶ 58–62.

for people to sit, designated exercise areas and wide range of equipment, access to the ground, including the natural earth and grass, access to potable drinking water and restrooms, enough space to participate in activities such as soccer and also to safely sit these activities out, access to prompt medical care if needed, protection from sand, dust, wind, and extreme temperatures, and the option to skip recreation time for health-related reasons;[27]

h. Opportunities for sensory stimulation and socio-emotional programming at no cost to detainees, including individual access in the housing units to radios, televisions, games, writing materials, reading materials (including books, newspapers, and magazines) available in languages accessible to the detained population, and enough tablets for each person to have their own.[28]

i. Provision of temperature-appropriate clothing and blankets free of charge;[29]

j. Access to hand soap and water at all times, including in all restrooms, medical clinics, and recreation areas;[30]

k. Daily access to personal grooming supplies, including razors and nail clippers, in all living areas;[31]

l. Adequate sanitation throughout the facility. At a minimum, Defendants must ensure that (1) the facility is cleaned daily, (2) soap and hygiene products are consistently available to detainees free of charge, (3) mold is identified, treated, and remediated at the facility, and (4) sewage and toilet overflows are prevented or, when unavoidable, are promptly addressed;[32]

---

[27] *See L.T.*, 2026 WL 2131142, at *1 ¶ 1.g; Williams Expert Decl. ¶¶ 91, 93, 96–97, 101–03.
[28] *See* Williams Expert Decl. ¶¶ 91–92, 94–95, 99–106.
[29] *See Gomez Ruiz*, 2026 WL 391924, at *2 ¶ 4.a; *L.T.*, 2026 WL 2131142, at *1 ¶ 1.e–f; Williams Expert Decl. ¶ 89.
[30] *See L.T.*, 2026 WL 2131142, at *1 ¶ 1.c; *Barco Mercado*, 2026 WL 2969657, at *1 ¶ 1.f; *Moreno Gonzalez v. Noem*, No. 1:25-cv-13323, 2025 WL 3170784, at *1 ¶ 4 (N.D. Ill. Nov. 5, 2025).
[31] *See* Williams Expert Decl. ¶¶ 84–88.
[32] *See L.T.*, 2026 WL 2131142, at *1 ¶ 1.c; *Barco Mercado*, 2026 WL 2969657, at *1 ¶ 1.e–f; *Moreno Gonzalez*, 2025 WL 3170784, at *1 ¶¶ 2, 4.

m. Fortification of all areas against sand, dust, water intrusion, and pests;[33]

n. Regular access to nutritious and sanitary meals that contain a sufficient number of calories;[34] and

o. Meaningful monitoring and oversight processes for the above.

4) Within 14 calendar days of Defendants producing their proposed Health Care and Custody Plans, Plaintiffs may file a response. Defendants may file a reply within seven calendar days of Plaintiffs' response.

**Independent Monitors**

5) Pursuant to Federal Rule of Evidence 706 and the Court's equitable powers, the Court will appoint qualified, independent, third-party experts to assist the Court in evaluating the sufficiency of the Health Care and Custody Plans ("Court Monitors"), make recommendations to the Court about the Health Care and Custody Plans, and to ensure compliance with the Plans.[35]

6) **Selection of independent monitors:** Within 14 calendar days of this Order, both parties may propose up to three names for a Court Monitor for the Health Care Plan and up to three names for a Court Monitor for the Custody Plan, and shall provide the Court and opposing counsel with the CV and contact information for each person. Within 14 calendar days thereof, each party may file a response to the other party's proposed Court Monitors. After reviewing the parties' proposals, the Court shall appoint Court Monitors.[36]

7) **Remedial plan review**

[33] *See* Dr. Keller Expert Decl. ¶¶ 142–44; Williams Expert Decl. ¶¶ 80, 82.
[34] *See L.T.*, 2026 WL 2131142, at *1 ¶ 1.b; *Barco Mercado*, 2026 WL 2969657, at *1 ¶ 1.g; *Moreno Gonzalez*, 2025 WL 3170784, at *1 ¶ 7; Dr. Keller Expert Decl. ¶¶ 147–50; Williams Expert Decl. ¶¶ 112–13.
[35] *See Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 2; *L.T.*, 2026 WL 2131142, at *3 ¶ 5; Dr. Keller Expert Decl. ¶¶ 228–29.
[36] *See L.T.*, 2026 WL 2131142, at *3 ¶ 5.a; *Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 2.

a. Within 30 days after their appointment or receipt of the Plans, whichever is later, the independent Court Monitors shall evaluate the sufficiency of the Health Care and Custody Plans and provide feedback to the Court and the parties regarding the Plans. The Court Monitors shall be permitted to consider the evidence and argument of the parties while formulating their opinions regarding the adequacy of the Plans and shall be permitted to visit and inspect Camp East Montana at Ft. Bliss and review documents according to the permissions set out below.

b. After considering the Court Monitors' feedback, as well as any arguments presented by the parties, the Court shall order implementation of Health Care and Custody Plans, with any appropriate modifications.

8) **Monitoring duties:** The Health Care and Custody Monitors shall monitor compliance with the Health Care and Custody Plans, respectively, and then issue quarterly reports for the Court and the parties detailing their findings and recommendations. The status reports are due three months after the date of this Order, and every three months subsequently. These status reports shall be publicly filed with the Court. Each party may file a response to the Court Monitors' report within 14 calendar days, and each party may file a reply to the other party's response within seven calendar days. The Court Monitors may file updated reports considering the parties' responses and replies within 14 calendar days of the deadline to file replies.

