# DECLARATION OF JENNIFER DE LA CRUZ

I, Jennifer de la Cruz, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. This declaration is based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters. I make this declaration in support of Plaintiffs' motion for a preliminary injunction.

2. I am a paralegal at Emery Celli Brinckerhoff Abady Ward & Maazel LLP ("ECBAWM"), a Manhattan-based law firm. Under the supervision of attorneys in this office, Katherine Rosenfeld and Sara Estela, this firm represents the daughter of an individual who was held at Camp East Montana in El Paso, Texas in the fall of 2025, in an investigation into the events that occurred there.

3. It is a routine practice at the firm to obtain all relevant medical records in the course of this type of investigation. To that end, our client signed HIPAA and other releases, authorizing the release of her father's medical records directly to our law firm.

4. On June 10, 2026, I contacted the Camp East Montana facility using the number listed on the facility's U.S. Immigration and Customs Enforcement ("ICE") informational page to inquire how to obtain a former patient's medical records from their facility. I called repeatedly but there was no answer.

5. After approximately a week of multiple attempts to reach someone at the facility, I called ICE's El Paso Service Processing Center on June 16, 2026 to ask for information about how to obtain a former patient's medical records from Camp East Montana. Staff at the El Paso Processing Center could not answer my question and advised me to email the El Paso field office, at ElPaso.Outreach@ice.dhs.gov.

6. On June 16, 2026, I emailed the El Paso field office and requested information about how to obtain a patient's medical records from Camp East Montana. The El Paso field office responded shortly after and requested further identifying information about the nature of my request, which I provided within minutes of their email. They did not respond to me further.

7. Also on June 16, 2026, I filed a Freedom of Information Act request to ICE prepared by Ms. Rosenfeld seeking, among other documents, records from Camp East Montana. To date, ICE has not provided documents in response to this request.

8. On June 18, 2026, I sent the El Paso field office another email following up on my initial request. They did not respond, so I contacted them via telephone at the number listed on their website. I was told to wait for a response via email. As of today's date, I have not received an email response from them.

9. At the same time that I sought guidance from ICE's field office, I also continued calling Camp East Montana directly at the number listed on their informational page: (915) 280-2270. When I finally connected with a staff member there, she informed me that they could not assist with our request for medical records because medical records are not stored at the facility. Further, that person advised that she could not transfer me to the medical records department or legal department because neither one existed on site.

10. Because it is my understanding that the medical provider for Camp East Montana is a government contractor called Loyal Source Government Services ("LSGS"), on June 23, 2026, I called and spoke with a representative within the Human Resources ("HR") department at LSGS. They instructed me to send the request for the patient's medical records to HR@loyalsource.com. I sent a request for medical records to this address that same day. No one responded.

11. On July 6, 2026, I called LSGS and spoke with a representative within the HR department named Sophia. Sophia confirmed that LSGS received our request and that it was pending.

Additionally, she said she would attempt to get us a response "soon," but did not provide an estimated timeline.

12. On July 9, 2026, I emailed LSGS's HR department again, using the email address I had been provided, asking for an update on our request and an estimated time of completion. I received no response. Shortly thereafter, I called the HR department, and representatives informed me that our request had been "escalated." Nevertheless, LSGS staff refused to say to whom or what department the request had been "escalated."

13. Over the next few weeks, I called LSGS between five and 10 times and received the same response I had on July 9, 2026—*i.e.*, that my request for medical records had been escalated. My requests to speak with a supervisor, or someone in their legal department, were repeatedly denied. There were several occasions where the representative I spoke with told me they did not know who to transfer me to, or who to reach out to themselves.

14. During a telephone call on July 22, 2026, an HR representative informed me that my request for medical records was with the legal department and suggested I copy the email "cmehr@loyalservices" on my next request for an update. I did as suggested and sent a request for an update on July 22, 2026.

15. On July 23, 2026, LSGS Employee Relations Specialist Gabby Talamantez responded to our July 22, 2026 email, stating that "Loyal Source HR does not handle medical information." Ms. Talamantez copied two individuals on the email: Jose Morales Gonzalez and Dr. Muhammad Khan, "(program leadership)." Ms. Talamantez noted that these individuals would provide me with further information, however neither Mr. Morales Gonzalez nor Dr. Khan responded, nor did they respond to either of my two follow up emails.

16. I continued calling LSGS throughout late July 2026 and into mid-August 2026. My requests to speak with Ms. Talamantez, Mr. Morales Gonzalez, and Dr. Khan were all denied. My requests to speak with anyone within the legal department were also denied.

17. I learned that on August 21, 2026, my colleague attorney Sara Estela sent a request for our client's medical records, this time to Mr. Ryan O'Quinn, President and Chief Legal Officer of LSGS via email and Federal Express. Mr. O'Quinn responded via email stating that LSGS "does not have possession, custody, or control of any documents responsive to your request."

18. Ms. Estela followed up with Mr. Quinn via email on August 31, 2026, September 1, 2026, and September 4, 2026. Mr. O'Quinn did not respond to Ms. Estela's requests.

19. Because our emails were ignored, I called Mr. O'Quinn on September 4, 2026. I again asked for information regarding how to obtain medical records from Camp East Montana. Mr. O'Quinn stated that we needed to inquire with the Department of Homeland Security's Contracting Office.

20. On September 8, 2026, I contacted the Department of Homeland Security's Contracting Office. I was transferred to various individuals who could not provide instructions on where to send a request for medical records.

21. To date, neither ICE, Camp East Montana, nor any ICE contractors have provided this firm any of the medical records that we are seeking on behalf of our client, or any information about how to obtain such records at this point.

22. I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 9, 2026, in New York, New York.

Signature: J. de la Cruz