# EXHIBIT 4

May 22, 2026

Todd Lyons & David Venturella
Immigration and Customs Enforcement
500 12th St. SW
Washington, DC 20536

Joel D. García
Field Office Director, El Paso
Immigration and Customs Enforcement
999 S. Oregon St.
El Paso, TX 79901

Commanding General, Major General Curtis Taylor
Garrison Commander, Col. Michael V. Soyka
U.S. Army, Fort Bliss
HQ, US Army Garrison, Fort Bliss
ATTN: AMIM-BLG-ZA
1741 Marshall Road
Fort Bliss, Texas 79916

CC: U.S. Senate Armed Forces Committee; U.S. Senate Committee on Homeland Security; U.S. Senate Committee on the Judiciary; U.S. House Committee on Oversight and Government Reform; U.S. House Committee on Armed Services; Department of Homeland Security Office of Inspector General; DHS Office of Civil Rights and Civil Liberties

**VIA EMAIL AND CERTIFIED MAIL**

Re: Continued Concerns About Conditions of Confinement at Camp East Montana

Dear Officers,

We are writing to follow up on our December 8, 2025, letter documenting abusive conditions of confinement at the El Paso Camp East Montana detention camp at Ft. Bliss ("Camp East Montana"). Since the submission of the letter and accompanying declarations (attached as Appendices A and B), conditions at Camp East Montana have continued to deteriorate, raising serious alarm. These conditions appear to violate agency policies and standards, as well as statutory and constitutional protections. To date, we have received no substantive response to our correspondence. In the absence of such acknowledgment, we are compelled to conclude that our recommendations have been disregarded despite clear notice of these ongoing issues.

Since the submission of the December letter, at least two detained people have died at Camp East Montana, bringing the total number of deaths to at least three. The El Paso County Medical Examiner found that one of the detained people, Geraldo Lunas Campos, died by homicide at the facility.[1] As we documented in our December 2025 letter, there is a clear pattern of excessive uses of force by officials at Camp East Montana that have led to injuries and even deaths.

A U.S. Immigration and Customs Enforcement inspection of Camp East Montana between February 10-12, 2026, revealed 49 violations of detention standards or policies. These deficiencies were documented in a report (attached as Appendix C). Among other violations, the report documented serious delays in resolving grievances, including medical grievances. In fact, the report showed the facility's failure to follow its own policy of urgently responding to any grievance alleging any threat of a detainee's health, safety or wellbeing. In addition, the report noted violations of use of force and restraints-related policies, including failures to document detainees' examinations or treatment of injuries following uses of force and failing to document that medical services were even provided. Per the report, there were dozens of additional violations of standards or policies.

Despite reported changes in contractors at the facility, serious violations continue. People detained at Camp East Montana continue to suffer from the issues documented in our December 2025 letter.[2] Our prior letter describes severe mistreatment of detainees, including excessive use of force, abusive sexual contact, and prolonged detention in overcrowded, harsh conditions. Detained individuals face serious neglect, such as inadequate and spoiled food, lack of medical and mental health care, inconsistent medication access, and delayed responses to urgent health needs. Basic living standards are also unmet, with insufficient hygiene supplies, unclean environments, and confinement in tents or cold holding areas without proper light, recreation, or adequate nutrition. In addition, since our prior letter, individuals have reported harsh conditions of solitary confinement, ailments from inhaling dust that flows into the facility, serious difficulty obtaining their own medical records, and denial of access to grooming to maintain personal hygiene. The punitive conditions of confinement at Camp East Montana impose an atypical and significant hardship on detained individuals that undermines the purpose of civil detention.

**Solitary Confinement**

"Special Management Units" (SMUs), also known as solitary confinement or segregation cells, are used in a manner far more punitive than permitted under ICE standards. Those standards mandate that administrative or disciplinary segregation should "only be used when less restrictive

---

[1] Nicole Acevedo, *ICE detainee's death ruled a homicide by medical examiner*, NBC News (Jan. 21, 2026, 7:09 PM), https://www.nbcnews.com/news/us-news/lunas-campos-ice-detainee-homicide-autopsy-rcna256566.

[2] See Appendix A.

housing options have been considered and determined to be contrary to the best interests of the detainee and security or good order of the facility."[3] Our December 2025 letter provided clear notice of this abusive practice, yet we have received reports from detained individuals that confirm its continuation: the immediate placement of individuals in SMU upon hospital return for serious injuries caused by excessive uses of force by officials, extended isolation in SMUs without timely or rational justification, and punitive threats and placement into SMUs solely for requesting basic needs, like medical care or hygiene. Such actions by officials are not mere errors but a willful infliction of harm, demanding immediate cessation.

