# EXHIBIT 5

*Office of Partnership and Engagement*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, DC 20536

U.S. Immigration and Customs Enforcement

June 30, 2026

The American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004

To Whom It May Concern:

Thank you for your May 22, 2026, letter to U.S. Immigration and Customs Enforcement (ICE). ICE Enforcement and Removal Operations (ERO) oversees all civil immigration detention of one of the most highly transient populations of any detention system in the world. As a result, ICE is committed to safe, secure, and humane environments for all of those in its custody. Please see the following responses to your letter's allegations.

ICE is responsible for the safety and well-being of all aliens in our custody, and segregation is a necessary and vital practice for ensuring a safe and secure environment. ICE does not use or place detained individuals into solitary confinement. However, ICE does use segregation, a distinct practice to ensure the welfare of detained individuals and staff. Unlike conditions generally associated with solitary confinement, detainees in segregation experience basic living conditions akin to those provided to the general population, including having regular access to supervisory, management, program, and health care staff; receiving the same meals and portion sizes; having access to recreation; being able to send and receive mail and correspondence as they would otherwise be able to do; having access to telephones; and having access to programs and services such as commissary, library, and religious guidance. ICE will continue to use segregation as a practice to both honor detainee requests to be placed into protective custody and to ensure the safe and secure operations of the detention facility. Furthermore, to provide detainees in the general population a safe and orderly living environment, facility authorities may utilize disciplinary segregation when a detainee's behavior does not comply with facility rules and regulations. However, disciplinary action will not be capricious or retaliatory, and staff are prohibited from retaliating against a detainee lodging a complaint or grievance, such as a request to speak with an attorney. Disciplinary segregation placement is temporary—maximum sanction is 30 days per incident, except in extraordinary circumstances—and is only authorized by order of the Institutional Disciplinary Panel, or its equivalent, after a hearing in which the detainee has been found to have committed a prohibited act and only when alternative dispositions would inadequately regulate the detainee's behavior.

Camp East Montana takes all health and safety concerns seriously. A thorough review of medical records indicates only one detainee has reported symptoms potentially related to dust exposure, and this individual was promptly evaluated and treated by the medical team. No grievances have been filed by detainees regarding dust exposure, respiratory distress, or related

conditions. Additionally, all meals are delivered to the facility pre-packaged and served in sealed containers, minimizing any risk of dust contamination in food. The facility remains attentive to environmental conditions in the El Paso region, including dust events, and staff conduct routine inspections to ensure the safety and well-being of all detainees. Camp East Montana maintains a commitment to detainee health and safety, and any future complaints or medical issues related to dust exposure will be addressed promptly and in accordance with established procedures.

Each of ICE's detention facilities are governed by ICE's national detention standards. Specifically, National Detention Standards (NDS) 2025 governs detention operations at Camp East Montana. In accordance with NDS 2025, all detainees receive a National Detainee Handbook and a facility handbook specific to that facility. Camp East Montana also provides the handbook on the Talton tablets. There are no reports that detainees at Camp East Montana are not receiving handbooks upon arriving at the facility.

Your letter asks how a detainee should request their medical records at the facility. Per Camp East Montana's operations, if a detainee would like to obtain copies of their medical record, they must submit a written request. The detainee will be required to sign a release of health information form prior to receiving the medical records. A detainee and their representatives may also request medical records through the detainee's designated ICE officer, or the ICE Freedom of Information Act (FOIA) process as described in the facility's Detainee Handbook. Moreover, if your organizations wish to request the medical records of a specific detainee, please submit a FOIA request.[1]

Your letter mentions detainees are not receiving health care. ICE is committed to providing safe delivery of appropriate health care to aliens in agency custody. ICE's national detention standards and other ICE policies require facilities to provide comprehensive medical and mental health care from the moment aliens arrive at a facility and throughout their time in ICE custody. Detainees have access to a continuum of health care services, including screening, prevention, health education, diagnosis, and treatment while in ICE custody. Generally, detention standards require facilities to conduct a medical intake screening – including medical, dental, and mental health – within 12 hours of arrival at a facility and a comprehensive health assessment within 14 days of arrival. Each facility is staffed by medical care professionals 24 hours a day, seven days a week, or facilities have a plan in place to provide 24-hour emergency medical and mental health care when no medical personnel are on duty, for direct patient access. While ICE does not directly provide or direct the medical care provided in non-ICE Health Service Corps staffed facilities, the agency oversees those facilities' compliance with national detention standards and coordination of offsite care through medical referrals, as needed, through the Field Medical Coordinator Program.

