# EXHIBIT 10

# Office of Professional Responsibility

## ERO El Paso Camp East Montana

## Inspection 2026-004-128

May 12-14, 2026

U.S. Immigration and Customs Enforcement

# INSPECTION
# of the
# ERO EL PASO CAMP EAST MONTANA
El Paso, Texas

## TABLE OF CONTENTS

**FACILITY OVERVIEW** .......... 2

**INSPECTION PROCESS** .......... 3

**FINDINGS BY NATIONAL DETENTION STANDARDS 2025 MAJOR CATEGORIES** .......... 4

**DETAINEE RELATIONS** .......... 5

**INSPECTION FINDINGS** .......... 5

**SECURITY** .......... 5
FACILITY SECURITY AND CONTROL .......... 5
FUNDS AND PERSONAL PROPERTY .......... 7
POST ORDERS .......... 7
SEARCHES OF DETAINEES .......... 8
USE OF FORCE AND RESTRAINTS .......... 8
SPECIAL MANAGEMENT UNITS .......... 9
SEXUAL ABUSE AND ASSAULT PREVENTION AND INTERVENTION .......... 10

**CARE** .......... 11
MEDICAL CARE .......... 11
SIGNIFICANT SELF-HARM AND SUICIDE PREVENTION AND INTERVENTION.. .......... 12

**CONCLUSION** .......... 12

# FACILITY OVERVIEW

The U.S. Immigration and Customs Enforcement (ICE) Office of Professional Responsibility (OPR) Office of Detention Oversight (ODO) conducted an unannounced follow-up inspection of the ERO El Paso Camp East Montana (EECEM) in El Paso, Texas, from May 12 to 14, 2026..[1] The facility opened in 2025 and is operated by Amentum Services..[2] The ICE Office of Enforcement and Removal Operations (ERO) began housing detainees at EECEM in 2025 under the oversight of ERO's Field Office Director in El Paso (ERO El Paso). The facility is a dedicated ICE detention facility and operates under National Detention Standards (NDS) 2025.

ERO has [redacted] supervisory deportation and detention officers, and [redacted] deportation officers assigned [redacted] to the facility. They are [redacted] An Amentum Services senior security operations director handles daily facility operations and manages [redacted] support personnel. Disaster Management Group provides food services and Loyal Source Government Services provides medical care. The facility did not have a commissary provider, nor any external accreditations at the time of ODO's inspection.

| Capacity and Population Statistics | Quantity |
|---|---|
| ICE Bed Capacity[3] | [redacted] |
| Average ICE Population[4] | [redacted] |
| Adult Male Population (as of May 12, 2026) | [redacted] |
| Adult Female Population (as of May 12, 2026) | [redacted] |

During its last rated inspection, in Fiscal Year (FY) 2026, ODO found 49 deficiencies in the following areas: Custody Classification System (1); Facility Security and Control (11); Funds and Personal Property (1); Grievance System (4); Medical Care (5); Sexual Abuse and Assault Prevention and Intervention (2); Staff-Detainee Communication (2); Telephone Access (1); and Use of Force and Restraints (22).

[1] This facility holds male and female detainees with low, medium-low, medium-high, and high security classification levels for periods greater than 72 hours.
[2] At the time of ODO's inspection, the facility was under a 90-day transition period with Amentum Services assuming duties as the prime contractor of EECEM.
[3] Data Source: ERO Custody Management Division Authorized Facility List as of May 7, 2026.
[4] *Ibid.*

# INSPECTION PROCESS

ODO conducts the following annual and biennial oversight inspections of ICE detention facilities to assess and rate each facility's compliance with their contractually obligated detention standards as noted in the Facility Overview section above.

- Dedicated facility: ODO conducts annual on-site inspections of dedicated inter-governmental service agreement (IGSA) facilities, contract detention facilities (CDF), family residential centers, and service processing centers.

- Non-dedicated IGSA facility:
  - For facilities with an average daily population (ADP) of 50 or more, ODO conducts biennial on-site inspections.
  - For facilities with an ADP of 50 or less,
    - If the facility has not previously had a rated ODO inspection, then ODO conducts an initial on-site inspection, and
    - If the facility has had an ODO inspection, then the facility completes a biennial ODO-assisted self-inspection process (OASIP).

- U.S. Marshal Service (USMS): USMS CDF and intergovernmental agreement facilities complete biennial OASIPs.

