JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division
ANTHONY NICASTRO
Director
Office of Immigration Litigation
SAMUEL P. GO
Assistant Director, Office of Immigration Litigation
BRIAN SCHAEFFER
SHANE A. YOUNG
DOMINIC A. WEISS
Trial Attorneys, Office of Immigration Litigation
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 451-7483
Shane.A.Young@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| GERALD AKARI ANGYE, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD LYONS, ET AL.,<br><br>Defendants. | Case No. 3:26-cv-1515<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

## INTRODUCTION

The Court should dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 8, 12(b)(1), 12(b)(6), 21, and 22.

As a threshold matter, Plaintiffs have named Defendants who do not have the authority or control to provide the relief requested. Neither Defendant United States Department of War ("DOW") nor Defendant United States Secretary of War Pete Hegseth ("Secretary Hegseth") has any control over the contractors, facility conditions, or general operations at the Camp East Montana Detention Facility ("CEM"). Moreover, Plaintiffs fail to allege a cause of action or any conduct by either Defendant that relates to the challenges to facility conditions. As such, because there is no case or controversy here as to those Defendants, they should be dismissed with prejudice.

As to the Plaintiffs themselves, the controversy is moot because they are no longer detained. Further, this case is an inappropriate vehicle to hear all their claims, which are fundamentally grounded in different experiences and occurrences. Additionally, Plaintiffs' APA claim fails as it does not challenge a specific agency action. Likewise, their constitutional claims grounded on a right to access counsel and family fail as such a right does not exist. Finally, the sheer amount of information contained in Plaintiffs' Complaint points to an obfuscation of the issues and an abuse of the Complaint as a procedural vehicle, further supporting dismissal.

## FACTUAL BACKGROUND

Plaintiffs, four former detainees at CEM, filed their Complaint on May 29, 2026, seeking injunctive and declaratory relief and asking this Court to find that Defendants, through operation of CEM, have violated Plaintiffs' Fifth Amendment rights, and have violated the Administrative

Procedure Act ("APA") through continued violations of the 2025 National Detention Standards ("2025 NDS").[1] ECF No. 1, Complaint ("Compl.") at 76-77.

CEM is a detention facility in El Paso, Texas. Plaintiffs allege the conditions at CEM amount to punishment under the Fifth Amendment. Compl. ¶ 218. Plaintiffs allege that CEM fails to provide appropriate intake procedures, medical and dental care, medication administration, and mental health services; fails to respond timely to sick call requests and emergency medical issues; and fails to protect against outbreaks of disease. *See generally id.* Plaintiffs also bring one claim under the APA, alleging that the conditions of confinement do not meet the 2025 NDS by failing to provide adequate access to counsel, recreational activities, family visitation, facilitation of personal hygiene, and other various allegations of facility conditions. *Id.* ¶¶ 225-29.

On May 30, 2026, and subsequent to the Complaint, Plaintiffs sought class certification of a class defined as "[a]ll persons who are now, or in the future will be, in the legal custody [of ICE] and detained at [CEM]." ECF No. 2, at 3. Plaintiffs seek certification under Rule 23(b)(2) and are currently not seeking certification of any subclasses. *Id.*

## LEGAL STANDARD

### I. Rule 8 Standard

Rule 8(a)(2) requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, *each* allegation *must be* "simple, concise and direct." *Id.* (emphasis added). The underlying purpose of Rule 8 is to "eliminate prolixity in pleading and to achieve brevity, simplicity, and clarity." *Roden v. Reamer*, No. SA-26-CA-00054-XR, 2026 WL 10785598 at *2 (W.D. Tex., April 16,

[1] Defendants cite generally to the Complaint as many of the allegations appear multiple times in different formats. As Defendants argue *infra*, it would be burdensome to cite to each individual allegation throughout a 77-page complaint.

2026) (quoting *Gordon v. Green*, 602 F.2d 743, 746 (5th Cir. 1979)). Accordingly, when a complaint is unwieldy in length, courts in this circuit have deemed dismissal under Rule 8 appropriate. *Id.* at *3 (collecting cases). "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *Hall v. Civ. Air Patrol, Inc.*, 193 F. App'x 298, 299 (5th Cir. 2006).