9) **Permissions**

a. Defendants must ensure that the Court Monitors are able to conduct unannounced, independent inspections of Camp East Montana, including accessing all areas where class members may be found and all areas relevant to the provision of medical care, interviewing staff, and interviewing class members. The Court Monitors may not interview a class member without first

providing them an opportunity to decline to be interviewed, but Defendants may not refuse to make a class member available for an interview on the basis that the class member has not signed an advance consent to be interviewed. Should either Court Monitor wish to have photographs or video recordings taken, a designated staff member will take the photograph and/or video recording requested by the Court Monitor using a facility camera and confirm with the Court Monitor that the photograph or video recording captures the intended subject(s). Any photographs or video recordings taken during the inspection will be subject to a security review by Defendants, and all photographs and video recordings approved for disclosure will be provided to the Court Monitor. If any key staff are not available on the date(s) of the site visit, they will be made available to the Court Monitors via videoconferencing within two weeks of the site visit's conclusion, subject to availability due to scheduled leave.[37]

b. Defendants must also ensure that the Court Monitors have reasonable access to relevant physical and electronic records. The Health Care Monitor shall have read-only access to the electronic health care system of Camp East Montana. This access to records and to the electronic health care system shall extend to up to one additional team member per monitor. Defendants shall provide access to items requested by the Court Monitors within seven days of the request. The Court Monitors shall jointly alert the parties to issues in the timely provision of such items. The Court Monitors and/or the parties may bring any concerns about access to the Court's attention.[38]

10) **Duration:** The Court Monitors will be appointed for the duration of this litigation if and until (a) this preliminary injunction order is dissolved by this Court or an

[37] *See L.T.*, 2026 WL 2131142, at *3 ¶ 5.d; *Gomez Ruiz v. ICE*, No. 3:25-CV-9757-MMC, 2026 WL 874399, at *1–2 ¶¶ 3–4 (N.D. Cal. Mar. 30, 2026).

[38] *See L.T.*, 2026 WL 2131142, at *3 ¶ 5.d; *Gomez Ruiz*, 2026 WL 874399, at *2–3 ¶ 5.

intermediate appellate court, (b) a permanent injunction is entered, or (c) this action is dismissed.

11) **Reporting system**

a. Defendants are ordered to ensure there is a process by which detainees can submit complaints or comments directly to the Court Monitors. Detainees must have free access to this system. Detainees must be able to submit a complaint or comment through (a) a physical written statement submitted directly to the monitor or a locked box that is only accessible by the Court Monitors, or (b) through an electronic statement submitted via a tablet that is only accessible by the Court Monitors.[39]

b. Defendants must post written information about how to use this system through the facility in English and Spanish. Defendants, without charge, shall provide to each Detainee who is not proficient in either English or Spanish with access to and the services of an interpreter to translate this written information into such Detainee's native language.[40]

c. Defendants must ensure that all staff are trained to answer any questions about this system from the detainees.[41]

12) **Payment of costs and/or fees:** Defendants shall pay the Court Monitors' reasonable rate for the services set forth in this Order.[42]

**Plaintiffs' Counsel**

13) Plaintiffs' counsel, together with Plaintiffs' experts and a photographer (with photographic equipment), shall be permitted to inspect, survey, and photograph Camp East Montana at least once every 3 months until further order of the Court,

---

[39] *See L.T.*, 2026 WL 2131142, at *4 ¶ 5.f.
[40] *See id.*; *see also Barco Mercado*, 2026 WL 2969657, at *2 ¶ 6 (setting out interpretation requirements).
[41] *See L.T.*, 2026 WL 2131142, at *4 ¶ 5.f.
[42] *See L.T.*, 2026 WL 2131142, at *4 ¶ 5.g; *Gomez Ruiz*, 2026 WL 391924, at *1 ¶ 2.

until Defendants have come into compliance with all of the provisions in the final Health Care and Custody Plans. Defendants may not interfere with such inspections or impede access to portions of the facility used for detainee operations. Plaintiffs' counsel need not announce these inspections and must be permitted to enter the facility within an hour of arriving for such an inspection.

14) Plaintiffs' counsel and their medical expert shall have read-only access to the electronic health care system of Camp East Montana.

15) Plaintiffs' counsel may request reasonable documents as necessary to monitor compliance with the final Health Care and Custody Plans. If the parties cannot agree to a production timeline, the parties shall file a joint statement of no more than 10 pages (five pages for each side) outlining the dispute within 14 days of Plaintiffs' counsel's request for documents.

16) Plaintiffs' counsel may bring individual instances of non-compliance with this Order, the final Health Care Plan, and/or the final Custody Plan to the attention of counsel for Defendants, the Court Monitors, and/or the Court. Defendants are ordered to issue a substantive, written response to Plaintiffs' counsel within 14 days of receiving notice of any alleged non-compliance.

**<u>Retaliation</u>**

17) Defendants are enjoined from retaliating in any form against the named Plaintiffs, any declarant, or any class member in their immigration proceedings or in any other capacity for asserting their constitutional or statutory rights.[43]

**<u>Bond</u>**

18) The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

The Court further ORDERS:

19) Plaintiffs' Motion to Certify Class is GRANTED

[43] *See L.T.*, 2026 WL 2131142, at *4 ¶ 6; *Barco Mercado*, 2026 WL 2969657, at *3 ¶ 12.

20) Plaintiffs' counsel is appointed as lead counsel for the Class

21) The Class is defined as follows: All persons who are now, or in the future will be, in the legal custody of U.S. Immigration and Customs Enforcement ("ICE") and detained at ERO El Paso Camp East Montana ("Camp East Montana").

**IT IS SO ORDERED.**

Dated: ______________________

______________________________
UNITED STATES DISTRICT JUDGE