**Hazardous Dust Exposure**

People detained at Camp East Montana report struggling to breathe and experiencing serious respiratory symptoms from dust that pours into the tents they are forced to live in. They describe dust lining their beds, tables, and even food that they eat. El Paso frequently experiences severe dust events where strong winds from the Chihuahuan Desert lift fine soil particles that can reach hazardous levels and penetrate deep into the lungs.[4] These dust exposures are linked to increased respiratory problems and may also carry fungal spores that pose additional breathing risks and other ailments.[5] In fact, a study published on February 18, 2026, found a significant ascending trend in valley fever (coccidioidomycosis) cases in El Paso from 2013 to 2022, with incidence rates more than tripling and strong associations to El Paso's meteorological factors like extreme heat, high wind gusts, and elevated airborne dust concentrations, particularly inhalable course particles like fungal spores.[6] This type of exposure to harmful airborne particles puts the rights of detained people, who are confined in dust-filled tents with limited air circulation, at serious risk.[7]

Despite repeated complaints from detained individuals, officials at Camp East Montana knowingly subject people to high levels of hazardous dust infiltration without providing masks, air filtration, relocation, or medical monitoring for resulting respiratory distress. Officials are aware of the obvious health dangers from pervasive dust, linked to respiratory illness and fungal

---

[3] A copy of the policy can be found here: https://www.aclu.org/documents/foia-document-review-of-the-use-of-specialmanagement-units-for-ice-detainees.

[4] *See* Herrera-Molina, E.; Gill, T.E.; Ibarra-Mejia, G.; Jeon, S. Associations between Dust Exposure and Hospitalizations in El Paso, Texas, USA. Atmosphere 2021, 12, 1413. https://doi.org/10.3390/ atmos12111413.

[5] *Id.*

[6] *See* Ibarra-Mejia, G., Khanjani, N., Dastoorpour, M., Herrera-Molina, E., Ardon-Dyer, K., Jeon, S., Gill, T. The ascending trend of valley fever in El Paso, Texas and its association with metereological and dust factors. International Journal of Biometeorology, Feb. 18, 2026. https://doi.org/10.1007/s00484-026-03159-8.

[7] *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (holding that exposure to involuntary secondhand smoke in prison can give rise to an Eighth Amendment claim if it "poses an unreasonable risk of serious damage to [an inmate's] future health."); *see also American Textile Mfrs. Institute Inc. v. Donovan*, 452 U.S. 490, 494-496 (1981) (noting that exposure to cotton dust, an airborne particle, created a health hazard and that "there is an association between mortality and the extent of dust exposure.")

infections in the El Paso region, yet consciously disregard them by withholding basic protective measures and refusing to provide reasonable safety. Such punitive persistence elevates substandard tent housing to willful infliction of harm, which demands immediate cessation and remedial action.

**Medical Records**

Individuals at Camp East Montana have an almost impossible time obtaining their medical records. However, the National Detention Standard 4.3 make clear that "[d]etainees and their representatives shall be allowed to request and receive medical records pursuant to facility policy, which shall be communicated to the detainee in the facility handbook." Many detained people report that no facility handbook is provided to them, and that the process to request medical records remains opaque.

Further, representatives of the undersigned organizations have submitted four separate requests for medical records on behalf of at least 14 individuals who are or were detained at Camp East Montana at Fort Bliss. To date, we have not been provided any responsive records. Nor have officials or facility staff provided any clear, reliable, or lawful process for obtaining them. This complete failure to respond, despite repeated requests, is unacceptable and inconsistent with your legal obligations governing access to detainee medical information.

The continued refusal or failure to produce these records raises serious statutory and constitutional concerns. The withholding of medical records in the face of repeated, documented requests obstructs necessary medical oversight and advocacy, and reflects, at minimum, deliberate indifference to the health and safety of the individuals in your custody. We demand an immediate production of the requested records and a clear, functioning process for timely compliance going forward.

**Non-Confidential Medical Visits**

Obtaining medical care remains difficult at Camp East Montana. Even those detained persons who manage to receive a medical appointment report a lack of confidentiality in their visits, with visits taking place in group settings and in hallways without privacy. National Detention Standard 4.3 makes clear that "medical personnel...shall protect the privacy of detainees' medical information to the maximum extent possible while permitting the exchange of health information required to fulfill program responsibilities and to provide for the well-being of detainees." The public nature of medical visits at Camp East Montana erodes the confidentiality to which detained people are entitled regarding their health. These conditions reflect more than isolated lapses; they show a repeated disregard for the obvious need to protect medical privacy and the harm that follows when officials fail to do so.

**Denial of Access to Grooming to Maintain Hygiene**

Detained people report that following the recent transition in facility contractors, the barbershop has been open inconsistently. As a result, detained people are denied meaningful access to basic grooming services necessary to maintain personal hygiene. Individuals report lacking the facilities or resources to trim their nails, hair, or facial hair.