Your letter alleges detainees have no confidentiality with medical appointments. Per Camp East Montana operations, partitions are utilized at the clinic and during the medical intake process. Additionally, sick call patients are seen one at a time with partitions. Medical staff are trained in Health Insurance Portability and Accountability Act guidelines and there are privacy curtains at each medical exam room as well. Patients are informed of their rights to accessible

[1] https://www.ice.gov/foia

healthcare and consent to treatment prior to any treatment performed, while keeping strict patient/provider confidentiality.

Your letter mentions detainees do not have access to grooming options to maintain proper hygiene. ICE detention standards address barbering areas and specifically state that "barber operations will be provided with all equipment and facilities necessary for maintaining sanitary procedures of hair care..." However, due to Camp East Montana's current transition to a new contractor, barbershop, nail clipper, and facial hair services were temporarily disrupted and these services have now been restored.

ICE is committed to ensuring aliens have ample access to appropriate process and legal resources. During their immigration proceedings, detainees are afforded numerous procedural protections that ensure they are provided with notice and an opportunity to be heard. These protections include, but are not limited to, the right to be represented by an attorney; to contest any charges of removal; to present evidence; and to examine any evidence against them. This includes their right to access legal representation and their right to communicate with their country's consulate under the Vienna Convention on Consular Relations.

In reference to concerns regarding lack of confidentiality and apparent retaliation for attorney-client communications at Camp East Montana, attorney-client calls are conducted in designated rooms with transparent panels, known as Virtual Attorney Visitation booths, which allow for visual observation by security personnel for safety purposes only; there is no audio monitoring of these calls. In-person attorney visits occur in a visitation room that does not have individual ceilings; however, these rooms are equipped with sound suppression systems to ensure privacy during conversations. Detainees are provided with a free five-minute call to an attorney or family member upon intake, and they have access to a list of pro-bono legal service providers for free calls. Any indigent detainee may request a free, confidential phone call to their attorney at any time, either through the pod officer or via the Talton tablet system.

In reference to allegations detainees are disciplined for minor or fabricated infractions after attorney calls, resulting in placement in the Special Housing Unit or denial of tablet access, Camp East Montana has no record of any grievances or complaints filed alleging these incidents. ICE cannot further investigate these allegations without additional information, such as names and alien registration numbers. All segregation placements are fully documented, including officer statements and the reasoning for any placement. No ICE detainees are disciplined for speaking with their attorneys or denied tablet access.

As codified in ICE detention standards, all ICE detainees maintain the right to meet privately with their legal representative and their legal assistants seven days a week for a minimum of eight hours per day on regular business days, and a minimum of four hours per day on weekends and holidays. At Camp East Montana, attorneys can schedule confidential legal calls, video teleconference meetings, or visit detainees during specified hours, as posted on the facility page on ICE.gov.[2] Please note ICE detention facilities may temporarily restrict visiting when necessary to ensure the security and good order of the facility, employees, and detainees.