In FY 2025, ODO implemented OASIPs, which replaced the annual Special Review inspections ODO conducted at most low ADP and/or short-term use facilities. This new inspection framework is more reflective of the actual operation demand of facilities with a low ADP and/or short-term use. OASIP inspections focus on facility compliance with detention standard requirements that directly affect detainee life, health, safety, and/or well-being. Facilities have 30 calendar days to complete the OASIP inspection and ODO staff will go on-site for 1 day towards the end of the 30-day inspection window to observe facility conditions, interview ICE detainees, and spot-check the facility's reported findings.[5]

ODO defines a "deficiency" as any violation of detention standards, policies, or operational procedures, as applicable. ODO highlights instances when the facility resolves deficiencies prior to the completion of the ODO inspection as corrective actions. Where applicable, these corrective actions are annotated with a "C" in the *Inspection Findings* section of the report.

Upon completion of each inspection, ODO conducts a closeout briefing with facility and local ERO officials to discuss preliminary findings. A summary of these findings is shared with ERO management officials. Thereafter, ODO provides ICE leadership with a final report to: (i) assist ERO in developing and initiating uniform corrective action plans (UCAPs); and (ii) provide senior executives with an independent assessment of facility operations. ODO's findings inform ICE executive management in their decision-making to better allocate resources across the agency's entire detention inventory.

[5] When ODO conducts on-site inspections for non-OASIP facilities, the facility is notified 4 weeks before the inspection and ODO is on-site for 2-3 business days conducting the inspection.

## FINDINGS BY NATIONAL DETENTION STANDARDS 2025 MAJOR CATEGORIES

| NDS 2025 Standards Inspected[6] | Deficiencies |
|---|---|
| **Part 1 - Safety** | |
| Environmental Health and Safety | 0 |
| **Sub-Total** | **0** |
| **Part 2 – Security** | |
| Admission and Release | 0 |
| Custody Classification System | 0 |
| Facility Security and Control | 13 |
| Funds and Personal Property | 5 |
| Post Orders | 5 |
| Searches of Detainees | 1 |
| Use of Force and Restraints | 6 |
| Special Management Units | 8 |
| Staff-Detainee Communication | 0 |
| Sexual Abuse and Assault Prevention and Intervention | 5 |
| **Sub-Total** | **43** |
| **Part 4 – Care** | |
| Food Service | 0 |
| Hunger Strikes | 0 |
| Medical Care | 7 |
| Personal Hygiene | 0 |
| Significant Self-Harm and Suicide Prevention and Intervention | 2 |
| **Sub-Total** | **9** |
| **Part 5 – Activities** | |
| Correspondence and Other Mail | 0 |
| Religious Practices | 0 |
| Telephone Access | 0 |
| Voluntary Work Program | 0 |
| **Sub-Total** | **0** |
| **Part 6 – Justice** | |
| Grievance System | 0 |
| Law Libraries and Legal Material | 0 |
| **Sub-Total** | **0** |
| **Part 7 - Administration and Management** | |
| Detention Files | 0 |
| Detainee Transfers | 0 |
| **Sub-Total** | **0** |
| **Total Deficiencies** | **52** |

[6] For greater detail on ODO's findings, see the *Inspection Findings* section of this report.

# DETAINEE RELATIONS

ODO interviewed 42 detainees who each voluntarily agreed to participate. None of the detainees made allegations of discrimination, mistreatment, or abuse. Most detainees reported satisfaction with facility services except for the concern listed below.

*Recreation:* Several detainees stated they were required to participate in outdoor recreation.

- Action Taken: ODO spoke with ERO and found the facility used outdoor recreation periods for contractors to clean the housing units. ERO then directed the facility to allow detainees who do not want to participate in outdoor recreation the opportunity to move to an empty housing unit during the designated recreation time.

# INSPECTION FINDINGS

## SECURITY

### FACILITY SECURITY AND CONTROL (FSC)

ODO requested the facility's comprehensive security staffing analysis, but the facility did not provide the analysis. ODO cannot determine compliance when a facility does not provide ODO with evidence; therefore, ODO could not determine:

- Whether security staffing levels were sufficient to protect detainees against sexual abuse and assault and other forms of violence or harassment, and to prevent significant self-harm and suicide **(Deficiency FSC-2[7])**. **This is a repeat deficiency**;
- Whether security staffing levels were sufficient to maintain facility security and prevent or minimize events that pose a risk of harm to persons and property **(Deficiency FSC-3[8])**. **This is a repeat deficiency**; and
- Whether security staffing levels met the facility's detainee supervision needs **(Deficiency FSC-4[9])**. **This is a repeat deficiency**.