**II. Rule 12(b)(1) Standard**

A Rule 12(b)(1) motion to dismiss challenges subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Federal courts lack the power to adjudicate claims absent jurisdiction conferred by the Constitution or by statute. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). "A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). The party invoking federal jurisdiction bears the burden of proving its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Constitutional standing is an indispensable component of the case-or-controversy requirement of Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

**III. Rule 12(b)(6) Standard**

Rule 12(b)(6) requires dismissal of claims that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A claim cannot survive a Rule 12(b)(6) motion unless it contains sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the factual content allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The Court must first identify the factual allegations, which are assumed as true, as distinguished from legal conclusions that have no presumption of truth. *Id.* at 678, 680–81. Under the heightened "plausibility" standard, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face and have "nudged their claims across the line from conceivable to plausible." *Id.* at 679; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007).

Courts are also required to dismiss claims based on invalid legal theories pursuant to Rule 12(b)(6), even though they may be otherwise well-pleaded. *Flynn v. State Farm Fire & Cas. Ins. Co. (Texas)*, 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009). When the court finds that, even accepting the well-pled allegations in the complaint as true, the pleader is not entitled to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citations omitted).

**IV. Dismissal of Improperly Joined Parties**

Rule 20 allows a court to dismiss improperly joined parties from a case. Plaintiffs are properly joined only when they assert claims "in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed. R. Civ. P. 20(a). If both elements of this test are not satisfied, "a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance. In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) "[T]he central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323

(11th Cir. 2000). "All logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.*

Relatedly, Rule 21 gives courts authority to dismiss a party as long as the dismissal does not prejudice any party to the litigation. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 833 (1989). And courts have held that where plaintiffs would not be prejudiced in bringing individual actions, all but the first named plaintiff may be dismissed from a case. *See id.* at 2; *see also Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). In other words, Rule 21 furnishes additional authority for a court "on its own" to "add or drop a party" "on just terms." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).

## ARGUMENT

### I. The Case is Moot

Standing to seek an injunction also requires a "real and immediate" threat of future injury, "not 'conjectural' or 'hypothetical,'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983), that persists "through all stages of the litigation," *Trump v. New York*, 592 U.S. 125, 131 (2020). None of the named Plaintiffs are currently detained at CEM. Their cases are moot; their claims for injunctive relief are moot. *See W.M.M. v. Trump*, 184 F.4th 780, 786 (5th Cir. 2026) (holding the removal of named plaintiffs in a putative class action mooted the case where the class was not certified by the district court). "[I]f in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021); *accord, e.g., Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (explaining that a case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party").

Even though the Plaintiffs were detained at CEM when they filed their Complaint, "[t]here must be a case or controversy through all stages of a case . . . ." *K.P. v. LeBlanc*, 729

F.3d 427, 438 (5th Cir. 2013). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

Because the individual claims are moot, the case must be dismissed without regard to the fact that Plaintiffs seek to certify a class. Further, in the class action context, "the class representative must establish his standing as an individual before he may represent a class of other allegedly injured persons." *Wilson v. Centene Mgmt. Co., L.L.C.*, 168 F.4th 217, 224 (5th Cir. 2026). The "general rule of mootness . . . is that a class action becomes moot when the putative representative plaintiff's claim has been rendered moot before a class is certified." *Fontenot v. McCraw*, 777 F.3d 741, 748 (5th Cir. 2015).

## II. This Court Should Dismiss DOW and Secretary Hegseth with Prejudice

Defendants DOW and Secretary Hegseth should be dismissed from this action because they have no role, authority, or presence within the facility at issue here—CEM. To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While Plaintiffs name DOW and Secretary Hegseth as parties to this action, *see* Compl. ¶¶ 29-30, Plaintiffs do not allege DOW or the Secretary have engaged in any part of day-to-day operations of the detention facility—the challenged conduct in this case as to which Plaintiffs seek relief. *See id.* at Prayer for Relief.

First, Plaintiffs base the inclusion of DOW and Secretary Hegseth as Defendants on CEM being located on the Fort Bliss Miliary Base and that "DOW has been responsible for aspects of

the construction, contracting, and operation of Camp East Montana." Compl. ¶¶ 29-30, n. 16. That is the totality of Plaintiffs' allegations against DOW and Secretary Hegseth.