National Detention Standard 4.4 states that "[g]ood hygiene is essential to the well-being of detainees in the custody of ICE/ERO." However, detained people report not having access to basic grooming and hygiene products. The deprivation of these basic grooming tools and services forces detainees to live in conditions that compromise hygiene, dignity, and health. Lack of nail care can lead to overgrowth, discomfort, and increased risk of infection; inability to maintain hair and facial hair can contribute to skin conditions, lice, or other hygiene-related issues, and psychological distress. These conditions fall below minimum standards of care and raise serious concerns under applicable detention standards and constitutional protections.

**Lack of Confidentiality and Apparent Retaliation for Talking with Attorneys**

At Camp East Montana, attorney-client calls take place in transparent boxes where officials can easily see inside. Similarly, in-person contact visits occur in visitation rooms with no individual ceiling. The visitation rooms are simply four walls erected within the larger tent. Sound easily carries throughout the larger tent, again threatening the confidentiality of the visits. Officials interrupt attorney-client calls and in-person visits by entering the box or visitation room and speaking directly to the attorney or detained person, threatening the confidential nature of the call.

National Detention Standard 5.5 makes clear that "[v]isits between legal service providers (or legal assistants) and an individual detainee are confidential and shall not be subject to auditory supervision." In addition, "[f]acility staff shall not be present in the confidential area during the attorney-detainee meeting unless the attorney requests the presence of an officer."

Detained people also have no access to free, confidential outgoing calls to their attorneys. Instead, the only way to make an outgoing call to an attorney seems to be through a monitored and recorded line on a tablet that also costs money to use.

Detained people have reported being suddenly disciplined for minor or fabricated infractions shortly after attorney calls, resulting in placement in SHU and denial of access to a tablet for outside communications. This pattern raises serious concerns, especially given the sensitive information detained people discuss on calls with their attorneys. This pattern creates a culture of intimidation and fear of retaliation simply for speaking with an attorney.

Camp East Montana's legal access procedures fall far short of basic confidentiality requirements. The reported pattern of sudden discipline after attorney calls only heightens the concern that legal communication is being chilled and punished. These practices are unacceptable

and must be corrected immediately, because they interfere with legal representation, undermine confidentiality, and create an atmosphere of intimidation and retaliation that no civil detention facility may impose.

**Prevent Further Human Suffering at Camp East Montana**

In light of recent reports[8] about the potential shuttering of "Alligator Alcatraz," a makeshift inhumane compound that ran illegally, there is a risk that individuals detained at Alligator Alcatraz may be transferred into the unlawful conditions at Camp East Montana, as has happened in the past.[9] It is critical that this not happen. Camp East Montana is already massively overstretched and unable to meet the basic needs of people detained there. Any level of population growth will lead to additional human suffering and rights violations.

The ongoing nature of the violations above, most of which were documented in our December 2025 letter, demonstrates that officials had actual notice of the unconstitutional conditions. Reports of spoiled food, untreated medical needs, prolonged exposure to extreme temperatures, and unsanitary living environments are not isolated or emergent issues; they are persistent and systematic deficiencies that pose an obvious and substantial risk to detainees' health and safety.

Despite this notice, officials have failed to take reasonable corrective action, and in some instances have exacerbated the harm by permitting continued overcrowding, limiting access to hygiene and medical care, and imposing punitive conditions such as solitary confinement under already unsafe circumstances. These conditions are longstanding, pervasive, and well-documented. Official inaction to abate these conditions in the face of known risks following formal notice underscores that these violations are not the result of mere negligence, but rather a conscious disregard for detainees' basic constitutional rights.

Given the ongoing failure to protect detainees' basic health and safety, manifest in the dangerous conditions of confinement, including but not limited to punitive solitary confinement, untreated medical needs, squalid living conditions, pervasive dust exposure, and spoiled food, ICE and the Department of Defense must immediately cease all immigrant detention at Ft. Bliss and Camp East Montana.

These egregious, well-documented abuses demand urgent humanitarian intervention to prevent irreparable harm, including death. Every additional day of operation inflicts

---

[8] *Trump officials discussing possible closure of Alligator Alcatraz*, USA TODAY (May 7, 2026, 7:54 PM), https://www.usatoday.com/story/news/politics/2026/05/07/alligator-alcatraz-trump-tom-homan-florida-desantis/89983278007/.

[9] *Camp East Montana Receiving Detainees from Alligator Alcatraz*, KVIA (Aug. 28, 2025, 3:35 PM), https://kvia.com/news/border/2025/08/28/camp-east-montana-receiving-detainees-from-alligator-alcatraz/.

unconstitutional suffering on vulnerable individuals and exposes officials to escalating legal liability.

We appreciate your prompt attention to these very serious matters, and the opportunity to meet and discuss these issues. For more information, please contact Savannah Kumar at skumar@aclutx.org or Edgar Saldivar at esaldivar@aclutx.org.

Sincerely,

American Civil Liberties Union
American Civil Liberties Union of New Mexico
American Civil Liberties Union of Texas
Estrella del Paso
Human Rights Watch
Las Americas Immigrant Advocacy Center
Texas Civil Rights Project