---

[2] Visit the ICE.gov facility page for the most up to date procedures and visiting hours, available at: https://www.ice.gov/detain/detention-facilities/dod-detention-facility-fort-bliss

Camp East Montana maintains eight-in-person privacy rooms for detainees to meet with their legal representative in a confidential manner. These areas are subject to visual monitoring, but not auditory monitoring due to noise cancelling machines that hang from each in-person attorney room. Camp East Montana also provides eight confidential Virtual Attorney Visitation (VAV) booths where a legal representative may hold a remote legal visit either via video teleconference or by phone, and 36 no contact, open booths intended for family and friend visits. The VAV booths meet the confidentiality requirements by preventing auditory supervision and still allow facility officers to maintain visual supervision, consistent with ICE detention standards.
Out-going attorney calls made by a detainee with a tablet are unmonitored and unrecorded. For all attorneys who have created ERO eFile accounts and have listed their phone number(s) in their profile, ICE had Talton, the tablet provider, code the phone numbers as unmonitored and unrecorded. Detainees or legal representatives can always register the legal representative number as confidential directly with Talton using the request form. Please see the following link for more information: https://www.ice.gov/doclib/detention/faq-taltonAttorney.pdf. For video teleconferencing via GettingOut.com, attorneys can also register with Talton to have the video calls unrecorded and unmonitored. All detainees are also issued headsets to connect to the tablet.

Your letter alleges detainees have been subject to retaliation for placing attorney calls. Without specific case examples, ICE is unable to investigate or respond to this allegation. Your letter also alleges that officials interrupt attorney-client calls and in-person visits by entering VAV booths or in-person rooms and speaking directly to the attorney or detained person. It is consistent with ICE VAV contract language for officers to knock five minutes before the end of the allotted appointment time and then enter the booth at the end of the appointment time, to end the call and facilitate the next appointment. Without specific case examples, ICE is unable to investigate this allegation further.

Your letter mentions "there is a risk that individuals detained at Alligator Alcatraz may be transferred" to Camp East Montana. All alien transfers and transfer determinations are non-punitive and based on a thorough and systematic review of the most current information available in accordance with ICE Directive 11022.1: *Detainee Transfers*. Decisions to transfer are made by the Field Office Director, or his/her designee, based on complete and accurate case information and principles set forth in the Transfer Directive and other applicable ICE policies. Examples for alien transfers includes providing appropriate medical or mental health care to the alien; fulfilling an approved transfer request by the alien; protecting the safety and security of the alien, other aliens, or detention personnel; complying with a change of venue ordered by the Department of Justice Executive Office for Immigration Review; transferring to a more appropriate detention facility based on the alien's individual circumstances and risk factors; terminating the use of a facility due to failure to meet ICE detention standards, lack of enough use of the facility by ICE, or emergent situations; or relieving or preventing facility overcrowding. When determining if a transfer is appropriate, ICE considers key factors prior to a transfer, including the detention center and the aliens' health, safety, and welfare. While a detainee transfer is possible, this would be a normal part of ICE's detention operations.

The Office of Detention Oversight (ODO) within the ICE Office of Professional Responsibility conducted an inspection on February 12, 2026, with a final rating of acceptable/adequate. ERO received the ODO final report on March 31, 2026, and is waiting for the El Paso Field Office to provide a corrective action plan.

Your letter requests ICE close Camp East Montana. ICE constantly evaluates its detention needs and contract structures based on the ebb and flow of immigration patterns, the bona fide needs of the agency, and fiscal considerations. In addition, ICE is consistently reviewing its policies and procedures to ensure detention is used only when necessary. As for your request that ICE close Camp East Montana, this is currently not feasible as this facility is critical to ICE's ability to fulfill its critical national security and public safety mission. ICE's approach to contracting with private detention contractors and state and local governments maximizes flexibility in managing dynamic flows of detained noncitizens. Closing it as you request would significantly hamper ICE's ability to fulfill its immigration enforcement and public safety mission in the communities we help protect.

Thank you again for your letter and interest in this matter. Should you wish to discuss this matter further, please contact the ICE Office of Partnership and Engagement via email at ICEOPE@ICE.DHS.gov

Sincerely,

Megan Echtenkamp
Acting Assistant Director
Office of Partnership and Engagement
U.S. Immigration and Customs Enforcement

U.S. Immigration
and Customs
Enforcement

5119

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

CAPITAL DISTRICT 208
1 JUL 2026 PM 3 L

quadient
FIRST-CLASS MAIL
IMI
$001.03
07/01/2026 ZIP 20743
043M31110220
US POSTAGE

The American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004

10004-242799