[7] "Each facility shall ensure it maintains sufficient supervision of detainees, including through appropriate staffing levels and, where applicable, video monitoring, to protect detainees against sexual abuse and assault and other forms of violence or harassment, and to prevent significant self-harm and suicide." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(A).

[8] "Security staffing shall be sufficient to maintain facility security and prevent or minimize events that pose a risk of harm to persons and property." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(A).

[9] "The facility shall develop and document comprehensive detainee supervision guidelines, as well as a comprehensive staffing analysis and staffing plan, to determine and meet the facility's detainee supervision needs; these shall be reviewed and updated at least annually." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(A).

ODO interviewed facility leadership and found:

- A finalized training plan has not been implemented; therefore, ODO could not determine if essential posts and positions were filled with qualified personnel **(Deficiency FSC-6[10])**;
- No written policy and procedures for housing unit and personal area searches **(Deficiency FSC-12[11])**. **This is a repeat deficiency**; and
- No established procedures for key and lock control in compliance with Occupational Safety and Health Association and National Fire Protection Association requirements **(Deficiency FSC-18[12])**.

ODO observed detainee counts for [redacted] housing units from the control center, and found in [redacted] out of [redacted] counts, staff did not conduct counts in accordance with facility procedures **(Deficiency FSC-20[13])**. **This is a repeat deficiency**.

ODO interviewed facility leadership and found:

- No established tool-control policy with which all employees must comply **(Deficiency FSC-22[14])**. **This is a repeat deficiency**. **This is a priority component**;
- No tool-control procedures **(Deficiency FSC-23[15])**. **This is a repeat deficiency**. **This is a priority component**;
- No standard operating procedures for contraband disposal **(Deficiency FSC-26[16])**;
- No established procedures for the disposal and/or destruction of contraband items **(Deficiency FSC-28[17])**;
- No written policies and procedures to secure the Special Management Unit from contraband **(Deficiency FSC-29[18])**; and
- The facility had not established and provided a local handbook **(Deficiency FSC-34[19])**.

[10] "Essential posts and positions shall be filled with qualified personnel." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(A).
[11] "Every facility will establish written policy and procedures for housing unit and personal area searches." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(B)(2).
[12] "Every facility shall establish procedures for key and lock control in compliance with OSHA and National Fire Protection Association requirements." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(D).
[13] "Every facility shall implement an effective system for counting detainees." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(E).
[14] "Every facility will establish a tool-control policy with which all employees shall comply." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(F).
[15] "The facility administrator shall designate the person responsible for developing and implementing tool-control procedures, along with an inventory and an inspection system to ensure accountability." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(F).
[16] "Staff will handle and properly dispose of contraband in accordance with the standard operating procedures of the facility." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(H).
[17] "The facility shall establish a procedure for the disposal and/or destruction of contraband items." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(H)(1).
[18] "Every facility will establish written policy and procedures to secure the SMU from contraband." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(H)(2).
[19] "The facility handbook shall notify detainees in a language or manner they understand of the facility's rules and procedures governing pertinent security issues, e.g., counts and contraband." *See* ICE NDS 2025, Standard, Facility Security and Control, Section (II)(J).

[redacted] (b)(7)(e) (b)(7)(e) ODO cites this as an **Area of Concern.**

**FUNDS AND PERSONAL PROPERTY (FPP)**

ODO reviewed facility policy, interviewed facility staff, and toured the housing units and found detainees did not have designated space, such as lockers or other securable areas, for storing their authorized personal property **(Deficiency FPP-12[20])**. **This is a repeat deficiency**.

ODO interviewed facility leadership and found:

- No standard procedure for the inventory and receipt of detainee funds and valuables **(Deficiency FPP-16[21])**;
- No written procedure for the inventory and audit of detainee funds, valuables, and personal property **(Deficiency FPP-18[22])**;
- No written procedure for returning funds, valuables, and personal property to detainees being transferred or released **(Deficiency FPP-22[23])**. **This is a priority component**; and
- No written procedure for detainee property reported missing or damaged **(Deficiency FPP-28[24])**.