Plaintiffs do not allege that DOW or Secretary Hegseth currently play a role in any aspect of facility management, nor do Plaintiffs allege DOW or Secretary Hegseth are currently advised on aspects of facility management. *See generally id*. In fact, DOW and Secretary Hegseth do not appear in the Complaint in any capacity outside of paragraphs 29 and 30 where they are named as parties. *Id*. This is insufficient to state a claim for injunctive relief: a court cannot require these Defendants to take or not take an action over which they have no authority in the first instance. *See Twombly*, 550 U.S. at 555 ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." (alterations in original) (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure § 1216, at 235–36 (3d ed. 2004))). Any alleged injury therefore is neither fairly traceable to these Defendants nor likely to be redressed by an injunction directed against them.

Where a plaintiff seeks to challenge a rulemaking or other policy or practice of an Executive Branch agency, the head of the agency is the ordinary and appropriate defendant and target of any potential injunction or decree issued by the Court. But here, Plaintiffs do not seek to challenge a DOW policy, rule, practice, or regulation. Instead, in this suit, Plaintiffs seek to challenge detention facility conditions and the 2025 NDS solely within the control of ICE and DHS. *Cf.* 5 U.S.C. § 702 (an APA injunction "shall specify the Federal officer or officers (by name or by title), and their successors in office, *personally* responsible for compliance") (emphasis added). Defendants DOW and Secretary Hegseth should thus be dismissed as to all claims with prejudice. *See, e.g.*, *Munyaneza v. Blinken*, No. 21-CV-2778 (TSC), 2022 WL 4598629, at *2 (D.D.C. Sept. 30, 2022).

### III. CEM is operated by a non-party contractor; any injunctive relief against defendants does not redress the alleged injury

Similar to Defendants' arguments for dismissal of DOW and Secretary Hegseth, Defendants argue for dismissal based on redressability because the contractor's operational choices produce the conditions Plaintiffs challenge; their injuries are neither fairly traceable to ICE nor redressable by an injunction against it. *Lujan*, 504 U.S. at 560–62. Redressability independently requires that the injury be "likely . . . redressed by judicial relief," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021), and, where relief depends on a nonparty, a "clear showing" that the nonparty "will likely react in predictable ways" to the challenged federal conduct, *Murthy v. Missouri*, 603 U.S. 43, 58 (2024)—proof, that is, of how an order to these Defendants would likely avert the injury. An order that ICE ensures conditions meet NDS standards (Compl. at ¶¶ 76-77) does not change what the contractor's employees do. ICE already requires contractors to meet NDS standards. Ordering proper medical care by ICE does not itself change a single medical condition inside of CEM; whether a detainee is seen in 1 hour or 12 hours after a sick call request still depends on how the medical contractor responds—the shortcut *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 42–43 (1976) rejected as "purely speculative."

Plaintiffs request this Court enter an order barring continued operation of the facility at its current levels, *id.*, but outside of requesting a third-party monitor, *see* ECF No. 52, Plaintiffs have declined to theorize how Defendants can comply with such an injunction given the nature of the contracts. Remedies "operate with respect to specific parties," *California v. Texas*, 593 U.S. 659, 672 (2021), and redress dependent on an independent actor requires evidence of its likely response. *Id.* at 675. The only option that does not operate without contractors is not a remedied facility but an emptied one—moving elsewhere the nearly 2,400 detainees without

changing CEM at all. To the extent that Plaintiffs are seeking to restrain the detention of any particular aliens or closure of CEM, this option is one Congress put beyond class relief.

Section 1252(f) withdraws jurisdiction "to enjoin or restrain the operation of" §§ 1221-1232 except "with respect to the application of such provisions to an individual alien." It "bars class-wide injunctive relief," *Garland v. Aleman Gonzalez*, 596 U.S. 543, 555 (2022), "regardless of the nature of the . . . claim." *Id.* at 553. The power to move detainees "arises from" § 1231(g)'s directive to "arrange for appropriate places of detention," so "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a . . . class action suit." *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999). This prohibition does not stop at relocation. It also extends to conditions of confinement after the alien has been transferred. A classwide order to immediately provide certain healthcare standards violates § 1252(f)(1) outright by making the only self-executing means of compliance relocation of thousands of detainees. *Aleman Gonzalez*, 596 U.S. at 550-51 (finding this bar "prohibits lower courts from entering injunctions that order federal officials to carry out the specified provisions").