**POST ORDERS (PO)**

ODO reviewed post orders and found:

- No master file of all post orders made available to all employees **(Deficiency PO-2[25])**;
- Housing unit post orders were not reviewed and signed by the facility administrator or designee **(Deficiency PO-4[26])**;
- Supervisors did not ensure officers understood the post orders for each post to which they were assigned, regardless of whether the assignment was temporary, permanent, or due to an emergency **(Deficiency PO-6[27])**;

---

[20] "Each housing area will designate an area for storing detainees' personal property." *See* ICE NDS 2025, Standard, Funds and Personal Property, Section (II)(B)(3).
[21] "Each facility shall have a written standard procedure for inventory and receipt of detainee funds and valuables." *See* ICE NDS 2025, Standard, Funds and Personal Property, Section (II)(C)(2).
[22] "Each facility shall have a written procedure for inventory and audit of detainee funds, valuables, and personal property." *See* ICE NDS 2025, Standard, Funds and Personal Property, Section (II)(D).
[23] "Each facility shall have a written procedure for returning funds, valuables, and personal property to a detainee being transferred or released." *See* ICE NDS 2025, Standard, Funds and Personal Property, Section (II)(E).
[24] "Each facility shall have a written policy and procedure for detainee property reported missing or damaged." *See* ICE NDS 2025, Standard, Funds and Personal Property, Section (II)(F).
[25] "A master file which contains all post orders shall be available to all employees." *See* ICE NDS 2025, Standard, Post Orders, Section (II)(A).
[26] "The facility administrator or designee shall review and sign housing unit orders." *See* ICE NDS 2025, Standard, Post Orders, Section (II)(B).
[27] "Supervisors shall ensure that officers understand the post orders of each post they are assigned, regardless of whether the assignment is temporary, permanent, or due to an emergency." *See* ICE NDS 2025, Standard, Post Orders, Section (II)(B).

- Officers did not sign and date post orders prior to assuming a post to indicate they had read and understood their provisions **(Deficiency PO-7[28])**; and
- Post orders were not kept current at all times **(Deficiency PO-8[29])**.

**SEARCHES OF DETAINEES (SD)**

ODO interviewed intake staff and found the facility did not have post orders for closely observing detainees in dry cell status **(Deficiency SD-52[30])**

**USE OF FORCE AND RESTRAINTS (UOFR)**

ODO requested, but did not receive, the facility's UOFR policy. ODO cannot determine compliance when a facility does not provide ODO with evidence; therefore, ODO could not determine if facility staff only use force, restraints, and non-lethal weapons in accordance with approved facility policy **(Deficiency UOFR-20[31]). This is a priority component**.

ODO interviewed facility leadership, reviewed use-of-force incidents, requested staff training records, and found:

- No training provided in approved methods of self-defense, crisis intervention, conflict de-escalation, use-of-force techniques, recognizing signs and symptoms of mental illness, and reporting requirements **(Deficiency UOFR-103[32])**;
- No training provided to staff on prohibited use-of-force acts and techniques **(Deficiency UOFR-104[33])**;
- No specialized training provided for [redacted] **(Deficiency UOFR-105[34])**;
- No training provided in the use of chemical agents, including the treatment of individuals exposed to them **(Deficiency UOFR-106[35])**; and
- No documentation that officers were certified to use any non-lethal or chemical control devices **(Deficiency UOFR-107[36])**.

---

[28] "Prior to assuming a post, officers will sign and date the post order to indicate having read and understood its provisions." *See* ICE NDS 2025, Standard, Post Orders, Section (II)(B).
[29] "Post orders will be kept current at all times." *See* ICE NDS 2025, Standard, Post Orders, Section (II)(C).
[30] "The facility shall have post orders for closely observing a detainee in dry cell status." *See* ICE NDS 2025, Standard, Searches of Detainees, Section (II)(D)(5).
[31] "Facility staff shall only use force, restraints, and non-lethal weapons that are approved by facility policy in a manner consistent with policy, procedure, and training requirements." *See* ICE NDS 2025, Standard, Use of Force and Restraints, Section (II)(C).
[32] "Staff shall be trained in approved methods of self-defense, crisis intervention, conflict de-escalation, use of force techniques, recognizing signs and symptoms of mental illness, and reporting requirements." *See* ICE NDS 2025, Standard, Use of Force and Restraints, Section (II)(L).
[33] "Staff will be made aware of prohibited use-of-force acts and techniques." *See* ICE NDS 2025, Standard, Use of Force and Restraints, Section (II)(L).
[34] "Specialized training shall be required for certain [redacted]." *See* ICE NDS 2025, Standard, Use of Force and Restraints, Section (II)(L).
[35] "Training in the use of chemical agents shall include treatment of individuals exposed to them." *See* ICE NDS 2025, Standard, Use of Force and Restraints, Section (II)(L).
[36] "Each officer must have been specifically certified to use a given device." *See* ICE NDS 2025, Standard, Use of Force and Restraints, Section (II)(L).