The proposed Preliminary Injunction goes further. The relief requested there adds procedural steps to the operation of detention—remedial plans, a third-party monitor, potential mandatory reporting—which too is "injunctive relief that directly adds a new procedural step to the Government's operation of covered provisions," also barred by § 1252(f)(1). *See Al Otro Lado v. EOIR*, 138 F.4th 1102, 1125 (9th Cir. 2025).

The requested relief's classwide form independently violates the statute. *Aleman Gonzalez* rejected the argument that classwide relief survives because a class is composed of individuals. *Aleman Gonzalez*, 596 U.S. at 554-55. This class includes all individuals who are now or who in the future will be detained at CEM. This would "include[] future, yet-to-be

detained aliens against whom proceedings have not been initiated." *Nielsen v. Preap*, 586 U.S. 392, 424–25 (2019) (Thomas J., concurring in part and concurring in the judgment); *see California v. Texas*, 593 U.S. at 672 (remedies "ordinarily operate with respect to specific parties"). Thus, Plaintiffs' relief should be dismissed based on redressability concerns.

## IV. This Court Should Sever and Dismiss All Plaintiffs Except Gerald Akari Angye Because They Do Not Meet the Joinder Requirements of Rule 20(a)

Federal Rule of Civil Procedure 20(a) provides that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any questions of law or fact common to all these persons will arise in the action." Fed. R. Civ. P. 20(a). A party seeking joinder must demonstrate the following: (1) their claims arise out of the "same transaction or occurrence, or series of transactions or occurrences," and (2) there is at least one common question of law or fact in all claims. *Acevedo*, 600 F.3d at 521 (quoting *Alexander*, 207 F.3d at 1322–23). Based on this standard, this Court should dismiss the claims of all but Plaintiff Angye in this action because the other Plaintiffs were improperly joined as they do not meet either prong within *Acevedo*.

The wide-ranging and voluminous allegations of individual circumstances in the pleadings here amply suggest that the Plaintiffs' attempt at joinder is improper because their claims do not arise from any single occurrence or series of occurrences, and the merits of their procedural claims will turn on the specific circumstances surrounding each of their detentions.Plaintiff Angye alleges a use-of-force incident and resulting hospitalization. Compl. ¶ 19. Plaintiff Navdeep alleges injuries arising from housing conditions, food service, and disciplinary confinement. *Id.* ¶ 20. Plaintiff Rodriguez Flores alleges respiratory issues, recreation complaints, and work-related grievances. *Id.* ¶ 21. Plaintiff ZOR alleges attempted

removals, assault by another detainee, and delayed medical treatment. *Id.* ¶ 22. Resolution of these claims will therefore require plaintiff-specific evidence and individualized factual determinations. Although the Plaintiffs present a common claim relating to conditions of confinement within CEM, in the end they may obtain relief only if they can show individualized constitutional violations. *See McKinney v. Prosecutor's Off.*, No. CIV. 13-2553 KM MCA, 2014 WL 2574414, at *15 (D.N.J. June 4, 2014) ("The courts, moreover, have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison . . . .").

"Rule 21 explicitly provides that '*any* claim against a party may be severed and proceeded with separately.'" *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983) (emphasis in original). "Rule 21 is an appropriate vehicle to sever or dismiss the claims of even properly joined parties." *Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 722 (W.D. Tex. 2008).

In *Coughlin v. Rogers*, the Ninth Circuit affirmed a dismissal without prejudice of the claims of individual plaintiffs seeking mandamus relief relating to their immigration petitions. That court explained that "the existence of a common allegation . . ., in and of itself, does not suffice to create a common transaction or occurrence." *Coughlin v. Rogers*, 130 F.3d 1348, 1350–51 (9th Cir. 1997). Addressing the second element, the court observed that "each applicant or petitioner presents a different factual situation. Therefore, each must receive personalized attention by the INS and, ultimately, by the Court. Accordingly, there can be no common issues of fact or law." *Id.*; *see also Acevedo*, 600 F.3d at 522.