**SPECIAL MANAGEMENT UNITS (SMU)**

ODO interviewed facility leadership, reviewed available documentation, and found:

- No written procedures governing the management of administrative segregation **(Deficiency SMU-1[37])**. **This is a priority component**;
- No written procedures requiring documentation of detailed reasons for placing an individual in administrative segregation **(Deficiency SMU-2[38])**;
- No written procedures to regularly review continued placement in protective custody or to provide for release from protective custody when appropriate **(Deficiency SMU-8[39])**;
- No written procedures for regular placement review of all detainees held in administrative segregation **(Deficiency SMU-21[40])**;
- No written procedures for the regular review of all disciplinary segregation cases **(Deficiency SMU-44[41])**;
- No written procedures requiring a security supervisor or equivalent to interview detainees and review their status in disciplinary segregation every seven days **(Deficiency SMU-45[42])**;
- No written procedures requiring the facility administrator to review the status of detainees in disciplinary segregation after the first thirty days and every 30 days thereafter to determine whether continued detention in disciplinary segregation is warranted **(Deficiency SMU-52[43])**; and

---

[37] "Each facility shall develop and follow written procedures, consistent with this standard, governing the management of its administrative segregation unit." *See* ICE NDS 2025, Standard, Special Management Unit, Section (II)(A).

[38] "These procedures must include documenting detailed reasons for placement of an individual in administrative segregation." *See* ICE NDS 2025, Standard, Special Management Unit, Section (II)(A).

[39] "A detainee requires protection. Protective custody may be initiated at the detainee's request or by staff as needed to protect the detainee from harm. Each facility shall develop procedures to regularly review continued placement in protective custody as well as provisions for release from protective custody when appropriate. Use of administrative segregation to protect detainees with special vulnerabilities, including detainees vulnerable to sexual abuse or assault, shall be limited to those instances where reasonable efforts have been made to provide appropriate housing; where the placement is for the least amount of time practicable; and where no other viable housing options exist, and as a last resort. Detainees who have been placed in administrative segregation for protective custody shall have access to programs, services, visitation, counsel, and other services available to the general population to the maximum extent possible." *See* ICE NDS 2025, Standard, Special Management Unit, Section (II)(A)(1)(c).

[40] "All facilities shall implement written procedures for the regular placement review of all detainees held in administrative segregation, consistent with the procedures specified below." *See* ICE NDS 2025, Standard, Special Management Unit, Section (II)(A)(3).

[41] "All facilities shall implement written procedures for the regular review of all disciplinary segregation cases, consistent with the following procedures." *See* ICE NDS 2025, Standard, Special Management Unit, Section (II)(B)(3).

[42] "All facilities shall implement written procedures for the regular review of all disciplinary segregation cases, consistent with the following procedures:

> a. A security supervisor, or equivalent, shall interview the detainee and review his or her status in disciplinary segregation every seven days. The review will confirm the detainee is being provided showers, meals, recreation, and other basic necessities, as required by this detention standard." *See* ICE NDS 2025, Standard, Special Management Unit, Section (II)(B)(3)(a).

[43] "The facility administrator shall review the status of a detainee in disciplinary segregation after the first 30 days of segregation, and each 30 days thereafter, to determine whether continued detention in disciplinary segregation is warranted." *See* ICE NDS 2025, Standard, Special Management Unit, Section (II)(B)(3)(b).

- No documented training for staff assigned to the SMU on relevant topics, such as identifying signs of mental health decompensation, appropriate interactions with mentally ill detainees, the impact of isolation, or de-escalation techniques **(Deficiency SMU-86[44])**.