Likewise, in this case, Plaintiffs each make different allegations relating to conditions of confinement. Therefore, like the plaintiffs in *Coughlin*, 130 F.3d 1348, the Plaintiffs in this case have not shown that their actions arise out of the same transaction, occurrence, or series of transactions or occurrences, and their cases should be dismissed. *See C.G.B. v. Wolf*, 464 F. Supp.

3d 174, 209 (D.D.C. 2020) (severing claims in conditions of confinement case because "the merits of each Plaintiff's Fifth Amendment and APA claims are context-dependent"). It is therefore appropriate for this Court to dismiss all except for Plaintiff Angye's claims, as they are improperly joined.

Dismissal of the improperly joined Plaintiffs is appropriate in this case because consolidating their cases does not "promote trial convenience and expedite the final determination of disputes," as courts have concluded to be the purpose of Rule 20. *Alexander*, 207 F.3d at 1323. As to the former requirement, litigating the claims of each individual Plaintiff would create an unmanageable trial.

Additionally, dismissal would not unduly prejudice Plaintiffs' ability to present their claims. Each Plaintiff could re-file an independent complaint against the government based on the unique conditions of confinement that they personally experienced. *See Coughlin*, 130 F.3d at 1350. This Court should therefore grant the government's motion to dismiss all but Plaintiff Angye from this case.[2]

**V. The Complaint Improperly Pleads by Means of Obfuscation.**

Even though this case is straightforward, Plaintiffs filed an unnecessarily long complaint weighing in at 77 pages,[3] 229 paragraphs (not including excessive subparagraphs) and 121 footnotes. *See generally* Compl. Rule 8(a) requires a "short and plain statement." A complaint that is unnecessarily long, or "prolix," makes it difficult to respond to and cumbersome for orderly litigation. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775–776 (7th Cir.

---

[2] The government recognizes that courts sever Plaintiffs in some cases rather than dismissing them under Rule 21. However, dismissal is appropriate here because Plaintiffs can file individual complaints without prejudice to their ability to present their claims.

[3] By comparison, the local rules limit this Motion to Dismiss to 20 pages. L. R. CV-7(c)(2).

1994) (119-page complaint dismissed). Courts should thus not allow Plaintiffs to plead "by means of obfuscation." *Id.* at 776.

A court may dismiss a complaint if it is unduly long. *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Length and complexity may doom a complaint by obfuscating the claim's essence."); *see also Jennings v. Emry*, 910 F.2d 1434, 1435 (7th Cir. 1990) (affirming dismissal of 55-page complaint). The Court and Defendants will spend (and have already spent) inordinate amounts of time and resources wading through these confusing references and allegations to try to sort out what exactly Plaintiffs are alleging and seeking in terms of relief. But "neither Defendant[s] nor the Court can be expected to dig through Plaintiff's Complaint to discern any relevant facts and their connection to his causes of action." *Columbare v. Sw. Airlines, Co.*, No. 3:21-CV-297-B-BK, 2022 WL 660192, at *1–2 (N.D. Tex. Jan. 21, 2022) (recommending dismissal of complaint that was "far longer than necessary to state a cogent legal claim," was "*repetitive, redundant, prolix* and scattershot in approach" and "disjointed and *rambling*," among other deficiencies) (emphasis added).

The court may also strike "any redundant, immaterial, impertinent, or scandalous matter" from the Complaint under Rule 12(f). Alternatively, the court may order Plaintiffs to make a more definite statement under Rule 12(e), which in this case would mean an amended complaint that pleads sufficient facts to show a plausible basis for liability but is not the length of a novel and does not plead evidence (i.e., citing to media articles posted on the internet and incorporating by reference witness declarations).

Plaintiffs' Complaint should be dismissed like the one filed in *Hartz v. Friedman*, 919 F.2d 469 (7th Cir. 1990), because it is neither short nor plain and improperly pleads evidence. The Seventh Circuit described the complaint in *Hartz* as an "egregious violation" of Rule 8

because, at 125 pages and 323 paragraphs, it included "a mass of details which might be relevant and appropriate at trial, but which are clearly surplusage in stating a claim." *Hartz*, 919 F.2d at 471. Here too, Plaintiffs' Complaint includes impertinent allegations from an assortment of hearsay articles and personal accounts of declarants (some of whom are anonymous). *E.g.*, Compl. ¶¶ 1, 3, 12, 31, 34-35, 38-39, 42, 45, 50, 52, 68, 74, 127, 131-132, 166, 168, 172-174, 178, 181, 191. Excessively factual complaints amount to accelerating "the function of discovery to the pleadings stages" by requiring a defendant to answer such averments, which "distorts both the purpose and the function of the Federal Rules of Civil Procedure and the administration of [the] civil case." *Thompson v. Hens-Greco*, No. CV 16-1100, 2016 WL 7046959, at *6 (W.D. Pa. Nov. 8, 2016).