## SEXUAL ABUSE AND ASSAULT PREVENTION AND INTERVENTION (SAAPI)

ODO reviewed the facility's written Prison Rape Elimination Act (PREA) policies and procedures, interviewed the PREA coordinator, and found:

- No PREA or SAAPI protocols posted on the facility's website or otherwise made available to the public **(Deficiency SAAPI-15[45])**;
- No mechanism to make information available to the public on how to report sexual abuse and assault on behalf of a detainee **(Deficiency SAAPI-108[46])**;
- No written procedures for administrative investigations that require:
  - Reviewing prior complaints and reports of sexual abuse and assault involving the suspected perpetrator **(Deficiency SAAPI-134[47])**;
  - Assessing the credibility of alleged victims, suspects, or witnesses without regard to their status as detainees, staff, or employees, and prohibiting any requirement that a detainee who alleges sexual abuse or assault submit to a polygraph **(Deficiency SAAPI-135[48])**; and
  - Documenting each investigation by written report, including the reasoning behind credibility assessments **(Deficiency SAAPI-136[49])**.

---

[44] "Security staff assigned to SMU shall receive training in relevant topics, such as:

1. Identifying signs of mental health decompensation;
2. Techniques for appropriate interactions with mentally ill detainees;
3. The impact of isolation; and
4. De-escalation techniques?" *See* ICE NDS 2025, Standard, Special Management Unit, Section (II)(L)(1-4).

[45] "Each facility shall also post its protocols on its website, if it has one, or otherwise make the protocols available to the public." *See* ICE NDS 2025, Standard, Sexual Abuse and Assault Prevention and Intervention, Section (II)(A).

[46] "The facility shall establish a method to receive third-party reports of sexual abuse and assault in its facility and shall make available to the public information on how to report sexual abuse and assault on behalf of a detainee." *See* ICE NDS 2025, Standard, Sexual Abuse and Assault Prevention and Intervention, Section (II)(L).

[47] "The facility shall develop written procedures for administrative investigations, including provisions requiring:

c. Reviewing prior complaints and reports of sexual abuse and assault involving the suspected perpetrator." *See* ICE NDS 2025, Standard, Sexual Abuse and Assault Prevention and Intervention, Section (II)(M)(3)(c).

[48] "The facility shall develop written procedures for administrative investigations, including provisions requiring:

d. Assessment of the credibility of an alleged victim, suspect, or witness, without regard to the individual's status as detainee, staff, or employee, and without requiring any detainee who alleges sexual abuse and assault to submit to a polygraph; e. An effort to determine whether actions or failures to act at the facility contributed to the abuse." *See* ICE NDS 2025, Standard, Sexual Abuse and Assault Prevention and Intervention, Section (II)(M)(3)(d).

[49] "The facility shall develop written procedures for administrative investigations, including provisions requiring:

f. Documentation of each investigation by written report, which shall include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings; and g. Retention of such reports for as long as the alleged abuser is detained or employed by the agency or facility, plus five years." *See* ICE NDS 2025, Standard, Sexual Abuse and Assault Prevention and Intervention, Section (II)(M)(3)(f).

## CARE

**MEDICAL CARE (MC)**

ODO reviewed 25 detainee medical records and found in 3 out of 25 records, detainees did not receive an initial medical, dental, and mental health screening by a health care practitioner or specially trained detention officer **(Deficiency MC-12[50])**. **This is a priority component**.

ODO reviewed 25 detainee medical records and found in 4 out of 25 records, detainees did not receive tuberculosis screening in accordance with Centers for Disease Control and Prevention guidelines prior to placement in general population **(Deficiency MC-18[51])**. **This is a priority component**.

ODO reviewed 25 detainee medical records and found in 1 out of 25 records, no documented comprehensive health assessment, including a physical examination and mental health screening **(Deficiency MC-27[52])**. **This is a priority component**.

ODO reviewed 25 detainee medical records and found in 3 out of 25 records, initial screenings did not include an evaluation for use of or dependence on mood and mind-altering substances, including alcohol, opiates, hypnotics, and sedatives **(Deficiency MC-31[53])**.

ODO reviewed 25 detainee medical records and found in 1 out of 25 records, no initial dental screening exam was performed **(Deficiency MC-43[54])**.

ODO reviewed 25 detainee medical records and found in 2 out of 25 records, health care practitioners did not obtain signed and dated consent forms from detainees before conducting medical examinations or providing treatment, absent emergency circumstances **(Deficiency MC-91[55])**. **This is a priority component**.