Defendants seek dismissal of Plaintiffs' Complaint because it improperly pleads evidence and a response would be overly (and unnecessarily) burdensome. For instance, the defense will need to review and fact-check the veracity of the multiple hearsay-riddled articles and 26 sworn (and oftentimes vague) declarations incorporated into the Complaint. *E.g.*, Compl. ¶ 132. Defendants would also need to investigate extraneous issues, such as the percentage of detainees with or without a criminal history, when these facts have no bearing on the claims before the court. *Id.* at ¶¶ 21, 42. The Complaint impermissibly functions as a de facto Rule 36 request to admit. This is precisely what the court in *Thompson* cautioned against. In sum, Plaintiffs' Complaint is neither short nor plain and should consequently be dismissed or stricken without prejudice.

**VI. There Can Be No APA Claim Absent Final Agency Action.**

Plaintiffs' APA claim asserted in Count III should be dismissed with prejudice under Rule 12(b)(1) and (6). The APA provides an exception to federal agency sovereign immunity by allowing an individual to seek judicial review of an agency decision. 5 U.S.C. § 702. "Final

agency action . . . is a jurisdictional prerequisite of judicial review" under the APA. *Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 584 (5th Cir. 2016). However, to establish subject matter jurisdiction under the APA, a plaintiff must show (1) that he obtained a final agency action and (2) no other adequate remedy is available in a court. 5 U.S.C. § 704; 5 U.S.C. § 551(6), (13) (defining "agency action" and "order"). Plaintiffs have not satisfied either requirement.

Plaintiffs' APA claim is based upon an allegation that Defendants are not complying with the NDS. Compl. ¶¶ 226-229. These allegations are not "final agency action." Plaintiffs point to no "final agency action" in their Complaint and therefore have failed to state a claim upon which relief may be granted. The APA does not allow broad programmatic attacks on agency operations, limiting judicial review to discrete agency actions. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Here, Plaintiffs challenge the overall operation of CEM and alleged noncompliance with numerous detention standards. Such allegations amount to a broad challenge to ongoing facility operations rather than review of a discrete agency action. Because Plaintiffs identify no discrete, reviewable agency action, their APA claim falls outside the APA's limited cause of action. At best, Plaintiffs challenge alleged day-to-day operational decisions that the Supreme Court has advised do not fall within the APA's jurisdiction. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990); *see also Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000) (holding that "identifying specific allegedly improper" agency conduct does not constitute final agency action to bring programmatic challenges under the APA); *C.G.B.*, 464 F. Supp. 3d at 225 (dismissing APA claim where plaintiffs challenged the continued operation of detention facilities). The Fifth Circuit has made it clear that courts do not have jurisdiction to review "day-to-day operations" as they are not final agency actions under the APA. *Sierra Club*, 228 F.3d at 566 (relying on *Lujan* to find a lack of jurisdiction under the APA).

Plaintiffs cite *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954) in their Complaint. Compl. ¶ 227. Plaintiffs' reliance on *Accardi* is misplaced. Plaintiffs identify no regulation requiring a specific outcome in their individual circumstances and instead rely on alleged departures from detention standards. Compl. ¶¶ 225-229.