---

[50] "As soon as possible, but no later than 12 hours after arrival, all detainees shall receive, by a health care practitioner or a specially trained detention officer, an initial medical, dental and mental health screening and be asked for information regarding any known acute, emergent, or pertinent past or chronic medical conditions, including history of mental illness, particularly prior suicide attempts or current suicidal/homicidal ideation or intent, and any disabilities or impairments affecting major life activities." *See* ICE NDS 2025, Standard, Medical Care, Section (II)(D).

[51] "All new arrivals shall receive tuberculosis (TB) screening in accordance with the most current Centers for Disease Control and Prevention (CDC) guidelines, including, but not limited to, CDC Guidelines for Correctional Facilities, prior to being placed in general population." *See* ICE NDS 2025, Standard, Medical Care, Section (II)(D)(1).

[52] "The facility will conduct and document a comprehensive health assessment, including a physical examination and mental health screening, on each detainee within 14 days of the detainee's arrival at the facility." *See* ICE NDS 2025, Standard, Medical Care, Section (II)(E).

[53] "During the initial screening, all detainees shall be evaluated for their use of or dependence on mood and mind-altering substances including alcohol, opiates, hypnotics, and sedatives." *See* ICE NDS 2025, Standard, Medical Care, Section (II)(F).

[54] "An initial dental screening exam shall be performed within 14 days of the detainee's arrival." *See* ICE NDS 2025, Standard, Medical Care, Section (II)(H).

[55] "The facility health care practitioner will obtain specific signed and dated consent forms from all detainees before any medical examination or treatment, except in emergency circumstances." *See* ICE NDS 2025, Standard, Medical Care, Section (II)(O).

ODO reviewed the medical record of the one detainee that was prescribed psychotropic medications and found, prior to administering the medication, a separate documented informed consent that includes a description of the medication's side effects, was not obtained **(Deficiency MC-92.[56])**. **This is a priority component**.

**SIGNIFICANT SELF-HARM AND SUICIDE PREVENTION AND INTERVENTION (SSHSPI)**

ODO inspected three suicide watch cells and found all three cells were not suicide-resistant, as they contained objects and structural elements that could facilitate a suicide attempt **(Deficiency SSHSPI-20.[57])**. **This is a priority component**.

ODO reviewed 5 suicide watch records for detainees placed on constant monitoring and found in 2 out of 5 records, monitoring was not documented at least 15 minutes or more frequently when necessary. Specifically, monitoring documentation was not provided by the facility for two detainees placed on constant monitoring suicide watch with one from March 19 to 21, 2026, and another from May 5 to 8, 2026 **(Deficiency SSHSPI-21.[58])**. **This is a priority component**.

# CONCLUSION

During this inspection, ODO assessed the facility's compliance with 24 standards under NDS 2025 and found the facility in compliance with 15 of those standards. ODO found 52 deficiencies in 9 standards, including 12 priority component deficiencies and 8 repeat deficiencies, and 1 Area of Concern. ODO recommends ERO El Paso continue to work with the facility to resolve the deficiencies that remain outstanding and to address the Area of Concern in accordance with contractual obligations. ODO will conduct another rated full compliance inspection of EECEM prior to the end of FY 2026.

| Inspection Results Compared | FY 2026 Full Inspection (NDS 2025) | FY 2026 Follow-up Inspection (NDS 2025) |
|---|---|---|
| Standards Reviewed | 24 | 24 |
| Deficient Standards | 9 | 9 |
| Overall Number of Deficiencies | 49 | 52 |
| Priority Component Deficiencies | 3 | 12 |
| Repeat Deficiencies | N/A | 8 |
| Areas Of Concern | 0 | 1 |
| Corrective Actions | 0 | 0 |
| Facility Rating | Acceptable/Adequate | N/A |

[56] "Prior to the administration of psychotropic medications, a separate documented informed consent, that includes a description of the medications side effects, shall be obtained." *See* ICE NDS 2025, Standard, Medical Care, Section (II)(O).

[57] "A suicide-resistant cell must be free of objects and structural elements that could facilitate a suicide attempt and must be approved by a health care practitioner." *See* ICE NDS 2025, Standard, Significant Self-harm and Suicide Prevention and Intervention, Section (II)(F).

[58] "The monitoring must be documented every 15 minutes or more frequently if necessary." *See* ICE NDS 2025, Standard, Significant Self-harm and Suicide Prevention and Intervention, Section (II)(F).

U.S. Immigration and Customs Enforcement

# Office of Professional Responsibility