Decisions to attempt to operate detention facilities with best practices and establishing detention standards and guidelines do not subject the Government to an *Accardi* or APA conditions of confinement claim. "It is absurd to suggest that any time a detention facility fails to follow an internal operating procedure that a detainee can file a lawsuit in federal court." *A.S.M. v. Warden, Stewart Cnty. Det. Ctr.*, 467 F. Supp. 3d 1341, 1355 (M.D. Ga. 2020) (holding that conditions of confinement challenges are not a proper extension of *Accardi*). "Where . . . regulations . . . simply function as internal operating instructions, . . . they are deemed to be solely for in-house agency use and are not judicially enforceable against the agency." *First Alabama Bank, N.A. v. United States*, 981 F.2d 1226, 1230 n.5 (11th Cir. 1993); *see also The Wilderness Soc. v. Norton*, 434 F.3d 584, 595–96 (D.C. Cir. 2006) (finding an agency's "management policies" constituted non-binding internal guidance). "While substantial deviations from an accepted standard of care based upon violations of operational policies may be considered in determining whether this burden has been carried, the mere violation of such non-binding policies does not give rise to a separate stand-alone *Accardi* claim." *A.S.M.,* 467 F. Supp. 3d at 1357. Additionally, *Accardi* principles do not override the core APA principle set forth in *Lujan* that courts cannot under the APA take over day-to-day operation of complex programs, such as administration of a detention facility.

Although Plaintiffs are not directly seeking review of the NDS, the NDS alone are not final agency actions. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015). Detention

guidelines are not the type of agency actions that then can be challenged under the APA or *Accardi*. *See C.G.B.*, 464 F. Supp. 3d at 227 (holding that ICE detention guidelines are not agency actions to which the *Accardi* doctrine may attach).

Count III should thus be dismissed with prejudice.

### VII. Plaintiffs Failed to State a Viable Constitutional Claim Based on Access to Counsel

Plaintiffs allege that detainees at CEM, regardless of their immigration status, suffered violations of their Fifth Amendment right to access counsel because their communication through (1) legal calls or virtual visits (2) calls from shared phones or tables from the unit or (3) in-person visits lack "perceived privacy." Compl. ¶¶ 141-149. These allegations, even if true, do not violate the Fifth Amendment. Notably, Plaintiffs do not allege that detainees are categorically denied access to attorneys. Rather, the Complaint acknowledges the availability of legal telephone calls, video visitation, and in-person attorney meetings, and instead challenges the manner of those communications. Compl. ¶¶ 144-148.

A threshold requirement for establishing a due process violation is identifying a liberty interest. The interest must be deeply rooted in this Nation's history and tradition and narrowly defined. *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024). While Plaintiffs allege that defendants have "limited communications with their retained and prospective counsel," Compl. ¶ 141, they have failed to explicitly allege a protected liberty interest. Removal proceedings are civil in nature, and litigants in those proceedings retain no right to counsel under the Sixth Amendment, are not entitled to *Miranda* warnings, and are otherwise not entitled to the "full panoply of procedural and substantive safeguards" that are provided in criminal proceedings. *Lyon v. U.S. Immigr. & Customs Enf't*, 171 F. Supp. 3d 961, 975 (N.D. Cal. 2016).

It is well-settled that not all aliens are similarly situated for purposes of the Fifth Amendment Due Process Clause. *Mathews v. Diaz*, 426 U.S. 67, 78 (1976). The nature of protection varies depending on status and circumstance. *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001). The role of the court is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and "does not extend to imposing procedures that merely displace congressional choices of policy." *Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982). The court may not impose particular procedures here because it finds them to be preferable. *Id.*

Not all detainees at CEM have a right to consult with counsel under the Fifth Amendment. For instance, aliens have no right to counsel during the reinstatement of removal proceedings. 8 U.S.C. § 1231(a)(5); *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 497 (9th Cir. 2007). Aliens in expedited removal proceedings who entered the United States without admission and cannot establish they have been here for more than two years also do not have a right to counsel. 8 U.S.C. § 1225(b); *United States v. De La Mora-Cobian*, 18 F.4th 1141, 1146 n.1 (9th Cir. 2021) (no right to see an immigration judge); *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011) (no right to counsel in expedited removal); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (an alien in expedited removal after illegally entering the United States "has only those rights regarding admission that Congress has provided by statute"). Similarly, aliens who have final orders of removal and are awaiting removal after release on orders of supervision have no right to counsel when supervision is withdrawn or revoked. 8 U.S.C. § 1231(a). Governing regulations dictate the process and do not include the right to counsel. 8 C.F.R. §§ 241.13(h)(4). In short, there is no Fifth Amendment right to counsel for these groups of detainees, but Plaintiffs nevertheless inappropriately seek injunctive relief

requiring access to counsel for all detainees at CEM. Simply put, Plaintiffs overstate the constitutional protections detainees at CEM possess. Because no law imposes a right to counsel for all detainees, Plaintiffs' overly broad Fifth Amendment claim rooted in access to counsel should be dismissed.

### VIII. Plaintiffs Failed to State a Viable Constitutional Claim Based on Access to Family

Plaintiffs further allege that detainees at CEM suffered violations of the Fifth Amendment because of "limited access to loved ones." Compl. ¶¶ 103-113. Plaintiffs' allegations, even if true, do not violate the Fifth Amendments.

Plaintiffs acknowledge that family members can visit the facility but allege that CEM is "located in the middle of the Chihuahuan Desert." *Id.* at ¶ 104. The reality is CEM is located about 7 miles from the El Paso International Airport. Plaintiffs also complain that visits with family members occur "behind Plexi glass in an open and non-private area." *Id.* at ¶ 105. At the same time, Plaintiffs further acknowledge that the detainees can make phone calls and video calls, but complain that calls are "monitored" and lack privacy. *Id.* at ¶¶ 104-110.

Plaintiffs cannot state a viable claim as to the place of their detention. 8 U.S.C. § 1231(g) grants broad discretion for DHS to choose the location of detention. *See also Dai v. Caplinger*, No. CIV. A. 94-2190, 1995 WL 241861, at *2 (E.D. La. Apr. 25, 1995) ("Congress has thus determined that where aliens are to be detained is within the sound discretion of the Attorney General."). As to the limited restrictions placed on family visits, they advance reasonable governmental interests such as maintaining security and operational efficiency. *See Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 189 (1997). These limited restrictions serve important governmental interests such as protecting borders and enforcing the nation's immigration laws, as well as allowing the facility to protect the safety and security of its law enforcement officers

and those it detains. *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The government's interest in efficient administration of the immigration laws at the border is weighty . . . ."); *Bell v. Wolfish*, 441 U.S. 520, 540 (1979) ("The Government also has legitimate interests that stem from its need to manage the facility in which the individual is detained."). Further, it is well established that during incarceration, individuals' phone calls may be monitored; analogously, similar restrictions are necessary and appropriate at CEM. *See Hanks v. McLane*, No. A-24-CV-299-RP, 2025 WL 5287248, at *11 (W.D. Tex. Aug. 12, 2025) (collecting cases). The same is true as to restrictions on visitation: there is "no constitutional right to visitation." *Richardson v. One Black Female Corr. Officer*, 64 F. App'x 418 (5th Cir. 2003) (citing *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999)).

Plaintiffs' overly broad Fifth Amendment claim rooted in limited access to loved ones should thus be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 8, 12(b)(1), 12(b)(6), 20, and 21.

Dated: November 23, 2026

Respectfully Submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

ANTHONY NICASTRO
Director
Office of Immigration Litigation

SAMUEL P. GO
Assistant Director

SHANE A. YOUNG
Trial Attorney

DOMINIC A. WEISS
Trial Attorney

*/s/Brian V. Schaeffer*
Brian V. Schaeffer
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-7311
Email: Brian.Schaeffer@usdoj.gov

NICHOLAS K. GHEZAVAT
Law Clerk*
**Admitted to practice in Illinois. Application for admission to this Court pending.*

*ATTORNEYS FOR DEFENDANTS*

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that, pursuant to Local Rule CV-7(i), counsel for all parties met and conferred on Defendants' Motion to Dismiss. The parties were unable to resolve the pending matter by agreement.

*/s/ Brian V. Schaeffer*
BRIAN V. SCHAEFFER
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 23, 2026, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants:

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Kyle Virgien (*pro hac vice*)
Rita Lomio (*pro hac vice*)
Felipe Hernandez (*pro hac vice*)
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770
kvirgien@aclu.org
npp_rlomio@aclu.org
npp_fhernandez@aclu.org

ACLU FOUNDATION OF TEXAS, INC.
Savannah Kumar
Fabiola Alvelais
Edgar Saldivar
Adriana Pinon
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax (713) 942-8966
skumar@aclutx.org
falvelais@aclutx.org
esaldivar@aclutx.org
apinon@aclutx.org

*/s/ Brian V. Schaeffer*
BRIAN V. SCHAEFFER
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation